**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Allscripts Healthcare, LLC, | ) | |
| a North Carolina LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| Andor Health, LLC, a Delaware | ) | DEMAND FOR JURY TRIAL |
| Corporation; Mahathi Software Pvt., Ltd.; | ) | |
| Raj Toleti, individually; and Amar Bulsara, | ) | |
| individually; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Allscripts Healthcare, LLC ("Allscripts") brings this action against Defendants Andor Health, LLC ("Andor") (formerly known as PatientComp, LLC), Mahathi Software Pvt., Ltd. ("Mahathi"), Raj Toleti ("Toleti"), and Amar Bulsara ("Bulsara") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1.      By this action, Allscripts seeks damages based on Defendants' violations of contractual restrictions on solicitation, competition, and use of confidential information, intentional and willful misappropriation of trade secrets, and tortious interference with Allscripts' business relationships.  Allscripts also seeks injunctive relief to stop Defendants' wrongful actions and prevent further harm.

2.      Allscripts is a health information technology company. Among Allscripts' products are electronic health record ("EHR"), practice management, and financial management solutions used by hospitals, health systems, and physician and community practices.  As relevant to this dispute, Allscripts also provides patient engagement solutions, including personal health record

("PHR"), Mobile Patient Experience, and telehealth functionality for use by individual patients as well as employers, payers, hospitals, health systems, and physician and community practices. Allscripts' portfolio of products is designed to help clients advance the quality and efficiency of healthcare.

3.      In April 2018, Allscripts acquired a software tool known as Health Grid, along with its related business operations.  The acquisition was carried out pursuant to the terms of a Merger Agreement with entities owned or controlled by Defendant Raj Toleti. The Merger Agreement contained confidentiality, non-disclosure, non-solicitation, and non-compete provisions that applied specifically to Toleti.

4.      One of Allscripts' most popular products is FollowMyHealth®, a customizable patient engagement platform for providers, hospitals, and health systems.  The purpose of acquiring Health Grid was to pursue a strategic opportunity to expand Allscripts' FollowMyHealth platform and functionality.  The Mobile Patient Experience solution that is a part of FollowMyHealth enables mobile triage, check-in, and delivery of questionnaires, forms, educational materials, discharge instructions, and post-care surveys and follow up from providers directly to their patients all of which can be viewed on the same platform from the mobile devices used by individuals every day.

5.      As part of the Health Grid acquisition, Allscripts agreed to employ Toleti, the CEO of the acquired business, to support the transition, expansion, and incorporation of the Health Grid business with Allscripts' FollowMyHealth platform.  Allscripts employed Toleti as a Senior Vice President and General Manager of Allscripts' Health Grid business unit.

6.      Defendant Amar Bulsara was an employee of Health Grid at the time of the acquisition and became an employee of Allscripts following the acquisition.

7.      As a condition of Toleti's employment and as required by the Merger Agreement, Toleti signed an Inventions Restrictive Covenant Agreement ("IRCA") dated May 22, 2018, which included confidentiality, non-disclosure, non-solicitation, and non-compete provisions.  Bulsara was also required to sign an IRCA, dated May 18, 2018, containing those terms.

8.      In Toleti's role as Senior Vice President, he became deeply involved in all aspects of Allscripts' business and was exposed to highly sensitive and proprietary information, including trade secrets related to Allscripts' products ("Allscripts Products Trade Secrets").  Specifically, he was heavily involved in matters related to Allscripts' patient engagement, Mobile Patient Experience, and telehealth capabilities.

9.      Bulsara was also exposed to highly sensitive and proprietary information, including Allscripts Products Trade Secrets in his role as Director, Professional Services at Allscripts and was heavily involved in matters related to Allscripts' patient engagement, Mobile Patient experience, and telehealth capabilities.

10.     At Toleti's suggestion, Allscripts also engaged two healthcare technology companies Toleti had founded, Andor and Mahathi, to support Allscripts in connection with certain services related to the implementation of the Health Grid product and other support for Allscripts' customers.  Upon information and belief, Toleti is an owner and/or employee of both Andor and Mahathi and exercises control over their operations.

11.     Allscripts and Andor entered into a Reseller Agreement, which exclusively sublicensed to Allscripts the implementation tool (also known as the "Config Tool") being developed by Andor for its customers.  The Reseller Agreement also imposed non-solicitation, non-compete, confidentiality, and non-disclosure obligations on Andor.  Allscripts never used the Config Tool.

12.    After a series of issues, Toleti resigned from Allscripts on March 31, 2020. The parties resolved certain aspects of their disputes pursuant to the terms of a Settlement Agreement that was effective as of March 31, 2020. In Section 4B of the Settlement Agreement, Defendants affirmed and agreed that the non-compete and non-solicit obligation set forth in the Merger Agreement, Reseller Agreement, and IRCA remain in place and were expanded to and binding upon Defendants Toleti, Andor, and Mahathi.

13.    Nonetheless, as described more fully below, Allscripts discovered that Toleti, Andor, and Bulsara were willfully and wantonly disregarding their non-solicit, non-compete, and confidentiality obligations.

14.    Allscripts objected in writing to Andor and Toleti's contractually violative actions promptly after learning of them and demanded they cease and desist. Toleti and Andor denied engaging in misconduct.

15.    For example, Andor asked Allscripts to consent to Andor hiring Bulsara and to provide blanket consent for Andor to engage the services of former Allscripts employees. Allscripts rejected Andor's request for a blanket waiver of the non-solicit obligations as to Allscripts' former employees and specifically denied Andor's request to hire now former Allscripts employee Bulsara in light of his significant role at Allscripts and access to confidential and trade secret information.

16.    Despite this denial, Allscripts learned that Andor had engaged the services of Bulsara in violation of Toleti and Andor's obligations under the Merger Agreement, IRCA, and Settlement Agreement (the "Agreements") and in violation of Bulsara's obligations under his IRCA.

17.     Moreover, Allscripts has become aware that Andor is offering solutions competitive with those offered by Allscripts in the areas of patient engagement, Mobile Patient Experience, and telehealth in violation of, at a minimum, Andor and Toleti's non-compete and non-solicit obligations.

18.     Allscripts has also learned that Andor has marketed, sold, and/or implemented solutions that are competitive with Allscripts solutions to Allscripts' customers in further violation of Andor and Toleti's non-solicit and non-compete obligations.

19.     Allscripts files this action seeking to enforce the non-solicit, non-compete, confidentiality, and non-disclosure provisions of the Merger Agreement, Reseller Agreement, Settlement Agreement, Toleti and Bulsara's IRCAs, and the Marketing Services Agreement, all of which remain in full force and effect.

