**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Allscripts Healthcare, LLC, a North Carolina LLC, Health Grid Holding Company, LLC, Health Grid, LLC, Health Grid Coordinated Care Solutions, Inc., and Mahathi Software, LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 1:21-cv-00704-MAK |
| Andor Health, LLC, a Delaware Corporation; Mahathi Software Pvt., Ltd.; Raj Toleti, individually and as Representative of the Participating Equityholders the Merger Agreement; Paul Tyriver, individually; and Amar Bulsara, individually, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT OF RULE 26(F) MEETING

Under Federal Rule of Civil Procedure 26(f), this Court's August 23, 2021 Order and this Court's Policies, counsel for the parties conferred on September 7, 2021 and submit the following report of their meeting for the Court's consideration at the initial pretrial conference on **September 13, 2021 at 8:45 a.m.**:

## I.   DISCUSSION OF SPECIFIC CLAIMS, DEFENSES AND RELEVANT ISSUES

### A.  Summary of Plaintiffs' claims

Allscripts, Healthcare, LLC, HealthGrid Holding Company, LLC, Health Grid LLC, Health Grid Coordinated Care Solutions, Inc., and Mahathi Software, LLC (collectively "Allscripts") have asserted claims in the Second Amended Complaint ("SAC") related to breaches of eight different contracts, violations of seven different statutes, a variety of tortious conduct, and

the civil conspiracy among Defendants Toleti, Mahathi, Andor, and Tyriver that engulfs conduct supporting many of the individual claims. By way of summary, Allscripts' claims can be grouped by category of alleged misconduct, though the claims overlap in many regards.

### (1) Violations of Restrictive Covenants, Misappropriation and Misuse of Confidential and Trade Secret Information, and Tortious Interference

Allscripts' original complaint focused on Defendants' breach of contract, misappropriation of trade secrets, and tortious interference case.  Through a merger transaction in 2018, Allscripts acquired ownership of entities operating under the name Health Grid and their associated intellectual property, including their mobile patient experience ("MPE") applications. Those applications were marketed as the "HealthGrid" applications prior to the acquisition and are often referred to as such in the documents, particularly nearer the time of the transaction close on May 18, 2018.  Allscripts integrated the HealthGrid business and its applications into its consumer business unit to integrate the HealthGrid applications into Allscripts' FollowMyHealth ("FMH") application and market it to Allscripts' existing and prospective clients.

Defendant Toleti was one of the founders and owners of the HealthGrid businesses and became and Allscripts employee after the acquisition. He was the general manager of the HealthGrid business while employed at Allscripts.  Defendant Bulsara was also a HealthGrid employee that came to work for Allscripts after the acquisition. (Many other HealthGrid employees also came to work at Allscripts after the acquisition.)  Bulsara was in charge of implementing the MPE applications for HealthGrid/Allscripts' clients.

Allscripts acquired all of the intellectual property, know-how, confidential information, and trade secrets of the Health Grid entities.  Toleti and Bulsara had knowledge of this information while employed at HealthGrid and at Allscripts.  In addition, while employed at Allscripts, they were actively involved in Allscripts' business, including, for example, its integration of the

HealthGrid applications into the FMH application, the marketing, sale, distribution, and implementation of those applications at HealthGrid/Allscripts' clients and prospective clients, the strategy for marketing the applications, the pricing models for the applications and implementations, the contract terms with clients, the internal analysis of client and prospective client needs and opportunities for sales, as well as Allscripts' product plans and strategies.

Defendant Toleti is also an owner and a founder of Andor (known as Patient Comp until late 2019) and Mahathi. Mahathi is an Indian entity with its U.S. headquarters in Florida. (As part of the merger, Allscripts acquired Mahathi's U.S. entity, which is a plaintiff in this case and a separate legal entity from Mahathi the defendant.)

Toleti separated from Allscripts effective March 31, 2020, and Bulsara separated several months later in 2020. Toleti, together with and through Andor, Mahathi, and Bulsara, have violated their contractual obligations, by developing, marketing, and implementing competitive products and relying on their many years of knowledge of HealthGrid/Allscripts' products, existing client base, and prospective client base to compete with Allscripts. Defendants were responsible for managing and interacting with the very same clients while at HealthGrid/Allscripts to whom they are now providing competing products and services, with the advantage of knowing nearly everything about Allscripts' business, e.g., who its clients are, which prospective clients Allscripts views as significant, its marketing strategy, its solutions' strengths and weaknesses, its pricing and pricing mode, its contract terms, as well as which clients have needs or concerns Defendants may exploit in competition with Allscripts.

The contracts implicated by this activity are the Settlement Agreement, the Marketing Services Agreement, the Reseller Agreement, the May 1, 2017 SOW, the May 18, 2018 SOW, the Merger Agreement, Toleti's Invention Covenants and Restrictions Agreement ("ICRA") with

Allscripts, and Bulsara's ICRA with Allscripts. In addition, this conduct violates the Defend Trade

Secrets Act and the Illinois Trade Secrets Act, as well as constituting tortious interference, unfair

competition, and supporting the claim for civil conspiracy.

The following counts of the SAC involve the issues summarized above: Count I (Civil

Conspiracy), Count VI (Defend Trade Secrets Act), Count VII (Illinois Trade Secrets Act), Count

X (Unfair Competition), Count XI (Tortious Interference), Count XIII (Settlement Agreement);

Count IV (Andor, Toleti, Mahathi ICRA), Count XV (Bulsara ICRA), Count XVI (Reseller

Agreement), Count XVII (Marketing Agreement), Count XVIII (Merger Agreement), Count XIX

(May 1, 2017 and May 18, 2018 SOWs), Count XXI (Injunctive Relief)..

### (2) Additional Breaches of Contract Under the Reseller Agreement, SOWs and Merger Agreement

In addition to violating the restrictive covenants, confidentiality, and non-disparagement

and no-interference provisions in the various agreements, Allscripts is pursuing recovery for

Andor's breach of the Reseller Agreement based on its failure to deliver a functioning "Config

Tool".  The Config Tool is an application Andor offers to assist customers in implementing the

HealthGrid/Allscripts MPE applications.  Typically in the industry with enterprise software at this

level, the configuration tools are part of the application and provided at no additional charge with

the application so clients will purchase and be able to use the application; however, the HealthGrid

applications did not have configuration capabilities built into the software.  As a result, Allscripts

contracted with Andor to provide the Config Tool and Andor never provided a functioning tool.

Allscripts was forced to build its own configuration capability so it could market and implement

the MPE applications.