## PARTIES

20.     Allscripts is a limited liability company organized under the laws of North Carolina with its headquarters in Chicago, Illinois.  Allscripts' sole member is Allscripts Healthcare US, LP, a limited partnership formed under the laws of Delaware with its headquarters and principal place of business in Chicago, Illinois.

21.     Allscripts Healthcare US, LP's partners are:

a.     Allscripts Holdings, LLC, a limited liability company organized under the laws of Delaware with its headquarters and principal place of business in Chicago, Illinois; and

b.     Allscripts Holdings 2, LLC, a limited liability company organized under the laws of Delaware with its headquarters and principal place of business in Chicago, Illinois.

22.     Andor is a Delaware corporation with its principal place of business in Orlando, Florida.  Its name was changed from Patient Comp, LLC to Andor Health, LLC on September 26, 2019.

23.     Mahathi is a corporation organized under the laws of India, with American headquarters located in Orlando, Florida.

24.     On information and belief, Toleti is an adult resident of Florida.  He is Chairman and Chief Executive Officer of Andor.  He is Founder and Chief Executive Officer of Mahathi.

25.     On information and belief, Bulsara is an adult resident of Florida.  On information and belief, he is currently providing consulting services to Andor.

## JURISDICTION AND VENUE

26.     This is an action for, *inter alia*, trade secret misappropriation under 18 U.S.C. § 1836, *et seq.*  This Court has original jurisdiction of such actions under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).

27.     This Court has supplemental jurisdiction over all state law claims that form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

28.     This Court has personal jurisdiction over Toleti, Andor, Mahathi, and Bulsara.  This venue is proper for Allscripts' claims against Andor, Toleti, and Mahathi because each agreed and consented in the Merger Agreement and Settlement Agreement that the state and federal courts located in the State of Delaware have exclusive jurisdiction over all disputes arising under or related to the aforementioned agreements and agreed not to contest jurisdiction.  This venue is proper for Allscripts' claims against Bulsara, because he has, upon information and belief, performed regular services related to this action for Andor, a Delaware corporation, with knowledge that Andor is a Delaware corporation.

29.     Venue is also proper under 28 U.S.C. § 1391(b)(3) because Andor, Toleti, Mahathi, and Bulsara are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### Allscripts Enters into Business Relationship With Toleti, Purchases Health Grid

30.     Allscripts is a leading provider of, among other things, Electronic Health Records ("EHR") and Practice Management ("PM") solutions to physicians, medical practices, and hospitals.  The information managed by Allscripts solutions is critical to medical professionals' ability to manage their practices, deliver cost-efficient treatment, and comply with federal regulations.

31.     One of Allscripts' flagship products is FollowMyHealth, a customizable patient engagement platform for providers, hospitals, and health systems.  It includes a portal that facilitates patient data access and allows secure direct messages between patients and providers. Patient engagement, Mobile Patient Experience, and telehealth functionality are key to the FollowMyHealth product.  Toleti was heavily involved with the FollowMyHealth product and specifically with its patient engagement, Mobile Patient Experience, and telehealth functionality while employed by Allscripts.

32.     Health Grid, also known as Mobile Patient Experience, is primarily a mobile application platform that delivers care and educational materials electronically.  It also uses email and interactive voice response to deliver functionality.  Traditionally, these materials are sent to patients via paper, such as in the form of appointment reminders or educational information.

33.     In May 2018, Allscripts announced its plan to acquire Health Grid Holding Co. in order to expand its FollowMyHealth platform.

34.    Allscripts planned to integrate the Health Grid capabilities into its FollowMyHealth platform, adding functionality that would enable providers to reach 100% of their patient populations without requiring patients to sign up for a portal.

35.    By continuing to increase use of FollowMyHealth and helping connect providers with patients outside the portal, Allscripts sought to help providers increase their outreach to patients and boost patients' engagement in their own health.

36.    Among the specific purposes of the acquisition of Health Grid was to expand FollowMyHealth's patient engagement and Mobile Patient Experience footprint while increasing the value of the platform to Allscripts' clients.

37.    As part of this new partnership, Allscripts retained Toleti as Senior Vice President and General Manager of the Health Grid business unit.  It also retained Bulsara as Director, Professional Services.

**The Terms of the Merger Agreement[1]**

38.    On April 27, 2018, Allscripts entered into the Merger Agreement with Toleti in his capacity as the representative of the stockholders to effectuate the acquisition of Health Grid.

39.    Additionally, the parties agreed that during the four years following Closing, each Restricted Person would not directly or indirectly engage in a Competitive Business or own, manage, control, participate in, consult with, or render services for and person that is engaged in a Competitive Business.  *Id.* § 4.12.  As the Closing took place on May 18, 2018, these restrictions remain in place until May 18, 2022.

40.    Toleti is designated as a Restricted Person.  *Id.* at Schedule 4.12.

---

[1] Note that the agreements relevant to this complaint are in the possession of the parties to whom they apply.  Allscripts will provide them to the Court, as needed, pursuant to a protective order or *in camera* to avoid any alleged violations of any confidentiality provisions.

41.     The Merger Agreement defines a Competitive Business as one that provides any of the same or similar types of products or services that Health Grid or any of its subsidiaries provided or actively considered providing during the twelve (12) months prior to the closing date. *Id.* § 11

42.     Health Grid marketed itself as providing patient engagement services including, without limitation, Mobile Patient Experience and telehealth services during the 12 months prior to the Closing Date.  In fact, Health Grid was providing patient engagement and Mobile Patient Experience services during the twelve (12) months prior to the Closing Date.

43.     Further, the parties agreed that during the Restricted Period, each Restricted Person (including Toleti) would not solicit any of Allscripts' customers.  *Id.* at § 4.12.

44.     Under Section 4.11 of the Merger Agreement, each stockholder, including Toleti, agreed not to disclose Confidential Information, including any information concerning the business and affairs of the Company and its Subsidiaries.  Upon termination of employment, each stockholder must deliver or destroy all copies of the Confidential Information in their possession. *Id.*

### Allscripts Enters into Inventions Restrictive Covenant Agreements with Toleti and Bulsara

45.     As part of his new employment with Allscripts, on or about May 22, 2018, Toleti entered into an IRCA with Allscripts.  Bulsara entered into an IRCA with Allscripts on May 18, 2018.