In addition to violating the exclusivity provisions in the SOWs, Mahathi and Andor

violated the intellectual property provisions of the May 1, 2017 SOW and the May 18, 2018 SOW

when Mahathi claimed ownership over the work product it developed under the SOWs at Allscripts direction and which, per the SOWs, is owned entirely by Allscripts and when Mahathi purported to revoke the "perpetual" licenses to any aspect of the user interface ("UI") that Allscripts does not own.  (D.I. 41, at p. 24-25, ¶¶ 95-96, 102-103). Mahathi made these assertions on June 18, 2021, more than a month after the last SOW expired, based on Allscripts' purported material breach of one of the expired SOWs.  Mahathi claims Allscripts breached the SOW by cutting off Mahathi's access to the servers where Allscripts' stores and hosts the MPE applications on Friday, May 14, 202, the day Mahathi's services for Allscripts were at an end and three days before the SOW expired the following Monday, May 17, 2021.  The data Mahathi claims the SOWs obligated Allscripts to make available to Mahathi was hosted on servers provided by Microsoft and a company known as Flexential (or ViaWest), under Allscripts' contracts with those companies. (D.I. 41, at pp. 29-32, ¶¶ 116-139). There is nothing in the language of any SOW that imposes any obligation on Allscripts to give Mahathi access to Allscripts' servers or its code, either during the term of the SOW or after its expiration.

Moreover, Mahathi assigned the SOW to Andor in September of 2019. (D.I. 41, at p. 22, ¶ 81; D.I. 59, at p. 172, ¶ 169). Thus, even if the SOW contained a provision requiring Allscripts to provide Mahathi with access to Allscripts' storage locations (it did not), Mahathi had no standing to assert a breach of that provision during the term of the SOW, let alone a month after it expired. Mahathi fabricated these alleged breaches to support its abuse of process in the Indian criminal justice system, to support its threats of additional civil action in India, and to support its baseless counterclaims and defenses in this Action.  And, by doing so, Andor and Mahathi (to the extent it has any standing or rights under the SOWs at all) further breached the SOWs.

If Mahathi is correct that it holds rights to any aspect of the MPE applications that limit Allscripts' rights in and to the MPE applications, then Toleti, individually and on behalf of the Participating Equityholders under the Merger Agreement, breached the numerous representations and warranties in the Merger Agreement that assure the HealthGrid assets necessary for Allscripts to run the business and exploit the MPE applications were owned by HealthGrid and were being transferred to Allscripts through the transaction, including, without limitation, all the contracts related to hosting the data at Flexential and Microsoft, the rights of all founders of the company (like Toleti) in any of the intellectual property, and any independent contractors who had worked on the applications (like Mahathi) in any of the intellectual property. (D.I. 41, at pp. 16-21, ¶¶ 60-77). Thus, to the extent Mahathi is able to establish that it has any rights in or to any of the intellectual property or other aspect of the MPE applications or HealthGrid business, Toleti, individually and on behalf of all the Participating Equityholders, is liable to Allscripts for all of the harm Allscripts sustained, including the devaluation of the MPE applications and the HealthGrid business, as well as all of the costs and fees associated with resolving Mahathi's claims of ownership, whether in this court or any other forum (damages that continue to accrue).

The following counts of the SAC involve the issues summarized above: Count XVI (Reseller Agreement), Count VIII (Merger Agreement), Count XII (Breach of Duty of Loyalty), Count XIX (SOWs).

### (3) Computer Fraud and Abuse

On June 14, 2021, Allscripts filed its First Amended Complaint after Toleti, Mahathi, Andor, and Tyriver attacked Allscripts' MPE applications on May 20, 2021 forcing Allscripts to take the applications off line, secure them from Defendants' attack, and repair them, thereby disrupting healthcare for millions across the U.S. and expanding the scope of the parties' disputes.

As of May 14, 2021, Mahathi and Andor had access to the MPE applications, as well as their code and related data, only for the purpose of supporting Allscripts.  As noted above, Mahathi provided contract labor, referred to as "resource augmentation" in the SOWs, in support of the HealthGrid/Allscripts' MPE applications.  It provided those services at HealthGrid/Allscripts' request and under HealthGrid/Allscripts' direction since at least May 1, 2017.

Also as of May 14, 2021, Mahathi and Andor's work on the MPE applications was at an end.  (D.I. 59, p. 5, para. 10 ("Defendants admit that Mahathi had completed its work for Allscripts on the MPE applications as of May 14, 2021.")  The May 18, 2018 SOW was to expire by its terms the following Monday, May 17, 2021, and therefore, to protect and secure the MPE applications and related data, on May 14, 2021, Allscripts exercised its administrative control over access to data stored on the Flexential server in Pennsylvania and the Microsoft servers in Virginia to block Defendants from further access.

In the early morning hours of May 20, 2021, Mahathi, Andor, Toleti, and Tyriver regained administrative access to the MPE applications stored with Microsoft in Virginia (but not the data stored with Flexential in Pennsylvania).  It appears Defendants regained those administrative controls through relationships with two third parties, Ingram Micro and KGN Technologies. (Defendants have implied that Microsoft gave them access; however, that is not the case.)  Once they regained administrative control, Defendants created a fake account for Tyriver that would circumvent the dynamic security Allscripts had included to block any Mahathi user's access, downloaded the confidential log in information of Allscripts' users, and disabled all of Allscripts access to the system and blocked them from accessing the system. Then, free to work within the MPE applications, Defendants attacked the applications and their functionality (**not** PHI).  The disabled the web application, immediately severing patient access to their healthcare providers

through their mobile devices.  They turned off various "virtual machines" that provided additional functionality, seemingly in a haphazard attack designed to inflict damage randomly throughout the applications that would be hard to find and repair.

Allscripts regained access to the MPE applications with Microsoft's help and began trying to stop the attack and repair the damage. They refused or ignored Allscripts' pleas.  Allscripts turned back on functionality; Defendants turned it back off.  Allscripts turned back on the "virtual machines"; Defendants turned them back off.  Allscripts reached out to Defendants multiple times throughout the day and asked them to stop the attack because they were impacting patient care. Defendants ignored or rejected Allscripts' pleas.

To avoid future damage and begin repairing the MPE applications, Allscripts saw no choice but to shut down the MPE applications. Allscripts worked with Microsoft to ensure the MPE applications and all related data was in a secure hosting environment that Defendants could not access through a back door, as they had done before.  Allscripts began restoring functionality days later, and the applications were fully restored for use weeks after the attack.

Defendants have offered two defenses to the attack. First, they claim they were simply doing what Allscripts asked them to do.  On May 14, 2021, Allscripts sent a notice to Andor and Mahathi confirming that it did not want to extend the SOW, that Andor and Mahathi should delete any protected health information ("PHI") in their possession.  PHI is data related to the healthcare of patients.  The MPE applications are not PHI; nor is the code on which the MPE applications are built. PHI is patient data, and neither Andor nor Mahathi should have had any PHI related to their work for Allscripts in their possession or control as of May 14, 2021.  The letter calling for the destruction of PHI was due diligence to ensure compliance with all applicable legal requirements.

8

Allscripts' May 14, 2021 notice also contained instructions related to the MPE applications. Allscripts did not ask Andor and Mahathi to destroy the MPE applications, as Defendants contend. Allscripts demanded that Mahathi and Andor "immediately ***cease all use*** of all Allscripts materials, software, and Confidential Information, ***and promptly return*** all such information (including all copies and extracts of the foregoing) to Allscripts." (D.I. 59, p. 174, para. 177).