46.     While Toleti and Bulsara entered into separate IRCAs, the terms of the IRCAs they signed are identical.

47.     Section 3 of the IRCAs contains a non-solicitation provision, in which Toleti and Bulsara agreed not to solicit Allscripts' accounts, customers or prospective customers, or employees for a period of twelve (12) months following their employment.

48.     In Section 4, Toleti and Bulsara agreed not to interfere with any person or entity with which Allscripts has a business relationship for a period of twelve (12) months following their employment.

49.     In Section 5, Toleti and Bulsara agreed not to compete, whether directly or indirectly, with Allscripts during the course of their employment.  They further agreed that they would not Compete at any time during the twelve (12) month period following termination, regardless of the reason for termination.  *Id.* § 5(a)-(b).

50.     As Toleti's employment with Allscripts ended on March 31, 2020, these restrictions remained in place until March 31, 2021.  Bulsara's employment with Allscripts ended on August 14, 2020, so the restrictions in his IRCA remain in place until August 14, 2021.  However, these restrictions are tolled during the time of breaches of the IRCAs.  *Id.* at § 6.  Thus, the IRCAs' restrictions remain in place, as Toleti and Bulsara continue to violate them.

51.     As Senior Vice President and General Manager of Health Grid, Toleti worked heavily in all aspects of Health Grid's products and services during his time with Allscripts, including in the specific areas of patient engagement, Mobile Patient Experience, and telehealth and he acquired Confidential Information concerning those areas during his employment with Allscripts.

52.     As Director, Professional Services, Bulsara also worked extensively in all aspects of Health Grid's products and services during his time with Allscripts, including, without limitation, in the specific areas of patient engagement, Mobile Patient Experience, and telehealth and he acquired Confidential Information concerning those areas during his employment with Allscripts.

53.     As Senior Vice President and General Manager of Health Grid, Toleti was deeply involved in every geographic region in which Health Grid, as part of Allscripts, did business.

54.     As Director, Professional Services of Health Grid, Bulsara was also involved in every geographic region in which Health Grid, as part of Allscripts, did business.

55.     In Section 7 of the IRCAs, Toleti and Bulsara agreed not to use or disclose any of Allscripts' trade secrets or Confidential Information for the benefit of themselves or any other business organization.

56.     Toleti and Bulsara also agreed that all trade secrets, along with any ideas, formulae, and inventions, among other things, conceived by them during their employment with Allscripts are the sole and exclusive property of Allscripts Healthcare, LLC. *Id*. § 9.

57.     In Section 12, Toleti and Bulsara agreed that during their employment with Allscripts and for a period of twenty-four (24) months thereafter, they would not make any statement that would be adverse to the interests of Allscripts.

**Allscripts and Andor Agree to a Reseller Agreement**

58.     Allscripts engaged Andor to provide products, services, and support to Allscripts, including, without limitation, Andor's Config Tool.

59.     On or about September 30, 2019, Allscripts entered into a Reseller Agreement with Andor (formerly known as Patient Comp, LLC).

60.     Pursuant to the terms of the Reseller Agreement, Allscripts sought to license certain Andor products for sublicensing to its customers. *Id.* By entering into the Reseller Agreement, Andor granted Allscripts a non-exclusive, non-transferable, revocable license to use, reproduce, modify Andor products, market and sublicense use of Andor products, and enable Allscripts products to interface or integrate with Andor products. *Id.* § 2.1.

61.    The products listed on the product schedule for sublicensing pertained to Version 2.1 of the Patientcomp-FollowMyHealth Pre-Care Use Case Configuration.  The applications enabled users to: (1) configure the FollowMyHealth appointment confirmation outreach times; (2) configure the FollowMyHealth appointment reminders outreach times; (3) configure the FollowMyHealth waitlist notifications to client requirements, including the ability to customize the outreach text messages and the subsequent exchange between the outreached patient and the system.  *Id*.  Ex. A, Product Schedule.

62.    In Section 11.2 of the Reseller Agreement, Andor agreed not to market, demonstrate, resell, or otherwise distribute or make available the Software, Documentation, or the Services to an Allscripts customer.

63.    In violation of its obligations under the Reseller Agreement, Andor demonstrated and pitched the Config Tool directly to Allscripts clients.  Andor made claims to those clients that the Config Tool was ready for use and could be used by the client, when, in reality, the Config Tool was never signed off on by Allscripts and Allscripts never used it.

64.    By providing Allscripts' clients with false information concerning the Config Tool and Allscripts' use of it, Andor set false expectations for Allscripts in the minds of Allscripts' clients.

65.    Andor was prohibited from directly providing Implementation Services and other support services to Allscripts customers for the term of the Reseller Agreement.  The Reseller Agreement is still in effect.  The term of the Reseller Agreement is five years, thus these restrictions remain in place until at least September 30, 2024.

66.    The parties agreed that during the term of the Reseller Agreement and for a period of one year thereafter, neither Party nor its Affiliates would, without the prior written consent of

the other Party, directly or indirectly solicit for employment any then-current employee of the other Party. *Id*. § 11.4. This restriction remains in place until at least September 30, 2025.

### Dissolution of Relationship Between Allscripts and Toleti

67.    Over time, issues arose in the relationship between Allscripts and Toleti.

68.    The parties ultimately determined that Toleti should end his employment with Allscripts. The terms of that separation are set forth in a confidential settlement agreement; *see infra,* effective March 31, 2020.

69.    Shortly thereafter, on or about April 13, 2020, Andor issued a press release announcing Toleti as its Chairman and CEO.

### Toleti and Allscripts Enter Into the Settlement Agreement

70.    On March 31, 2020, Toleti, Andor, Mahathi, and Allscripts entered into the Confidential Settlement Agreement to facilitate a separation of Toleti from Allscripts and resolve certain disputes.

71.    As part of the Settlement Agreement, Toleti resigned from Allscripts, effective March 31, 2020. *Id.* § 2A.

72.    In Section 4A of the Settlement Agreement, Defendants affirmed that their obligations under non-solicitation covenants in the Merger Agreement, Reseller Agreement, and IRCA remain in full force and effect, except with respect to three named employees, none of whom were Bulsara. It also specifically provided that Raj Toleti, Andor, and Mahathi agree to be bound by such non-solicitation and non-compete provisions.

73.    Section 4B affirmed that the non-solicitation and non-compete covenants as set forth in the Merger Agreement, Reseller Agreement, and Toleti's IRCA remain in full force and effect as to the customers of Health Grid and Allscripts.