Despite its current argument that it was simply following Allscripts instructions, not once during the attack, as Allscripts was reaching out to Defendants to convince them to stop the attack, did Defendants contend that they thought they were just doing what Allscripts' had asked it to do in its May 14, 2021 notice. And even if there had been some legitimate confusion (there was not any confusion), once Allscripts began reaching out, Defendants would have stopped and at least asked for clarification. They did not. Because what Defendants were doing had nothing at all to do with deleting PHI. They were attacking the applications and their code, not patient information. And rather than ceasing use of and returning all Allscripts software in their possession and control as Allscripts had demanded, Defendants were accessing applications to which they had no access until they circumvented Allscripts' security and began manipulating and damaging the software to inflict harm on Allscripts by disrupting the use of the MPE applications by millions of patients and healthcare providers across the country.

Defendants' second argument is that Allscripts was foolish to leave such important property in their hands. Defendants claim that somehow, despite the scope of the transfer of rights under the Merger Agreement, despite the language of the SOWs, despite the transfer of all of HealthGrid's Microsoft accounts to Allscripts, and despite the fact that Allscripts was paying for the hosting environment and even Mahathi's licenses to use the Microsoft software, Mahathi

owned and had the right to control Allscripts' access to the MPE applications because, Defendants claim, Mahathi "owned" the "tenant". Per Defendants, "Allscripts is the one who inexplicably left millions of patient records on the Azure tenant of a company with whom it had just severed its business relationship." (D.I. 59 at p. 148, para. 29).

There are multiple fundamental flaws with Defendants' "tenant" argument. The first is that, regardless of whether Mahathi did or even could "own" the "tenant", that is entirely irrelevant to what they did. This is about Defendants' attack on the MPE applications. As the foregoing quote from Defendants' counterclaims make clear -- blaming Allscripts for leaving its property where a disgruntled former business partner could break in, attack and steal it – it was still Allscripts' property. Defendants **<u>do not claim</u>** to have owned the MPE applications themselves. This make sense because Allscripts paid tens of millions of dollars for them and paid millions more to Andor and Mahathi to work on them for Allscripts. They **<u>do not claim</u>** that they owned the servers on which they were stored. This makes sense because those servers were owned by Microsoft and space was leased on them and paid for by Allscripts under its contract with Microsoft. And they **<u>do not claim</u>** to have owned or controlled the Microsoft subscriptions and folders thereunder in which the MPE applications and "millions of patient records" were stored. This too makes sense because those subscriptions, the folders Allscripts created within them, and the data and code Allscripts had placed in them related to MPE applications were under Allscripts' contract with Microsoft and paid for by Allscripts. In fact, to the extent Mahathi incurred any costs associated with its work on the applications, including, e.g., costs it incurred for Microsoft licenses so it could work on the applications, Mahathi asked Allscripts to reimburse it for those costs (and Allscripts did so) because the costs were incurred for Allscripts' benefit in connection with Allscripts' applications and data, not for the benefit of Andor or Mahathi.

Thus, even if Defendants were correct about "owning" the "tenant" that was storing the MPE applications (they are not), the fact that Defendants claim to have owned the tenant would not excuse their destruction of the MPE applications while ignoring Allscripts' requests that they stop doing, at the expense of millions of patients and health care providers, as well as Allscripts' reputation in the industry and its client relationships.  Even Defendants were correct (they are not), they should have done exactly what Allscripts demanded they do on May 14, 2021 – immediately *cease all use* of all Allscripts materials, software, and Confidential Information, ***and promptly return*** all such information (including all copies and extracts of the foregoing) to Allscripts." (D.I. 59, p. 174, para. 177).

There are more reasons Defendant's "tenant" argument is flawed, starting with the fact that a "tenant" is not thing.  It is not a device, or a computer, or a hard drive, or a collection of computers. It does not store data. It cannot be accessed or hacked.  It is an administrative tool used by Microsoft akin to an account number.  Microsoft does not bill for it separately.  Microsoft bills for licenses, storage, and related services, not account numbers.  All of these items were under ***Allscripts'*** Microsoft account, which is why Microsoft helped Allscripts regain control of and secure the MPE applications from Defendants' attack.

Defendants' conduct supports many of Allscripts' tort claims, its trade secrets, and its civil conspiracy claim, in addition to Allscripts' claims for violations of computer protection statutes. The following counts of the SAC involve the issues summarized above: Count I (Conspiracy), Count II (Computer Fraud and Abuse Act), Count III (Stored Wire and Electronic Communications Act), Count IV (Computer Abuse and Data Recovery Act), Count V (Illinois Computer Tampering Act), Count VI (Defend Trade Secrets Act), Count VII (Illinois Trade Secrets Act), Count VIII (Florida Unfair and Deceptive Trade Practices Act), Count X (Unfair

Competition), Count XI (Tortious Interference), Count XII (Breach of Duty of Loyalty), Count XXI (Injunctive Relief).

### (4) Unfair Competition, Abuse of Process, and Tortious Interference

On August 6, 2021, Allscripts filed its Second Amended Complaint after Mahathi, Toleti, and Andor began and supported a campaign of baseless criminal complaints in India and threatened additional civil and criminal actions against Allscripts and others connected to Allscripts. At the end of June and in very early July, the Individual Counterclaim Defendants received notices from the Indian police demanding certain information. Allscripts responded on July 6, 2021 on behalf of the Individual Counterclaim Defendants, advising the Indian police of the parties' dispute in the U.S. Courts and offering to provide further information if required.

On July 13, 2021, the Indian police, and potentially others, raided two offices in India associated with an Allscripts' Indian entity (Allscripts Technology Private Ltd.). That entity had no operations or employees and had nothing to do with any of the events at issue. Nonetheless, Allscripts ultimately learned that Mahathi filed a criminal complaints against the Indian entity, the Individual Counterclaim Defendants, and others seeking their "immediate arrest". Mahathi's criminal complaints falsely claim that the May 18, 2018 SOW was with the Indian entity (though Mahathi has judicially admitted in this Court that it is not), that Mahathi was still a party to that SOW (rather than having assigned it to Andor), that the data Mahathi knew was on servers was in Pennsylvania and Virginia was actually in Mahathi's offices in India, and that the Indian entity was involved in hacking into Mahathi's supposed "tenant".

The Indian police spent eight hours questioning a director for the Indian entity, Mr. Jaydeep Wakankar. At another location, in a different city, a group of Indian police, and potentially others, questioned the registered accountant for the entities. The Indian police accessed files and took

copies of financial documents.  They also spent two hours questioning in-house counsel for the party to this case, Allscripts Healthcare Technologies, LLC, who was attempting to clarify that the Indian entities and Mr. Wakankar had nothing to do with the underlying events and that those events are already the subject of a dispute in the U.S. Courts.  Allscripts agreed to provide additional information and did so on July 14, hoping to end the inquiry.