13

74.     Allscripts agreed that as of March 31, 2020, based on the information then known to Allscripts Andor's ThinkAndor and AndorNow products did not compete with Allscripts' FollowMyHealth product.  *Id*. § 4C.  As to other and future Andor products, or any adjustments or modifications to the ThinkAndor and AndorNow, Andor agreed to be bound by, and agreed not to violate the terms of the covenants included in Sections 4.12, 4.13, and 4.14 of the Merger Agreement or in the Reseller Agreement or Restrictive Covenant Agreement.  *Id.*

75.     At Toleti's recommendation and direction, Allscripts had engaged Andor and Mahathi to provide support to Allscripts in connection with its implementation of Health Grid for certain Allscripts clients.  Therefore, in Section 4D, Allscripts agreed that implementation services or implementation management services performed by Andor or Mahathi in connection with any Allscripts products or solutions would not compete with Allscripts and would not be prohibited by any of the non-compete or non-solicitation covenants set forth in the Merger Agreement, the Reseller Agreement, or IRCA, ***but only to the extent*** that the general manager responsible for Allscripts Health Grid products had been informed of Andor's and Mahathi's services and provided prior written consent to Andor and Mahathi authorizing them to provide the services.

76.     This provision did not permit Andor and/or Mahathi to solicit Allscripts' clients or to provide products or services to Allscripts' clients without Allscripts' written and advanced permission.

77.     Andor and Mahathi, without permission, engaged with one of Allscripts' largest clients, Optum, Inc. ("Optum") to provide staff augmentation as part of the implementation of FollowMyHealth.  Allscripts learned about this improper activity through Optum.  Ultimately, Allscripts decided to allow the activity to continue in order to preserve Allscripts' relationship with Optum.

78.     The parties agreed that the Settlement Agreement should be interpreted, construed, and applied in accordance with the laws of the State of Delaware. *Id*. § 16.  The Agreement further provided that the sole and exclusive venue to resolve all disputes arising under or related to this Settlement Agreement would be a Federal District Court located in the District of Delaware or the Delaware Chancery Court in New Castle County, Delaware. *Id.*  Finally, the Parties submitted to and agreed not to contest the jurisdiction of those courts. *Id.*

### The Terms of the Marketing Services Agreement

79.     On May 28, 2020, Allscripts and Andor entered into the Marketing Services Agreement ("Marketing Agreement"), under which Allscripts and Andor mutually agreed to provide one another marketing and sales services in the United States with respect to certain software solutions.  Marketing Services Agreement at 1.

80.     Allscripts was to receive a revenue share on sales of Andor's ThinkAndor and AndorNow solutions to the Allscripts customer base. *Id.*  Andor was to receive marketing services fees for applicable leads Andor provided to Allscripts, which resulted in a sale of Health Grid products or solutions outside of the Allscripts customer base. *Id.*

81.     Pursuant to the Marketing Agreement, Andor was not to make reference to incorporation or implementation of direct patient messaging functionality or of functionality that existed in certain FollowMyHealth campaigns, such as Patient Portal or Telemedicine with Andor solutions to potential customers Andor qualified with Allscripts. *Id.*at § 3.1(v).

82.     Moreover, Andor as not to violate the non-compete covenants in the Settlement Agreement. *Id.* at § 3.1(vi).

83.     Any breaches of Sections 3.1(i) through 3.1(v) are considered material breaches under the Marketing Agreement.

**Defendants Breach the Agreements**

84.     Andor sought permission from Allscripts to hire key former Allscripts employees, including Bulsara.  On September 14, 2020, Allscripts rejected Andor's request with respect to Bulsara.

85.     Andor's request to hire Bulsara constitutes an admission that Andor is aware that engaging Bulsara without Allscripts' permission would constitute a breach of its various contracts with Allscripts, including the Merger Agreement, Settlement Agreement and the IRCAs.

86.     Despite this awareness, and Allscripts' unambiguous rejection of Andor's request to hire Bulsara, counsel for Toleti and Andor has admitted that Andor engaged Bulsara indirectly, through a consulting company that provides services to Andor, in violation of the Agreements.

87.     Upon information and belief, Andor engaged Bulsara and this consulting company in order to use and exploit, to the benefit of Defendants, and to the detriment of Allscripts, his knowledge and possession of Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Product Trade Secrets, and to unfairly compete with Allscripts.

88.     Andor's use of Bulsara's services is with Toleti and Andor's knowledge that such an engagement is a breach of their various contractual obligations with Allscripts.  Thus, in using Bulsara's services, Andor and Toleti intended to breach those contractual obligations.

89.     Upon information and belief, Bulsara  is using and exploiting, to the benefit of Andor and Toleti, and to the detriment of Allscripts, his knowledge and possession of Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Products Trade Secrets, to unfairly compete with Allscripts.

90.    Andor and Toleti have also engaged in conduct that violates the non-compete provisions of the Agreements, specifically in the areas of patient engagement, Mobile Patient Experience, and telehealth.

91.    Additional functionality added to the FollowMyHealth platform that were gained as a result of the Health Grid acquisition included online scheduling, appointment confirmation/reminders/cancellation, check-in capabilities including information gathering and payments, waitlist notification, post-care summaries, post-discharge surveys and information, on demand messaging, assistance related to gaps in care, patient education, referral coordination, and more reach to a larger set of patients to assist providers in meeting critical regulatory requirements.

92.    FollowMyHealth Telehealth also offers telehealth functionality.  It allows for the engagement of patients in their homes and enables communication between quarantined people and sponsoring healthcare organizations.  By converting appointments to telehealth, the solution limits interactions that could further spread the COVID-19 virus to patients and healthcare workers.

93.    In light of the profound impact COVID-19 has had on the provision of healthcare and the increased need for telehealth infrastructure, Allscripts has created a specialized plan for clients to swiftly implement telehealth at their organizations through FollowMyHealth.  It includes a specialized COVID-19 form and alert verbiage for patient outreach, enabling clients to be up and running in a matter of days.  The FollowMyHealth solution follows recommendations made by the CDC to triage patients prior to appointments and explore alternatives to face-to-face visits.

94.    Andor is offering telemedicine, patient engagement, and Mobile Patient Experience solutions as part of its expanding product lines in order to directly compete with Allscripts in these

burgeoning areas of healthcare technology.  In fact, Andor has advertised functionality that is directly competitive with FollowMyHealth in these areas on its website.