The inquisition did not end.  The Indian police issued another demand that Mr. Wakankar travel across India in the midst of a pandemic – despite having underlying medical conditions – to be questioned at the police station or be arrested.  The Indian High Court issued an order on July 16, 2021 protecting him from immediate arrest and further "coercive" measures.  Mahathi filed papers in court opposing Mr. Wakankar's petition for protection, appealing the order granting him that protection, and filed another criminal complaint for perjury, claiming that Mr. Wakankar lied when he said he had no involvement with the underlying events – a fact Mahathi knows to be true. In fact, Mahathi has filed three detailed versions of its counterclaims in this action related to the very same events and has made its initial disclosures.  None of those documents identify Mr. Wakankar or anyone who works for an Allscripts entity in India as having any knowledge of the alleged "hack" of Mahathi's tenant or any of the other events at issue.

Since then, it is Allscripts' understanding that Mr. Wakankar has been forced to travel across the country for two additional, in-person interrogations at the police headquarters, each of them lasting between 10 and 12 hours, and for a third session recently, for a total across all four days of interrogation of of in excess of 30 hours of questioning.  The police have issued an additional notice to Mr. Wakankar demanding he return again and submit to further interrogation. Apparently finding nothing relevant with respect to Allscripts Technology Private Ltd., the police are now focusing on another entity that Mahathi knows has nothing to do with the events at issue,

Allscripts (India) LLP. Mr. Wakankar is also associated with that entity, as the head of finance. The police raided took Mr. Wakankar's phone and his laptop, which contains information related to the Allscripts' entities' business, and are demanding access to additional information from early 2019 and possibly before – though the alleged "hacking" of the "tenant" occurred a few months ago, in May of 2021.  The police have also now summoned additional employees if the Indian entities (managers of IT, sales, HR) and have demanded that they answer questions and turn over data and have issued additional notices to Allscripts in the US and at least one Individual Counterclaim Defendant.

The evidence will show that Mahathi is not doing this alone. Toleti is its founder, CEO, and director, and he is using his entities and his influence to push this investigation forward to coerce Allscripts to drop or compromise its claims, to damage Allscripts in the marketplace, to harm its reputation and the reputations of the Individual Counterclaim defendants, and as a backup plan for this litigation – a second or third bite at the apple in the civil and criminal courts in India. Defendants hope to obtain judgments in their favor in one or more of those proceedings that they can continue to use against Allscripts and the Individual Counterclaim defendants, leaving them at least in constant fear of arrest, interrogation, or seizure of property.

This conduct supports many of Allscripts' claims, including its abuse of process, unfair competition, unfair and deceptive trade practices, and civil conspiracy claims.  The following counts of the SAC involve the issues summarized above: Count I (Conspiracy), Count VIII (Florida Unfair and Deceptive Trade Practices Act), Count IX (Abuse of Process), Count X (Unfair Competition); Count XI (Tortious Interference), Count XXI (Injunctive Relief)..

**(5) Intellectual Property Ownership**

14

One of Defendants' goals is to cast a cloud over Allscripts' ownership of the rights to the MPE applications, even if they fail to obtain an injunction that may be enforced to stop Allscripts from developing, marketing, selling, and supporting them. To that end, as described above, they have purported to claim ownership over the user interface for the MPE applications. To avoid this cloud, Allscripts has asked this Court to declare the parties' rights in the UI and the MPE applications in Count XX of the SAC.

### B. Summary of Claims of Andor, Mahathi, and Toleti and Related Defenses Asserted by Andor, Mahathi, Toleti, and Tyriver.

In an effort to comply with the Court's directive to assume the Court's familiarity with the claims, counsel for Andor, Mahathi, Toleti, and Tyriver will endeavor to "concisely describe the facts supporting their claims and defenses." Nearly three months after Defendants responded in detail to completely rebut a wrong, vague and oddly timed cease and desist letter from Allscripts concerning so-called violations of noncompetes based on facts Allscripts had been aware of for a very long time (Allscripts sent the cease and desist conveniently at a time when it was not producing to meet its earnout obligations under the Merger Agreement), Allscripts filed this baseless, hyperbolic lawsuit in a transparent and orchestrated effort to stifle lawful competition, to malign and disparage Andor, Mahathi, and Toleti, unlawfully interfere with the business relationships of Andor and Mahathi by smearing them to customers, and to cover up Allscripts' own flagrant and unlawful misconduct. Allscripts' misconduct includes Allscripts' hacking into Mahathi's cloud storage system (its Microsoft Azure tenant and enterprise data, which to any computer expert, any employee in the tech world and according to Microsoft, is a real thing), which Allscripts knew full well it had no right to do. Indeed, Allscripts has admitted to this "PR Lawsuit" by advising an unknown number of parties that Allscripts intended to use this lawsuit as a "public

15

relations campaign" to publicize its baseless claims to harm Toleti, Mahathi and Andor, a smaller but more innovative company than Allscripts.

The counterclaims asserted by Andor, Mahathi, and Toleti broadly fall into four categories: (1) unlawful anti-competitive conduct and commercial disparagement engaged in by Allscripts to harm Andor and its business prospects, (2) computer fraud and abuse relating to Allscripts' malicious and intentional seizure of and attack on Mahathi's Azure tenant, (3) intellectual property breaches, including trade secret misappropriation, breach of the reseller agreement and licensing violations, and (4) breach of the earnout provisions of the Merger Agreement.

### (1) Unlawful Anticompetitive Conduct and Commercial Disparagement

Allscripts knows its belated claims that Andor, Mahathi, and Toleti are "unlawfully" competing with Allscripts are baseless and designed to distract from Allscripts' own failure to meet its obligations to Andor, Mahathi, and Toleti. Allscripts' true intention in filing this lawsuit is to use it as a means to interfere with Andor's existing and prospective customer relationships by repeating the false allegations in Allscripts' complaints to these customers and telling these customers that Andor is legally prohibited from doing business with them. In so doing, Allscripts has both tortiously interfered with Andor's prospective economic advantage (Count II) and also engaged in unfair competition (Count III).

Prior to the acquisition, HealthGrid was a standalone, mobile patient engagement platform. HealthGrid did not offer products or services relating to telehealth or virtual care. HealthGrid did not offer configuration services, nor did HealthGrid have any plans to make any such offerings at the time of the acquisition or in the one year prior to acquisition. Even at the time of Toleti's departure from Allscripts, Healthgrid did not provide telehealth functionality. Allscripts knows full well that HealthGrid had no telehealth functionalities at the time Allscripts acquired it in May

16

2018, knows that HealthGrid had not "actively considered" providing telehealth products or services in the twelve months prior to the acquisition, and knows that Toleti never acquired any "confidential information" or "trade secrets" relating to any telehealth products offered by Allscripts during his tenure at Allscripts. That is why Allscripts agreed in March 2020 that Toleti could work for Andor "in any capacity" and specifically agreed that Andor's flagship products did not compete with Allscripts' FMH platform.