95.    Andor's development of products and services competitive to those offered by Allscripts, include, without limitation, products and/or services related to telemedicine (such as video telehealth capabilities), direct patient engagement, Mobile Patient Experience, mobile check-in, delivering questionnaires to patients, delivering COVID-19 educational programs to patients, delivering other educational materials to patients, the ability for triage contact to mobile devices, the provision of discharge instructions, and post-care surveys and follow up through patient mobile devices.

96.    The user interface being used in Andor's product is nearly identical to that of Allscripts' FollowMyHealth.  The similarities can be seen in images from the two interfaces.  The images of the Andor interface also demonstrate that Andor is operating in the area of direct patient engagement in violation of its non-compete obligations to Allscripts.

97.    Toleti and Andor are fully aware that Andor is offering functionality that is directly competitive with products and services offered by Allscripts.

98.    In fact, after receiving Allscripts' cease and desist letter, Andor made numerous changes to its website in an attempt to, upon information and belief, conceal its breaches of its non-compete and non-solicitation obligations.

99.    Additionally, upon information and belief, in or about early March 2021, Andor had also sold mobile check-in, telehealth (virtual visits), and post-care follow-up solutions to Allscripts' client, Health First.

100.    Health First operates four hospitals:  Cape Canaveral Hospital, Holmes Regional Medical Center, Palm Bay Hospital, and Viera Hospital.  Health First Medical Group is the largest

multi-specialty physician group on the "Space Coast."   Health First also offers numerous outpatient and wellness services including Health First Aging Services, three Health First Pro-Health & Fitness Centers, and Home Care and Hospice of Health First.  Health First hospitals have an approximate total of 868 beds and over 1,100 medical staff.  Health First Medical Group is comprised of over 250 physicians and includes 72 mid-level providers.

101.    Allscripts has expended significant time and funds developing, maintaining, and growing its client relationships, including without limitation its relationships with Health First and Optum.

102.    Upon information and belief, the products and/or services that Andor is providing or offering to provide Health First directly compete with solutions offered by Allscripts. Specifically, upon information and belief, Andor is to provide Health First with Mobile Patient Experience services, including, without limitation, mobile check-in functionality, which compete with Allscripts' solutions.  Upon information and belief, Andor is also providing or offering to provide telehealth, including post-acute care follow up and check-in services, to Health First, which compete with Allscripts' solutions.

103.    Each of the services Andor is to provide to Health First is a service that Allscripts offers and thus places Andor in direct competition with Allscripts.

104.    In fact, Allscripts attempted to market these solutions to Health First, but, on information and belief, Health First contracted to use Andor's competing solutions.

105.    While at Allscripts, Toleti worked on these same types of solutions, including specifically and without limitation patient engagement, mobile check-in, and telehealth.

106.    Moreover, Toleti, in his capacity as Senior Vice President and General Manager of the Health Grid business unit at Allscripts, had regular contact and worked with Health First in these areas. He also worked with Allscripts' other customers in these sectors.

107.    Upon information and belief, Defendants have been attempting to sell competitive services and/or products to additional Allscripts customers as well.  The full extent of those efforts is only known by Defendants and those customers.

108.    During his nearly two-year tenure at Allscripts, Toleti developed relationships with Allscripts' clients. Upon information and belief, Toleti is now using those relationships for his own personal and professional benefit and for the benefit of Andor and to interfere with Allscripts' relationships with those clients.

109.    Upon information and belief, Toleti and Andor have misled existing Allscripts customers by falsely informing them that Allscripts products have certain functionality that does not exist in those products in an attempt by Toleti and Andor to set false expectations of Allscripts for those customers and create friction between Allscripts and those customers.  Upon information and belief, the goal of this tactic is to convince existing Allscripts customers to end or materially limit their relationships with Allscripts and move their business to Andor.

110.    Defendants' course of conduct has caused harm to Allscripts by, among other things, depriving Allscripts of revenue, commercial growth opportunities, and impacting Allscripts' relationships and reputations with its current clients, such as Health First, as well as prospective clients.

111.    Andor and Toleti's wrongful activities go beyond interference with Allscripts' current and prospective business relationships with customers.

112.    Allscripts is the owner of intellectual property which allows a medical practice to send text messages to patients through FollowMyHealth.  The related text permits a medical practice to send a hyperlink to a patient which connects them to a website wherein the patient can verify their identity with their last name and date of birth.  The patient's cell phone number serves as an additional level of verification.  Through this verification process, patients may access certain information from their medical provider.  Upon information and belief, Andor is using Allscripts' intellectual property in a way that replicates this functionality.

113.    The user interface being used by Andor looks nearly identical to that of the Health Grid interface of Allscripts.

114.    Upon information and belief, Toleti, Mahathi, and/or Andor are using Mahathi's access to Allscripts coding and intellectual property as part of the services Mahathi provides to Allscripts customers in order to steal coding and intellectual property from Allscripts, which Andor is now using in its products and services.

115.    The full extent of Defendants' improper solicitation, competition, misuse and misappropriation of Allscripts' Confidential Information and trade secrets, interference with Allscripts' prospective economic advantage, disparagement of Allscripts' brand and services, and theft of Allscripts' intellectual property, along with the full extent of the damages those activities have caused, is only known to Defendants at this time.  Discovery will uncover the full scope and extent of the misconduct and harm.

116.    In summary, the facts alleged herein demonstrate an ongoing effort by Defendants to breach their contractual obligations, misappropriate Allscripts' trade secrets and intellectual property, and interfere with the existing and prospective customer relationships of Allscripts.

## COUNT I

### Breach of Contract - Settlement Agreement

(Against Andor, Toleti, and Mahathi)

117.    The allegations in paragraphs 1-116 are incorporated as though fully set forth herein

118.    At all relevant times, Allscripts, Toleti, Andor, and Mahathi had a binding and enforceable Settlement Agreement.

119.    Allscripts performed its obligations under the Settlement Agreement.

120.    Defendants Andor, Toleti, and Mahathi breached the Settlement Agreement by:

   a.    Engaging in business in competition with the business of Allscripts;

   b.    Directly or indirectly selling Products or services of the type sold by Allscripts to any customer or prospective customer of Allscripts;

   c.    Using or disclosing Allscripts Products Trade Secrets and Confidential Information for the benefit of Andor, Toleti, and Mahathi;

   d.    Soliciting Allscripts customers;

   e.    Soliciting and engaging the services of Allscripts employees; and

   f.    Interfering with Allscripts' business relationships.

121.    As a direct result of Andor, Toleti, and Mahathi's actions as set forth above, Allscripts has suffered and will continue to suffer harm in an amount to be proven at trial.