Since acquiring HealthGrid, Allscripts has repeatedly confirmed, through its words and actions, that Andor can market and sell virtual care and telehealth products and services without violating any non-competition agreements between Allscripts and Andor, Mahathi or Toleti:

- In the September 2019 Reseller Agreement, Allscripts contracted for the right to sell and to license the right to use certain functionalities of Andor's Config tool with Allscripts' customers.

- In the March 2020 Settlement Agreement, Allscripts expressly agreed that Andor's flagship products ThinkAndor and AndorNow do not compete with Allscripts and also agreed that Toleti could work for Andor "in any capacity," without violating previously negotiated non-compete agreements.

- In the May 2020 Marketing Services Agreement, Allscripts agreed to permit Andor to sell ThinkAndor and AndorNow directly to Allscripts customers, in exchange for a fee.

- In June 2020, Allscripts employees sat through a complete demonstration of the ThinkAndor and AndorNow platform, which is the same demonstration that Andor uses today to sell these platforms.

Allscripts never contended that Andor, Mahathi, or Toleti were "competing" with Allscripts in violation of any agreement between the parties until February 26, 2021, at which point Allscripts had known for years about the capabilities of Andor's products and services. Rather try to compete with Andor fairly in the marketplace, Allscripts has filed objectively baseless "unlawful" competition claims to interfere with Andor's prospective economic advantage and to use the false allegations in its various complaints to compete unfairly with Andor.

Count VII alleges that Allscripts has further engaged in unfair competition by entering into the Reseller Agreement with the express intention of blocking Andor from selling its Config Tool directly to any Allscripts customers. In so doing, Allscripts has breached the Reseller Agreement by breaching the implied covenant of good faith and fair dealing.

Finally, Allscripts has engaged in commercial disparagement (Count IV) by telling existing and prospective customers of Allscripts that Andor's Config Tool does not work. This statement is false and disparaging, and Allscripts knows it. Andor's Config Tool does work. Allscripts has never tested or validated it with FMH, despite repeated requests from Andor that Allscripts do so. Allscripts has been falsely telling Andor customers that Andor's Config Tool does not work so that Allscripts could try to sell a configuration tool that Allscripts' has been developing using the proprietary code for Andor's Config Tool that Allscripts misappropriated.

### (2) Computer Fraud and Abuse

In Counts I and XI, Mahathi asserts claims under the federal Computer Fraud and Abuse Act and its Florida analog against Allscripts and the Individual Counterclaim defendants, relating to their illegal intrusions into an actions within Mahathi's Azure tenant between May 14, 2021 and May 21, 2021. On May 14, 2021, Allscripts Healthcare sent a letter to Mahathi stating that Allscripts would not extend the May 18, 2018 SOW past the initial term ending May 17, 2021 and demanding that Mahathi delete any HealthGrid data to which Mahathi had access within 30 days. Fifteen minutes prior to sending that demand, and while the SOW was still in effect, Allscripts began executing a premediated, surreptitious, and illegal attack on Mahathi's Microsoft Azure tenant and enterprise data (which are located in India), through which Allscripts and the Individual Counterclaim Defendants seized control of Mahathi's tenant and removed Mahathi's administrative access to its own Azure tenant. Allscripts and the Individual Counterclaim

18

Defendants took these actions knowing that Mahathi owned the Azure tenant and knowing that Mahathi never gave any of them permission to access, disable, or otherwise alter any of Mahathi's Azure services. Mahathi spent the next six days trying to regain control of its tenant, with support from Microsoft and its channel partners in India. Mahathi supports the provision of philanthropic healthcare services in India. Allscripts Healthcare's illegal seizure of control of Mahathi's Azure tenant and its actions to lock out all of Mahathi's administrators severely disrupted Mahathi's facilitation of this patient care during the height of the COVID-19 pandemic in India, causing significant harm to not only Mahathi, but to patients who were denied access to healthcare during these six critical days.

### (3) Intellectual Property Breaches

In Counts V, VI, and X, Andor and Mahathi have alleged claims based on intellectual property violations and breaches committed by Allscripts.

In Counts V and VI, Andor has asserted a federal trade secret misappropriation claim under the Defend Trade Secrets Act and a breach of contract claim under the Reseller Agreement based on Allscripts' misappropriation of Andor's intellectual property, including certain JSON output files and proprietary code relating to Andor's Config Tool, which are the confidential information and trade secrets of Andor. Allscripts has misappropriated this proprietary code to reverse engineer its own configuration tool, rather than market and sell the Andor Config Tool, in violation of the Reseller Agreement and in violation of the Defend Trade Secrets Act.

In Count X, Mahathi has asserted a claim for breach of the license it gave Allscripts to use Mahathi's standard User Interface in the May 18, 2018 SOW ("UI License"). Since at least the time it executed the May 18, 2018 SOW, Allscripts has known that Mahathi owned the intellectual property rights for the standard User Interface ("UI") used in the HealthGrid platform. The UI

License granted to Allscripts was non-exclusive and was not "irrevocable." Accordingly, Mahathi retained the right to cancel the UI License for any reason, including a material breach of the terms of the UI License committed by Allscripts. Between May 14, 2021 and May 21, 2021, Allscripts engaged in egregious misconduct, including hacking into Mahathi's Azure tenant, removing Mahathi's access to the Azure DevOps repository, and blocking Mahathi's access to the Subversion repository, all of which constitute material breaches of the UI License and provide more than ample basis for Mahathi to cancel the UI License, which Mahathi did on June 18, 2021.

Regarding Allscripts allegations of "assignment" of Mahathi's IP rights in its standard UI, the evidence will show that Mahathi never assigned, conveyed title to, or transferred ownership rights in its standard UI to Andor, Allscripts or any other party, and Allscripts has no evidence to the contrary. Specifically, no assignment of contract or other rights from Mahathi to Andor was actually effectuated in September 2019. Rather, Mahathi continued to bill Allscripts for certain services relating to Microsoft Azure until June 2020. In the spring of 2020, Mahathi assigned certain billing issues relating to Mahathi's Azure licenses to Andor, who then billed Allscripts for these services after June 2020. Correspondence from this time between Andor and Allscripts demonstrates that Allscripts understood the assignment related to billing issues only.

**(4) Breach of the Merger Agreement**

Counts VIII and IX allege breach of the Merger Agreement by Allscripts and seek specific performance of this agreement. In the Merger Agreement, Allscripts agreed to operate HealthGrid "in good faith and in the long-term best interests of HealthGrid's business, not taking into account the impact of the earn-out payments." Allscripts also agreed to provide certain quarterly reports relating to the earn-out payments to Toleti, as the Representative. Allscripts has violated both of these obligations and caused damaged to the stockholders of HealthGrid.