WHEREFORE, Allscripts demands that judgment be entered against Andor, Toleti, and Mahathi awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT II

### Breach of Contract - IRCA

(Against Andor, Toleti, and Mahathi)

122.    The allegations in paragraphs 1-121 are incorporated as though fully set forth herein

123.    At all relevant times, Allscripts, Andor, Toleti, and Mahathi had a binding and enforceable IRCA.

124.    Allscripts performed its obligations under the IRCA.

125.    Andor, Toleti, and Mahathi breached the IRCA by:

    a.    Engaging in business in competition with the business of Allscripts;

    b.    Directly or indirectly selling Products or services of the type sold by Allscripts to any customer or prospective customer of Allscripts;

    c.    Using or disclosing Allscripts Products Trade Secrets and Confidential Information for the benefit of Andor, Toleti, and Mahathi;

    d.    Soliciting Allscripts customers; and

    e.    Soliciting and/or engaging the services of Allscripts employees.

126.    As a direct result of Andor, Toleti, and Mahathi's actions as set forth above, Allscripts has suffered and will continue to suffer harm in an amount to be proven at trial.

WHEREFORE, Allscripts demands that judgment be entered against Andor, Toleti, and Mahathi, awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT III

## Breach of Contract – IRCA

(Against Bulsara)

127.    The allegations in paragraphs 1-126 are incorporated as though fully set forth herein

128.    At all relevant times, Allscripts and Bulsara had a binding and enforceable IRCA.

129.    Allscripts performed its obligations under the IRCA.

130.    By providing services to Andor, Bulsara breached the non-compete provisions of his IRCA with Allscripts.

131.    Upon information and belief, Bulsara has used or disclosed Allscripts Products Trade Secrets and Confidential information for the benefit of himself and Andor.

132.    Upon information and belief, Bulsara has assisted Toleti and Andor in their solicitation of Allscripts customers.

133.    Upon information and belief, Bulsara has assisted Toleti and Andor in providing solutions that are in direct competition with solutions offered by Allscripts, including patient engagement, Mobile Patient Experience, and telehealth.

134.    Bulsara breached the IRCA by:

a.    Engaging in business in competition with the business of Allscripts;

b.    Directly or indirectly selling Products or services of the type sold by Allscripts to any customer or prospective customer of Allscripts;

c.    Using or disclosing Allscripts Products Trade Secrets and Confidential Information for the benefit of Defendants; and

d.    Soliciting Allscripts customers.

135.    As a direct result of Bulsara's actions as set forth above, Allscripts has suffered and will continue to suffer harm in an amount to be proven at trial.

WHEREFORE, Allscripts demands that judgment be entered against Bulsara awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT IV

### Breach of Contract- Reseller Agreement

(Against Andor, Toleti, and Mahathi)

136.    The allegations in paragraphs 1-135 are incorporated as though fully set forth herein.

137.    At all relevant times, Allscripts, Toleti, Mahathi, and Andor had a binding and enforceable Reseller Agreement.

138.    Allscripts performed its obligations under the Reseller Agreement.

139.    Defendants breached the Reseller Agreement by:

a.    Engaging in business in competition with the business of Allscripts;

b.    Directly or indirectly selling Products or services of the type sold by Allscripts to any customer or prospective customer of Allscripts;

c.    Soliciting Allscripts customers; and

d.    Using or disclosing Allscripts Products Trade Secrets and Confidential Information for the benefit of Defendants.

140.    As a direct result of Defendants' actions as set forth above, Allscripts has suffered and will continue to suffer harm in an amount to be proven at trial.

WHEREFORE, Allscripts demands that judgment be entered against Toleti, Andor, and Mahathi awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

**COUNT V**

**Breach of Contract- Merger Agreement**

(Against Andor, Toleti, and Mahathi)

141.    The allegations in paragraphs 1-140 are incorporated as though fully set forth herein

142.    At all relevant times, Andor, Toleti, and Mahathi had a binding and enforceable Merger Agreement.

143.    Allscripts performed its obligations under the Merger Agreement.

144.    Andor, Toleti, and Mahathi breached the Merger Agreement by:

    a.    Engaging in business in competition with the business of Allscripts;

    b.    Directly or indirectly selling Products or services of the type sold by Allscripts to any customer or prospective customer of Allscripts;

    c.    Using or disclosing Allscripts Products Trade Secrets and Confidential Information for the benefit of Defendants;

    d.    Soliciting Allscripts customers; and

    e.    Soliciting the services of any current and/or former employee of Allscripts.

145.    As a direct result of Andor, Toleti, and Mahathi's actions as set forth above, Allscripts has suffered and will continue to suffer harm in an amount to be proven at trial.

WHEREFORE, Allscripts demands that judgment be entered against Andor, Toleti, and Mahathi awarding Allscripts preliminary and permanent injunctive relief, compensatory damages,

26

exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre-and post-judgment interest), and all additional relief deemed just.

## COUNT VI

## Breach of Contract- Marketing Services Agreement

(Against Andor)

146.    The allegations in paragraphs 1-145 are incorporated as though fully set forth herein

147.    At all relevant times, Allscripts and Andor had a binding and enforceable Marketing Services Agreement.

148.    Allscripts performed its obligations under the Marketing Services Agreement.

149.    Andor breached the Marketing Services Agreement by:

    a.    Engaging in business in competition with the business of Allscripts;

    b.    Directly or indirectly selling Products or services of the type sold by Allscripts to any customer or prospective customer of Allscripts;

    c.    Using or disclosing Allscripts Products Trade Secrets and Confidential Information for the benefit of Defendants;

    d.    Soliciting Allscripts customers; and

    e.    Soliciting the services of any current and/or former employee of Allscripts.

150.    As a direct result of Andor's actions as set forth above, Allscripts has suffered and will continue to suffer harm in an amount to be proven at trial.

WHEREFORE, Allscripts demands that judgment be entered against Andor awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT VII

### Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

(Against All Defendants)

151.    The allegations in paragraphs 1-150 are incorporated as though fully set forth herein.

152.    Allscripts is a leading innovator in the provision of EHR and PM solutions to physicians, medical practices, and hospitals.  As a leading innovator, Allscripts owns special, valuable, and unique trade secrets, especially with respect to its new and future products, including future product plans and designs such as product specifications, product forecasts, definitions, designs, research and development, patentable technologies, source code, particularized costing information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projections, and business plans relating to Allscripts' future products. Allscripts has expended considerable time, effort, and expense in compiling and developing Allscripts Product Trade Secrets.