20

Since acquiring HealthGrid, Allscripts has intentionally and deliberately mismanaged HealthGrid's business in a manner designed to materially reduce HealthGrid's revenue and thereby reduce or even eliminate earn-out payments that would otherwise be due. Since May 2019, Allscripts has failed to deliver the quarterly reports setting forth Allscripts' calculation of HealthGrid's earn-out revenue, as required by the Merger Agreement, despite requests from Toleti that Allscripts provide these reports. Allscripts has failed to provide the required quarterly reports in an effort to conceal Allscripts' failure to operate the HealthGrid business in good faith. In so doing, Allscripts has breached the Merger Agreement and damaged the stockholders.

**Defenses of Andor, Mahathi, Toleti, and Tyriver**

With respect to Allscripts' claims of "unlawful competition," the facts supporting the defenses of Andor, Mahathi, and Toleti are summarized in Part B.1 above. Regarding Allscripts' "solicitation" claims, the evidence will show that Bulsara does not work for Andor and was not solicited by Andor.

With respect to Allscripts' computer fraud and abuse claims, the facts supporting the defenses of Andor, Mahathi, Toleti, and Tyriver are summarized in Part B.2 above.

With respect to Allscripts intellectual property ownership claims, the facts supporting the defenses of Andor, Mahathi, and Toleti are summarized in Part B.3 above.

With respect to Allscripts' claims based upon the criminal proceedings in India, Andor, Mahathi, and Toleti summarize the facts supporting their defense to these claims as follows. As an initial matter, Allscripts' "abuse of process" claim fails as a matter of law because a criminal complaint cannot support an "abuse of process" claim.

Moreover, this claim also fails because Allscripts has repeatedly and intentionally grossly mischaracterized the facts relating to the legal proceedings in India, in an effort to malign and

disparage Mahathi, Andor, and Toleti. The evidence will show that, after Allscripts filed this action, Mahathi was the victim of a cyberattack at the hands of Allscripts and its employees and agents that caused serious damage to Mahathi, an Indian company, as well as to citizens of India, as summarized in Part B.2 above. In order to protect its constitutional rights under the laws of India, Mahathi had not just the right, but an obligation, to report this cyberattack to the Cyber Crime Police in the city where Mahathi's offices are located. Mahathi has the right to protect its intellectual property rights in India and under India law, and it has taken the steps to do so, which it is required to do given Allscripts' illegal conduct.  Microsoft has several data centers that run Microsoft's Azure cloud computing services in India, and the Microsoft servers relating to Mahathi's Microsoft Azure tenant and related enterprise data are located in India. Moreover, a Microsoft Azure tenant and its related enterprise data can be owned, which Allscripts knows full well because it tried on May 20, 2021, through Jim Hewitt, to falsely claim in writing that it owned Mahathi's Azure tenant.  Also, a Microsoft tenant and its related enterprise data can be hacked, and Allscripts did hack Mahathi's Azure tenant on May 14, May 20, and May 21, 2021.

On May 31, 2021, Mahathi registered a criminal complaint with the Cyber Crime Police, asserting violations of India's Criminal Code and Information Technology Act in connection with the hack on its Azure tenant and related enterprise data. Since Mahathi filed this complaint, the Cyber Crime police have controlled the investigation into Mahathi's criminal complaint, including interrogating Mahathi representatives on eight separate occasions for over thirteen hours and collecting substantial evidence from Mahathi. The Cyber Crime Police, not Mahathi, have sought documents and information from Allscripts and some of the Individual Counterclaim Defendants. The Cyber Crime Police, not Mahathi, have issued 41A notices indicating their belief that there is a reasonable suspicion to believe a crime has been committed,

and the Cyber Crime Police have interrogated witnesses, including some of the accused. And the High Court in India has, on two occasions, permitted the Cyber Crime Police's investigation to continue, despite efforts from Allscripts' Indian affiliates to shut down the investigation completely.

Andor, Mahathi, and Toleti have produced the communications and evidence provided to the police, and these communications demonstrate that none of Mahathi, Andor, or Toleti have taken any action to interfere with or direct the Cyber Crime Police's independent investigation of Mahathi's criminal complaint. Nevertheless, Plaintiffs and the Individual Counterclaim Defendants persist in making absurd and frivolous allegations (including in this report), without a shred of supporting evidence, that Mahathi and Toleti are somehow using their "influence" to "push the investigation forward" or to "coerce Allscripts to drop or compromise its claims." The evidence will show that none of Andor, Mahthi, or Toleti (or their counsel) have taken any action to "coerce Allscripts to drop or compromise its claims," nor would such a proposition make any sense. Plaintiffs and the Individual Counterclaim Defendants know full well that only the police in India can actually file criminal charges or make an arrest, which would only happen if warranted under Indian law and regardless of whether or not this case is resolved. Moreover, the criminal investigation is controlled by the Cyber Crime Police and state prosecutor in India. None of Mahathi, Andor, or Toleti could "use" the investigation as "leverage" for anything, as the investigation, and any resulting criminal charges, are in the domain of the government of India, just as a criminal investigation would be in the United States. That "horse left the barn" as soon as the criminal complaint was registered and the Cyber Crime Police, after investigation, determined there was "reasonable suspicion" that a cybercrime occurred.

**Defenses of Bulsara**

As more fully described in Mr. Bulsara's brief supporting his motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6) [D.I. 75], Mr. Bulsara maintains that none of the claims asserted against him in this action are supported by sufficient facts adequately pled by Allscripts and should be dismissed with prejudice on that basis.

With respect to each of Allscripts' claims naming Mr. Bulsara as a defendant along with Andor, Mahathi, Toleti, and Tyriver, Mr. Bulsara expects that the evidence will show that he is not liable on any of those claims for substantially the same reasons described by his co-defendants above.  The evidence will show that Mr. Bulsara is not employed by Andor, that his current employment by an unrelated third party was not arranged by Andor, that prior to his hiring Mr. Bulsara was unaware that his then-prospective employer had any relationship with Andor, and that Mr. Bulsara has not misappropriated or disclosed any of Allscripts' alleged trade secrets or confidential information in the course of his current employment.  He has also not disparaged Allscripts, breached his IRCA, or unfairly competed with Allscripts in any manner.

**C.  Summary of Defenses to Counterclaims**

Plaintiffs' defenses to the claims set forth above are largely described in Plaintiffs' description of the claims.  Defendants' counterclaims are contrary to the facts and not supported by the law.  However, in addition to the facts described above, the evidence will show that Allscripts managed the Health Grid business in good faith in an effort to make it successful such that it would have created an opportunity for the Stockholders to receive the Earnout. However, it faced numerous challenges to doing so.  For example, Toleti was the manager of the business from the acquisition until his departure in March of 2021. During that time, and prior to his departure, the business struggled based on Toleti's poor management, his conflicts of interest (funneling

business to his companies, Andor and Mahathi at the expense of the Health Grid business, and his breaches of his duty of loyalty (using Health Grid assets to pay favored individuals for no little to no benefit to the company).  In addition, his company's failure to have and provide a functioning Config Tool, as well as Toleti's interactions with clients, hampered the business.  In the end, the business did not perform as hoped, Toleti knew this as its day-to-day manager, and he had full access to its financial information.