153.    Allscripts Product Trade Secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use, including Allscripts' competitors.

154.    Each of Allscripts Product Trade Secrets alleged herein derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by Allscripts' competitors and any other persons who can obtain economic value from the disclosure or use of the information.

155.    Allscripts has undertaken reasonable methods to maintain the secrecy of its confidential trade secret information, including: (1) requiring non-disclosure agreements from

28

employees and non-employees exposed to the trade secret information; (2) requiring non-compete and non-solicitation agreements from employees exposed to the trade secret information; (3) ensuring limited access to trade secret information; and (4) requiring employees to maintain the confidentiality of all such information.

156.    Allscripts entered into non-disclosure, non-compete, and non-solicitation agreements with its employees, including Toleti and Bulsara, which expressly required Toleti and Bulsara to safeguard and maintain the confidentiality of all Allscripts Confidential Information and Proprietary Information, which include Allscripts Product Trade Secrets.    Andor and Health Grid entered into similar agreements with Allscripts requiring the safeguard and maintenance of confidentiality of Allscripts Confidential Information and Proprietary Information, including Allscripts Product Trade Secrets.

157.    By virtue of their employment with Allscripts and their positions within the company, and because they signed agreements ensuring that they would safeguard and maintain the confidentiality of Allscripts Confidential Information and Proprietary Information, Toleti and Bulsara were exposed to Allscripts Products Trade Secrets.

158.    Further, because of Toleti's positions within Andor and Mahathi, he was in a position to reveal this highly sensitive information in order to materially benefit himself and create a competitive advantage for Andor and Mahathi.

159.    Upon information and belief, because of Bulsara's engagement with Andor, he was also in a position to reveal this highly sensitive information in order to materially benefit himself and create a competitive advantage for Andor.

160.    Upon information and belief, Toleti has disclosed to employees at Andor and Mahathi, and they have in turn, used and exploited Allscripts Confidential Information and

Proprietary Information, including and especially Allscripts Products Trade Secrets, for the benefit of Andor and Mahathi.

161.    Upon information and belief, Bulsara has disclosed to employees at Andor, and they have in turn, used and exploited Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Products Trade Secrets, for the benefit of Andor.

162.    Andor and Toleti sought permission from Allscripts to hire key former Allscripts employees, including Bulsara.  On September 14, 2020, Allscripts rejected Andor and Toleti's request with respect to Bulsara.

163.    Andor and Toleti's request to hire Bulsara constitutes an admission that they are aware that hiring Bulsara without Allscripts' permission would constitute a breach of their various obligations to Allscripts.

164.    Despite this awareness, and Allscripts' firm rejection of Andor's request to hire Bulsara, Toleti and Andor have engaged the services of Bulsara in order to use and exploit, to the benefit of Defendants, and to the detriment of Allscripts, Bulsara's knowledge and possession of Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Product Trade Secrets, and to unfairly compete with Allscripts.

165.    Andor and/or Toleti's engagement of Bulsara was with Andor and Toleti's knowledge that such a move was a breach of its various contractual obligations with Allscripts. Thus, in obtaining the services of Bulsara, Andor and Toleti intended to breach those contractual obligations.

166.    Upon information and belief, Defendants have used Allscripts' trade secrets, of substantial economic value, to allow Andor to unfairly compete with Allscripts in the market for healthcare IT, even for Allscripts' own customers.

167.    Defendants' current and continued misappropriation of Allscripts' trade secrets is reckless and malicious. Each Defendant is aware of the confidentiality obligations and restrictions on use and disclosure of trade secrets.

168.    As a direct and proximate result of Defendants' current and continued misappropriation of Allscripts' trade secrets, Allscripts has suffered damages in an amount to be proven at trial.

169.    Moreover, Allscripts has suffered irreparable harm for which there is no remedy at law, and it will continue to suffer irreparable harm unless this Court enjoins Defendants from further misappropriating Allscripts' trade secrets.

WHEREFORE, Allscripts demands that judgment be entered against All Defendants awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT VIII

**Misappropriation of Trade Secrets Under the Illinois Trade Secrets Act, *et seq.***

(Against All Defendants)

170.    The allegations in paragraphs 1-169 are incorporated as though fully set forth herein.

171.    Allscripts is a leading innovator in the provision of EHR and PM solutions to physicians, medical practices, and hospitals.  As a leading innovator, Allscripts owns special, valuable, and unique trade secrets, especially with respect to its new and future products, including future product plans and designs such as product specifications, product forecasts, definitions, designs, research and development, patentable technologies, source code, particularized costing

information, bill of materials, customer acquisition, business opportunities and strategies, marketing and sales projections, and business plans relating to Allscripts' future products. Allscripts has expended considerable time, effort, and expense in compiling and developing Allscripts Product Trade Secrets.

172.    Allscripts Product Trade Secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use, including Allscripts' competitors.

173.    Each of Allscripts Product Trade Secrets alleged herein derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by Allscripts' competitors and any other persons who can obtain economic value from the disclosure or use of the information.

174.    Allscripts has undertaken reasonable methods to maintain the secrecy of its confidential trade secret information, including: (1) requiring non-disclosure agreements from employees and non-employees exposed to the trade secret information; (2) requiring non-compete and non-solicitation agreements from employees exposed to the trade secret information; (3) ensuring limited access to trade secret information; and (4) requiring employees to maintain the confidentiality of all such information.

175.    Allscripts entered into non-disclosure, non-compete, and non-solicitation agreements with its employees, including Toleti and Bulsara, which expressly required Toleti and Bulsara to safeguard and maintain the confidentiality of all Allscripts Confidential Information and Proprietary Information, which include Allscripts Product Trade Secrets.   Andor and Health Grid entered into similar agreements with Allscripts requiring the safeguard and maintenance of

confidentiality of Allscripts Confidential Information and Proprietary Information, including Allscripts Product Trade Secrets.

176.   By virtue of their employment with Allscripts and their positions within the company, and because they signed agreements ensuring that they would safeguard and maintain the confidentiality of Allscripts Confidential Information and Proprietary Information, Toleti and Bulsara were exposed to Allscripts Products Trade Secrets.

177.   Further, because of Toleti's positions within Andor and Mahathi, he was in a position to reveal this highly sensitive information in order to materially benefit himself and create a competitive advantage for Andor and Mahathi.

178.   Upon information and belief, because of Bulsara's engagement with Andor, he was also in a position to reveal this highly sensitive information in order to materially benefit himself and create a competitive advantage for Andor.