As to the Indian criminal proceedings, the facts are summarized in Plaintiffs' statement above.  As to Defendants' reference in their summary that the documents they produced somehow counteract their influence on the investigation, Plaintiffs dispute that.   The documents confirm their involvement, and even then, it seems clear that Mahathi's production is far from complete. For example, Mahathi appears to have withheld its full communications with the police, producing a handful of emails from Mahathi but not the responses from the police.

### D.  Summary of Issues For Which Plaintiffs' Require Discovery

<u>Party Discovery</u>: From Plaintiffs' perspective, discovery will be required of both parties and third parties on multiple issues, including the following:

(1)    Defendants' access to and attacks on the MPE applications

(2)    Defendants' claimed ownership of the "tenant" and any other data they claim was misappropriated, hacked or misused

(3)    Defendants' filing, pursuit, bases, and motivation for the filed and threatened criminal and civil proceedings in India

(4)    Defendants' solicitation of business from Allscripts' clients and potential clients

(5)    Defendants' business activities in competition with Allscripts

(6)    Defendants' solicitation of Allscripts' employees for work with them

(7)    Defendants' product and service offerings

25

(8)     Defendants' claim that they are not engaged in telehealth

(9)     Defendants' claim that the HealthGrid entities were not involved in or planning to engage in telehealth at the time of or 12 months prior to the merger

(10)    Defendants' disparagement of Allscripts in the marketplace and efforts to interfere with its existing and potential client relationships

(11)    Defendants' use of Allscripts' confidential and proprietary information in violation of their legal obligation

(12)    Defendants' use of Allscripts' code and other IP related to the MPE applications in Defendants' own solutions and services

(13)    Defendants' mismanagement of the HealthGrid business, including waste and mismanagement, conflicts of interest, and breaches of fiduciary duty that impacted the viability of the business and its ability to perform in a manner that would have earned an earn-out under the Merger Agreement

(14)    Defendants' revenue, profits, and any other unlawful gains or benefits from the violation of their legal obligations

Third Party Discovery: Plaintiffs' anticipate third party discovery from several entities. The full scope of the needed third party discovery will depend on how forthcoming Defendants are in their responses.  An initial and preliminary list of the third parties from whom discovery Plaintiffs are likely to seek discovery includes Microsoft, KGN Technologies (in India), Ingram Micro, CareGility, Niklaus Children's Hospital, Ed. Martinez, Mark Barnhardt, Geeta Nayyar, KLAS, Optum, Health First, NIH, Orlando Health, Orlando Internal Medicine, Lakeland Regional Health systems.

Expert Discovery: Plaintiffs' anticipate the need for expert testimony that will include issues related to damages, industry practice, source code analysis, cyber security and related technical issues, such as what a "tenant" is.  It is also possible that testimony regarding Indian criminal procedure and Indian police tactics might be required.

**E.  Summary of Issues For Which Defendants' Require Discovery**

Andor, Mahathi, Toleti, and Tyriver will require party discovery on several issues, including:

(1)     Unauthorized and unlawful access by Allscripts, the Individual Counterclaim Defendants, and other Allscripts' employees and agents to Mahathi's Azure tenant, including disabling of Mahathi's administrative access to its own tenant and attacks by Allscripts and its employees and agents on Mahathi's Azure tenant in May 2021

(2)     Allscripts' breach of the UI license, including by blocking Mahathi's access to Mahathi's UI code prior to expiration of the May 18, 2018 SOW

(3)     Allscripts' knowledge, prior to the HealthGrid acquisition, of Mahathi's work for HealthGrid and Mahathi's intellectual property rights in the code for Mahathi's standard UI

(4)     Allscripts misappropriation of Andor's trade secrets, including the JSON output files and proprietary code relating to Andor's Config tool, in violation of the Reseller Agreement and Defend Trade Secrets Act, and Allscripts efforts to build a competing configuration tool

(5)     The functionality of FMH prior to the HealthGrid acquisition, and Allscripts' purpose and motives for acquiring HealthGrid

(6)     Allscripts' knowledge of the fact that HealthGrid did not offer telehealth products at the time of the acquisition and did not actively consider providing telehealth products in the year prior to the acquisition

(7)     Allscripts knowledge of the functionality of Andor's ThinkAndor and AndorNow platforms between 2018 and the present and Allscripts' repeated agreement and acknowledgment that these products do not compete with Allscripts' FMH

(8)     The functionality of Andor's Config Tool and Allscripts failure to test, validate, or use Andor's Config Tool

(9)     Allscripts' anti-competitive and bad faith motivations for entering into the Reseller Agreement

(10)    Allscripts' efforts to interfere in Andor's relationships with its customers and prospective customers by disparaging or otherwise making false statements about Andor and its products and services, and Allscripts' repeating of the baseless allegations in its complaints to customers and prospective customers of Andor and Mahathi in an effort to damage Andor and Mahathi

(11)   Allscripts' failure to deliver earnout reports as required by the Merger Agreement, and Allscripts' failure to manage the HealthGrid business in good faith, in an effort to avoid making earn-out payments that would have been owed under the Merger Agreement, had Allscripts not breached its obligations under the Merger Agreement

(12)   Communication and documentation relating to Allscripts' strategy to integrate the HealthGrid products into Allscripts' products and to market the HealthGrid products

(13)   Communications between Allscripts and its Indian affiliates relating to the criminal proceedings in India

(14)   Allscripts' revenue, profits, and any other unlawful gains or benefits from the violation of its legal obligations

Third party discovery: Andor, Mahathi, Toleti, and Tyriver also anticipate requesting discovery from third parties, including Microsoft, Health First, Optum, Orlando Health, Orlando Internal Medicine, Lakeland Regional, KLAS, Allscripts' Indian affiliates, and individuals disclosed in their Initial Disclosures relating to the allegations in the Second Amended Complaint and the Second Amended Answer, Defenses, and Second Amended Counterclaims of Andor, Mahathi, and Toleti.

Expert discovery: Andor, Mahathi, Toleti, and Tyriver also anticipate the need for expert discovery on (i) damages suffered by Andor, Mahathi, and Toleti relating to their counterclaims, (ii) issues relating to the ownership, operation, and structure of Microsoft Azure tenants, enterprise data, and related cloud computing services, (iii) forensic analysis relating to the hacking of Mahathi's Azure tenant and enterprise data; (iv) analysis of the versions of source code for Mahathi's UI and the code for Andor's Config tool versus any similar products or UI offered or developed by Allscripts, (iv) industry expertise relating to the markets for patient engagement and telehealth services, and (v) criminal law and procedure in India.

## II.   STIPULATED FACTS AND INSURANCE COVERAGE AND DEDUCTIBLES

The parties are not aware of any applicable insurance coverage.