179.   Upon information and belief, Toleti has disclosed to employees at Andor and Mahathi, and they have in turn, used and exploited Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Products Trade Secrets, for the benefit of Andor and Mahathi.

180.   Upon information and belief, Bulsara has disclosed to employees at Andor, and they have in turn, used and exploited Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Products Trade Secrets, for the benefit of Andor.

181.   Andor and Toleti sought permission from Allscripts to hire key former Allscripts employees, including Bulsara.  On September 14, 2020, Allscripts rejected Andor and Toleti's request with respect to Bulsara.

182.    Andor and Toleti's request to hire Bulsara constitutes an admission that they are aware that hiring Bulsara without Allscripts' permission would constitute a breach of their various obligations to Allscripts.

183.    Despite this awareness, and Allscripts' firm rejection of Andor's request to hire Bulsara, Toleti and Andor have engaged the services of Bulsara in order to use and exploit, to the benefit of Defendants, and to the detriment of Allscripts, Bulsara's knowledge and possession of Allscripts Confidential Information and Proprietary Information, including and especially Allscripts Product Trade Secrets, and to unfairly compete with Allscripts.

184.    Andor and/or Toleti's engagement of Bulsara was with Andor and Toleti's knowledge that such a move was a breach of its various contractual obligations with Allscripts. Thus, in obtaining the services of Bulsara, Andor and Toleti intended to breach those contractual obligations.

185.    Upon information and belief, Defendants have used Allscripts' trade secrets, of substantial economic value, to allow Andor to unfairly compete with Allscripts in the market for healthcare IT, even for Allscripts' own customers.

186.    Defendants' current and continued misappropriation of Allscripts' trade secrets is reckless and malicious. Each Defendant is aware of the confidentiality obligations and restrictions on use and disclosure of trade secrets.

187.    As a direct and proximate result of Defendants' current and continued misappropriation of Allscripts' trade secrets, Allscripts has suffered damages in an amount to be proven at trial.

188.    Moreover, Allscripts has suffered irreparable harm for which there is no remedy at law, and it will continue to suffer irreparable harm unless this Court enjoins Defendants from further misappropriating Allscripts' trade secrets.

WHEREFORE, Allscripts demands that judgment be entered against All Defendants awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT IX

### Tortious Interference With Prospective Economic Advantage

(Against All Defendants)

189.    The allegations in paragraphs 1-188 are incorporated as though fully set forth herein.

190.    Allscripts has and had at all relevant times an existing business relationship with Health First.

191.    At all relevant times, Defendants were aware of Allscripts' relationship with Health First.

192.    Toleti caused Andor to breach the Agreements by using Allscripts' Confidential Information, including Allscripts Product Trade Secrets, to compete against Allscripts and has obtained business from Health First that could have otherwise gone to Allscripts.

193.    Upon information and belief, Bulsara has provided services to Toleti and/or Andor, including by using Allscripts' Confidential Information, including Allscripts Product Trade Secrets, to compete against Allscripts.

194.    Upon information and belief, Bulsara has assisted in Toleti and/or Andor's efforts to obtain business from Health First.

195.    Furthermore, Defendants have diverted revenue that could have otherwise been generated by Health First's business away from Allscripts.

196.    Defendants intentionally and unjustifiably interfered with Allscripts' expectation of revenue it would generate from the provision of products and/or services to Health First for Defendants' own improper benefit.

197.    Upon information and belief, Defendants have engaged in the same course of conduct with other Allscripts customers as well.

198.    There is no justification for Defendants' wrongful conduct, which is improper and taken for commercial and/or personal benefit, causing a breach of the Agreements, and proximately and directly causing Allscripts to suffer significant and continuing damages, as well as irreparable harm to its business relationship with Health First, for which there is no adequate remedy at law.

WHEREFORE, Allscripts demands that judgment be entered against All Defendants awarding Allscripts preliminary and permanent injunctive relief, compensatory damages, exemplary damages, its costs of suit (including, without limitation, attorneys' fees and costs, pre- and post-judgment interest), and all additional relief deemed just.

## COUNT X

### Injunctive Relief

(Against All Defendants)

199.    Allscripts incorporates by reference paragraphs 1-198 above as if fully set forth herein.

200.    Allscripts has a substantial likelihood of success on the merits of its claims against Defendants.

201.    Allscripts will suffer irreparable harm unless an injunction is issued enjoining Defendants from: (1) violating the non-solicitation and non-compete obligations in the Settlement Agreement, Merger Agreement, Reseller Agreement, the IRCAs, and the Marketing Agreement; (2) misappropriating Allscripts' Confidential Information, trade secrets, and intellectual property; (3) interfering with both pre-existing and prospective business relationships; (4) further injuring the goodwill Allscripts has created with its clients; and (5) further injuring Allscripts' reputation among its current and prospective clients by disparaging and denigrating its brand and professionalism.

202.    There is no adequate remedy at law to address these injuries.

203.    The threatened injuries to Allscripts outweighs any threatened harm an injunction may cause Defendants.

204.    The injunction will not disserve the public interest.

205.    WHEREFORE, Allscripts seeks judgment in its favor and against Defendants that preliminarily and permanently enjoins Defendants from violating the confidentiality, non-solicitation, and non-compete obligations in the Merger Agreement, Settlement Agreement, Reseller Agreement, IRCAs, and Marketing Agreement, misappropriating Allscripts' confidential information, trade secrets, and intellectual property, and unlawfully interfering with Allscripts' business relationships.

**JURY DEMAND**

Allscripts demands a trial by jury on all claims, defenses, and issues so triable.

Dated:  May 17, 2021                              BARNES & THORNBURG LLP

                                                 */s/  Chad S.C. Stover*
                                                 Chad S.C. Stover (No. 4919)
                                                 1000 N. West Street, Suite 1500
                                                 Wilmington, DE 19801
                                                 Tel:  (302) 300-3474
                                                 Fax:  (302) 300-3456
                                                 E-mail:   chad.stover@btlaw.com

                                                 Mark L. Durbin (*pro hac vice* forthcoming)
                                                 Scott T. Peloza (*pro hac vice* forthcoming)
                                                 BARNES & THORNBURG LLP
                                                 One North Wacker Drive, Suite 4400
                                                 Chicago, Illinois 60606
                                                 Phone: (312) 357-1313
                                                 Fax: (312) 759-5646
                                                 Mark.Durbin@btlaw.com
                                                 speloza@btlaw.com

                                                 *Attorney for Plaintiff Allscripts Healthcare, LLC*