The parties are submitting a stipulation of undisputed facts in connection with this report.

## III.   INFORMAL DISCLOSURES

All parties provided Rule 26(a)(1) disclosures on August 30, 2021. Per this Court's order that documents also be produced, the Parties made the following production that day:

- o   Allscripts produced 7,213 documents;

- o   Toleti, Andor, Mahathi, and Tyriver produced 33 documents; and

- o   Bulsara did not produce any documents.

In addition, Mahathi produced 39 documents on August 26, 2021 per this Court's Order that Mahathi produce "all documents, including communications and underlying materials, provided to police authorities in India by or on behalf of Mahathi Software Pvt., Ltd. through August 23, 2021."

## IV.   FORMAL DISCOVERY

On August 23, 2021, this Court ordered the parties to issue discovery immediately. Plaintiff served document requests and interrogatories to all defendants on August 24, 2021. Defendants Toleti, Andor, and Mahathi served document requests and interrogatories on September 7, 2021.

The parties propose that fact and expert discovery be completed as of March 23, 2021, seven months from the date of the August 23, 2021 scheduling order. The parties view that deadline as aggressive given the number and complexity of the issues in this case as well as the likelihood of substantial third party and expert discovery.

## V.   ELECTRONIC DISCOVERY

The parties have discussed electronic discovery and have agreed that, in an effort to facilitate a rapid exchange of information, each side will conduct a good faith search for responsive information by collecting data from custodians likely to have responsive data and conducting key

word searches on shared storage locations and on locations that might have responsive information. The parties are not obligated to restore backup tapes or data at this time. The parties agree to exchange a list of the most likely custodians of relevant electronic materials, including a brief description of each custodian's title and responsibilities by September 20, 2021. The parties agree to confer regarding search terms as needed, and if they cannot reach agreement on an issue, the provisions of this Court's Order Governing Electronic Discovery will control. Notwithstanding the foregoing the parties agree that it is each party's obligation to comply with their discovery obligations and that an agreement among counsel as to key words or custodians does not alleviate any party's obligation to identify and collect responsive information from all custodians or locations containing that information, unless the parties expressly agree otherwise in writing that a custodian or source need not be searched. The parties agree that the costs of discovery shall be borne by each party.

The parties agree that an order protecting the parties from inadvertent waiver of the attorney-client and/or work product doctrine pursuant to FRE 502 is appropriate in this case.

## VI.   **EXPERT WITNESS DISCLOSURES**

The parties submit the following proposed disclosure dates for experts pursuant to FRCP 26(a)(2):

January 23, 2021 for all affirmative expert disclosures

February 23, 2021 for all rebuttal expert disclosures

March 23, 2021 for the closure of all expert discovery

The parties have indicated anticipated areas of testimony from expert witnesses in Section I above.

## VII.   **SETTLEMENT OR RESOLUTION**

The parties have conferred regarding the potential for alternative dispute resolution, and the parties agree that early settlement discussions before the Magistrate Judge are an appropriate step at this time.

In compliance with the Court's August 23, 2021 Order, counsel for Andor, Mahathi, and Toleti are prepared to address settlement prior to the Initial Pretrial Conference, set for September 13, 2021 and also attempted to address it with Counsel for Allscripts in a telephone conversation regarding this Report. Counsel for Allscripts informed Counsel for Andor, Mahathi and Toleti that Allscripts is prepared to discuss settlement before the Magistrate Judge but did not have a demand to make at that time.  Allscripts' counsel expressed concern that it might be difficult to negotiate settlement given the Indian proceedings.  Nonetheless, Allscripts counsel committed to confer with Allscripts to further explore its position regarding settlement prior to the scheduling conference.

## VIII.  <u>TRIAL</u>

Conflicts dates for the parties and counsel from January through May are as follows:

- o January 3-7, 2022: Vacation (Deposit pre-paid) (Counsel for Andor, Mahathi, and Toleti)

- o February 10-11, 2022: Family commitment (Counsel for Andor, Mahathi, and Toleti)

- o February 15-28, 2022: Trial (Plaintiffs' Counsel)

- o February 25-28, 2022: Vacation (pre-paid) (Bulsara's counsel)

- o February 28-April 8, 2022:  Trial (Order provides 4-6 weeks to try 8 bellwether cases) (Plaintiffs' Counsel)

- o March 3-10: Vacation (Deposit pre-paid) (Andor)

- o April 4-5, 2022: Trial (Counsel for Andor, Mahathi, and Toleti)

- o April 15-23, 2022: Passover

- o May 2-8, 2022:  Vacation (Deposit pre-paid) (Plaintiffs' counsel)

- o May 2-4, 2022: Eid-al-Fitr (Religious holiday marking the end of Ramadan) (Counsel for Andor, Mahathi, Toleti, and Tyriver)

- o May 2-6, 2022:  Family Commitment (Counsel for Andor, Mahathi, Toleti, and Tyriver)

- o May 9-18, 2021:  Trial (Plaintiff's counsel)

- o May 17-26, 2022:  Arbitration (Plaintiffs' counsel)

## IX.    **REFERRAL TO MAGISTRATE JUDGE**

The parties do not agree to proceed before a magistrate for trial.

## X.    **OTHER MATTERS**

In light of the pending criminal investigation in India, Allscripts believes there is a possibility that discovery and trial might be impacted by issues related the application of the Fifth Amendment, Mahathi's assertion of the "investigatory privilege" and the need for discovery from at least one entity in India (KGN Technologies).

In addition, Allscripts proposes that each side may take up to 15 fact depositions and that expert depositions will not count toward this total. Defendants propose 10 fact depositions per side and that expert depositions will not count toward this total.

Dated:  September 9, 2021

BARNES & THORNBURG LLP

/s/ Chad S.C. Stover
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Tel:  (302) 300-3474
Fax:  (302) 300-3456
E-mail:   chad.stover@btlaw.com

Mark L. Durbin (admitted pro hac vice)
Scott T. Peloza (admitted pro hac vice)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Phone: (312) 357-1313
Fax: (312) 759-5646
Mark.Durbin@btlaw.com
speloza@btlaw.com

Attorneys for Plaintiffs

COLE, SCHOTZ P.C.

/s/ Andrew L. Cole
Andrew L. Cole (No. 5712)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 652-3131
Fax: (302) 652-3117
Email: acole@coleschotz.com

Jennifer A. Kenedy (admitted pro hac vice)
Bilal Zaheer (admitted pro hac vice)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL  60606
Tel:  (312) 443-0377
Jkenedy@lockelord.com
Bilal.zaheer@lockelord.com

Attorneys for Defendants Andor Health, LLC, Mahathi Software PVT., Ltd., Raj Toleti and Paul Tyriver

GELLERT SCALI BUSENKELL & BROWN LLC

/s/ Bradley P. Lehman
Bradley P. Lehman (No. 5921)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
(302) 425-5800
blehman@gsbblaw.com

Attorneys for Defendant Amar Bulsara