**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **ALLSCRIPTS HEALTHCARE, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-704** |
| | : | |
| **ANDOR HEALTH, LLC, *et al.*** | : | |

## <u>ORDER-MEMORANDUM</u>

**AND NOW**, this 27th day of September 2021, upon considering counterclaim Defendants'

Motion to dismiss the second amended Counterclaims (D.I. 74), Defendants' response (D.I. 91),

the Reply (D.I. 92), and following oral argument during the initial pretrial conference, it is

**ORDERED** the counterclaim Defendants' Motion is **DENIED** and the counterclaim Defendants

shall, no later than **October 12, 2021**, answer the counterclaims plausibly alleging a violation of

the Computer Fraud and Abuse Act, tortious interference with prospective economic advantage,

unfair competition, commercial disparagement, misappropriation of trade secrets, breach of the

Reseller Agreement, breach of the implied covenant of good faith and fair dealing, and breach of

the user interface license.

## *Analysis*

Two companies and their related affiliates are vigorously disputing who allegedly stole or

blocked access to trade secrets and otherwise breached legal obligations when they separated

following a short combination with each other. Allscripts Healthcare, LLC sued first. Andor

Health, LLC; Mahathi Software Pvt., Ltd.; and Raj Toleti filed counterclaims. Allscripts and its

apparently unserved agents James Hewitt, Jeff Franks, Warren Nash, and Bryan Seaborn now

move to dismiss Andor, Mahathi, and Mr. Toleti's counterclaims.[1] We earlier dismissed one of the counterclaims upon consent.[2] We now deny Allscripts's remaining arguments reminding the parties we cannot today decide questions of fact. Our role today is to determine whether Allscripts's objections to the sufficiency of the plead claims requires dismissal at this stage. We find its objections do not. Allscripts's arguments appear better suited for the factfinder next April unless the parties adduce undisputed facts which could allow us to enter summary judgment as a matter of law early next year following discovery.

### Mahathi states a Computer Fraud and Abuse Act claim.

Mahathi brings claims against Allscripts under sections (a)(2)(C), (a)(5)(A), and (a)(5)(C) of the Computer Fraud and Abuse Act. Section (a)(2)(C) provides: "Whoever . . . (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains. . . (C) information from any protected computer . . . shall be punished as provided in subsection (c) of this section."[3] Section (a)(5) provides: "Whoever . . . (5)(A) knowingly and with intent to

---

[1] Andor, Mahathi, and Mr. Toleti jointly filed their answer to the second amended complaint and second amended counterclaims, adding Messrs. Hewitt, Franks, Nash, and Seaborn as counter-defendants. D.I. 59. The Clerk of Court never issued summons for the newly added individual counterclaim-defendants and the docket confirms Defendants have not served them but Messrs. Hewitt, Franks, Nash, and Seaborn participate in this litigation by moving to dismiss without raising the defenses of lack of service of process and/or personal jurisdiction. Our Court of Appeals instructs "a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994). Our Court of Appeals found the counterclaim defendants waived their defense of lack of personal jurisdiction based on the absence of service of process by not moving to dismiss for lack of service before litigating the case on the merits, and thus, they consented to personal jurisdiction. We enjoy jurisdiction to decide the motion to dismiss filed by Messrs. Hewitt, Franks, Nash, and Seaborn.

[2] D.I. 88.

[3] 18 U.S.C § 1030(a)(2)(C).

defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . . . or (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss . . . shall be punished as provided in subsection (c) of this section."[4]

Allscripts moves to dismiss Mahathi's claim under these sections of the Act. Allscripts argues a "tenant" is not a computer under the Act, and Mahathi does not allege Allscripts exceeded authorization within the meaning of the Act. Andor counters it states a claim because a tenant is a computer within the meaning of the Act, and it adequately alleges Allscripts exceeded authorization. The parties dispute whether Mahathi pleads two prongs of each section: (1) whether the "tenant" Allscripts purportedly accessed is a computer; and (2) whether Allscripts's access is unauthorized within the meaning of the Act.

The Act defines computer as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."[5] The parties—in their briefing and at oral argument—dispute what a tenant is, and Allscripts concedes in the parties' Rule 26(f) report expert discovery is required on this subject. We find issues of fact exist at this stage precluding us from determining as a matter of law whether a tenant is a computer within the

---

[4] 18 U.S.C. § 1030(a)(5)(A), (C).

[5] 18 U.S.C § 1030(e)(1).

3

meaning of the Act, and Mahathi adequately alleges a violation of the Act if we accept its allegations as true.[6]

Whether Allscripts "accessed" the "computer" "without authorization" also presents questions of fact, some of which derive from the parties' dispute about what a "tenant" is and who owns what in relation to the tenant and data purportedly stored therein. We must accept Mahathi's allegations as true at this stage.

Mahathi pleads Allscripts accessed a computer without authorization.[7]

Mahathi and Allscripts both use an analogy to apartment complexes which begun at oral argument to support their respective positions.

Mahathi argues: Allscripts—a renter—leased space from Mahathi on its tenant—the apartment—the lease terminated, and Allscripts left belongings in the apartment. Allscripts did not follow the usual channels of arranging a time with the landlord—Mahathi—to retrieve its belongings after the lease ended. Rather, Allscripts accessed the apartment after its lease ended, thereby trespassing because it no longer had authorization to be there. Mahathi further argues Allscripts interfered with its belongings while trespassing.[8]

Allscripts sees it a different way, arguing "Mahathi does not have the facts right."[9] Allscripts argues: Mahathi does not own the apartment, Microsoft owns it; Allscripts did not access

---

[6] D.I. 59, Counterclaim, ¶¶ 20–22, 25–28, 157–63.

[7] D.I. 59, Counterclaim, ¶¶ 157 (Mahathi owns the tenant), 178 (Allscripts seized control of Mahathi's tenant and took unauthorized actions); 179–83 (Allscripts locked Mahathi out of its tenant, blocking access to its intellectual property, and taking actions within the tenant such as using accounts with elevated permissions to take actions it would otherwise not be able to); 202–06 (alleging unauthorized access to the tenant through "backdoors," again using accounts with elevated permissions to block Mahathi's access to its information).

[8] D.I. 91 at 11–12.

[9] D.I. 92 at 9.

4

Mahathi's belongings, it merely accessed its own belongings which Mahathi concedes it owns; Allscripts owned the "subfolders" it accessed when accessing its data on the tenant, and Allscripts has a perpetual license enabling it to access this data.[10]

We accept Mahathi's facts plead as true requiring we find Mahathi stated a claim at this stage.[11]

### Andor states a claim for tortious interference.

Allscripts moves to dismiss Andor's claim for tortious interference with prospective economic advantage for failure to state a claim because Allscripts's informing third parties about this lawsuit does not give rise to tortious interference.[12] Allscripts cites Illinois cases and argues informing a third party of litigation, absent malice or wrongful means, cannot sustain a claim for tortious interference.[13] Andor responds Allscripts fails to perform a choice of law analysis; Delaware, Illinois, or Florida law could apply; there is no conflict between the three laws; it will rely on Delaware law; and it states a claim.[14] Our colleagues frequently refuse to perform a choice of law analysis at the motion to dismiss stage when the factual record has not been developed.[15]

---

[10] D.I. 92 at 4–6.

[11] *See Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021) ("[A]n individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him and holding obtaining information for improper purpose is not conduct actionable under the Act).

[12] D.I. 74; D.I. 75 at 9–10.

[13] D.I. 75 at 10.

[14] D.I. 91 at 12–14.

[15] *See, e.g.*, *Aclate, Inc. v. Eclipse Marketing LLC*, 2020 WL 6158579, at *4 (D. Del. Oct. 21, 2020) (finding the counterclaim survives the motion to dismiss without a complete choice of law analysis if it states a claim under either of the governing laws alleged to apply by the parties); *AgroFresh Inc. v. Essentiv LLC*, 2018 WL 6974947, at *7 (D. Del. Dec. 27, 2018) (recommending

We also decline to perform a choice of law analysis without a more complete record here, and instead presume Delaware law applies because Delaware is the law upon which Andor relies.[16]

"[A] claim for tortious interference with business relations must allege: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages."[17] The elements are applied "to a particular case 'in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.'"[18]

Andor adequately alleges it had the reasonable probability of a business opportunity with Optum, which did not go through due to Allscripts's alleged conduct, causing it harm.[19]

---

choice of law analysis for state law tort claims is deferred until summary judgment when a factual record is developed), *report and recommendation adopted*, 2019 WL 350620 (D. Del. Jan. 29, 2019); *Arcelik A.S v. E. I. du Pont De Nemours & Co.*, 2018 WL 1401327, at *9 (D. Del. Mar. 20, 2018) ("This case (although pending for some time) remains in its early stages. Virtually, no discovery has taken place, and the Court would benefit from a more-developed record. The Court does not find it appropriate at the motion to dismiss stage of this case to undertake a choice of law analysis."); *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 517 (D. Del. 2012) ("The Court will defer making a choice of law determination until there is development of a more complete factual record.").

[16] *See, e.g.*, *Bray v. Gamestop Corp.*, 2018 WL 11226516, at *3 (D. Del. Mar. 16, 2018) ("[W]ithout deciding, we will presume that either Delaware, North Carolina, or Indiana laws apply, as these are the laws upon which Plaintiffs rely.").

[17] *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. Super. Ct. 1981)).

[18] *Id.*

[19] D.I. 59, Counterclaim, ¶¶ 124–34 (alleging exact business opportunities Andor had with Optum, projected revenue from prospective contract, and business opportunity lost due to Allscripts's conduct); *see also Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*, 2021 WL 431475, at *8 (D. Del. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 1152982 (D. Del. Mar. 26, 2021); *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *7 (Del. Super. Ct. Nov. 2, 2015) (detailing reasonable probability of business opportunity under Delaware law).

The parties dispute whether Andor adequately pleads intentional interference. Allscripts argues—relying on Illinois authority—merely informing a third party of a lawsuit without malice or wrongful conduct is not actionable.[20] Andor argues—citing a Delaware case involving post-trial motions—litigation can be the basis of tortious interference when there is no merit to the litigation or the suit is instituted in bad faith intending only to harass.[21]

The alleged interference must be intentional—"the actor desires to bring it about or if he [or she] knows that the interference is certain or substantially certain to occur as a result of his [or her] action"—and wrongful or improper.[22] We consider the following factors for determining whether conduct is wrongful: the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes, the interests sought to be advanced by the actor, the social interests in protecting the freedom of action of the actor and the contractual interests of the other, the proximity or remoteness of the actor's conduct to the interference, and the relations between the parties.[23] "Threatened or filed litigation can constitute improper interference 'if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.'"[24]

---

[20] D.I. 75 at 10.

[21] D.I. 91 at 12–13 (citing *Soterion Corp. v. Soteria Mezzanine Corp., C.A.*, 2012 WL 5378251, at *14 (Del. Ch. Oct. 31, 2012)).

[22] *World Energy Ventures, LLC*, 2015 WL 6772638, at *7.

[23] *Id.*; *see also Carney v. B & B Serv. Co.*, 2019 WL 5579490, at *2 (Del. Super. Ct. Oct. 29, 2019).

[24] *U.S. Bank Nat'l Ass'n v. Gunn*, 23 F. Supp. 3d 426, 436 (D. Del. 2014) (citing *Soterion Corp.*, 2012 WL 5378251, at *14 (citations omitted) (denying summary judgment due to material issues of fact)).

Accepting all facts as true and construing all inferences in favor of Andor, Andor adequately pleads its claim for tortious interference. Andor alleges Allscripts advised "an unknown number of parties" including Jordan Hewitt, an Allscripts's executive's son employed by Andor, it intends to use this lawsuit to launch a media campaign against Andor, Mahathi, and Mr. Toletti.[25] Allscripts purportedly did engage in this alleged "public relations campaign" with the lawsuit, including with Optum.[26] Andor pleads both (1) no merit to the lawsuit; and (2) even if there is merit, Allscripts brought the lawsuit merely for a public relations campaign, not to seek redress. We must accept these factual allegations as true at this stage.

Allscripts argues Andor did not move to dismiss Allscripts's claims against it and admits factual allegations in Allscripts's lawsuit against it. We will not construe Andor's litigation strategy against it on this motion to dismiss. Andor adequately pleads facts to support a claim for tortious interference.

### Andor pleads unfair competition against Allscripts.

Allscripts moves to dismiss Andor's unfair competition claim—relying on Illinois law—and arguing merely informing third parties of a lawsuit is not unfair competition.[27] Andor counters it pleads sufficient facts to state a claim for unfair competition under Delaware law.[28] We again decline to perform a choice of law analysis at this stage and today rely on Delaware law.

---

[25] D.I. 59, Counterclaim, ¶ 1 (Allscripts's motivation for filing lawsuit is to disparage Andor, not seek redress), 2 (Allscripts informing people it intends to use the lawsuit as a public relations campaign), 3 (Allscripts's intent is to use the lawsuit as a false smear campaign), 238 (Allscripts using allegedly baseless lawsuit brought in bad faith to "mount a self-described 'public relations' campaign'").

[26] D.I. 59, Counterclaim, ¶¶ 124–34.

[27] D.I. 75 at 10.

[28] D.I. 91 at 13–14.

"'The elements of the tort of unfair competition are that the plaintiff has a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm'. . . . Although 'Delaware courts have struggled to precisely define the boundaries of the common law in this area,' '[t]he essential element separating unfair competition from legitimate market participation . . . is an unfair action on the part of defendant by which he prevents plaintiff from legitimately earning revenue.'"[29]

The facts supporting Andor's tortious interference claim support a claim for unfair competition.[30] We decline to dismiss the claim at this stage.

### Andor pleads a commercial disparagement claim against Allscripts.

Allscripts moves to dismiss Andor's claim for commercial disparagement under the Illinois Deceptive Trade Practices Act.[31] Allscripts offers no argument or analysis supporting its motion.[32] We presume Allscripts moves on the same basis as the tortious interference and unfair competition claims based on the structure of its brief, but we cannot argue for it. We deny Allscripts's motion to dismiss Andor's claim for commercial disparagement because Andor states a claim.[33]

---

[29] *EIS, Inc. v. WOW Tech Int'l GmbH*, 2020 WL 7027528, at *6 (D. Del. Nov. 30, 2020) (internal citations omitted).

[30] *See, e.g. Agilent Technologies, Inc. v. Kirkland*, 2009 WL 119865, at *5–8 (Del. Ch. Jan. 20, 2009) (finding statements suggesting competitor's product would soon be gone from the market due to pending lawsuit were basis for tortious interference and unfair competition claims).

[31] D.I. 74.

[32] *See, e.g.*, D.I. 75, 92.

[33] *See* 815 Ill. Comp. Stat. Ann. 510/2(a)(8); D.I. 59, Counterclaim, ¶¶ 250–56.

***Andor pleads a Defend Trade Secrets Act claim against Allscripts.***

Allscripts moves to dismiss Andor's claim for misappropriation of trade secrets under the Defend Trade Secrets Act arguing it failed to state a claim.[34] Allscripts argues: (1) Andor only alleges "upon information and belief," which fails to comply with pleading standards; and (2) it is entitled to the code and not misappropriating it.[35] Andor maintains it stated a claim because (1) the information about reverse engineering is within Allscripts's knowledge only, so it may allege upon information and belief, and (2) Allscripts is not permitted to reverse engineer the code, so it is misappropriating the trade secret.[36]

Our Court of Appeals recently clarified the pleading standard requiring a pleading demonstrating "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret . . . ; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce[,] . . . ; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret."[37]

Andor identifies its trade secrets. "To plead the existence of a trade secret in a misappropriation claim brought under the [the Act], [the plaintiff] must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such . . . In determining whether allegations about the identified

---

[34] 18 U.S.C. § 1836.

[35] D.I. 75 at 11–12.

[36] D.I. 91 at 15–17.

[37] *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal citations omitted).

information plausibly support its having protected status as a trade secret, courts consider whether the owner of the information 'has taken reasonable measures to keep ... [it] secret' and whether the 'information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]'"[38] "[T]he subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."[39] Andor identifies its trade secret as the JSON output files and proprietary code for its Config Tool.[40] Andor alleges it "derives independent economic value" from them, the information is not generally known to the public, and not readily ascertainable through proper means.[41] Andor also alleges it takes reasonable steps to keep the information a secret, including: limiting employees who have access to the output files to those who signed confidentiality agreements, storing the code on encrypted systems protected by industry standard security, maintaining policies and providing trainings to employees regarding the policies, and requiring third-parties who use the Config Tool to sign agreements with confidentiality provisions.[42] Andor pleads a trade secret.

---

[38] *Id.* (internal citations omitted)

[39] *Id.* at 906 (internal citations omitted).

[40] D.I. 59, Counterclaim, ¶ 258.

[41] *Id.*

[42] *Id.* ¶¶ 259; *see also id.* ¶ 140 (agreeing information constitutes valuable trade secrets in Reseller Agreement).

Andor adequately alleges its trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce. Andor does not specifically allege this element, but Allscripts does not challenge this prong.[43] We draw inferences in Andor's favor and find sufficient facts plead to show the product or service is used or intended for use in interstate commerce.[44]

Andor also alleges misappropriation. Andor alleges Allscripts had access to the trade secret information.[45] Andor alleges, upon information and belief, Allscripts is using the information for economic advantage to develop its own competitive software.[46] Allscripts challenges Andor's pleading sufficiency because it pleads "upon information and belief."

Andor pleads upon information and belief Allscripts reversed engineered or attempted to reverse engineer the Config Tool after requesting the code from a Mahathi employee.[47] Andor supports its "information and belief" facts based on inferences drawn from the allegedly suspect

---

[43] *Oakwood Laboratories LLC*, 999 F.3d at 905 (further citations omitted) (discussing parties' dispute focused on first and third prongs, and not the prong relating to interstate commerce).

[44] D.I. 59, Counterclaim, ¶¶ 79 (discussing ThinkAndor & its role in healthcare field as "innovative technology solutions for healthcare providers in the areas of virtual health enablement, virtual team collaboration, virtual community collaboration, and virtual rounding"); 87 (alleging Andor licensed Config Tool to Allscripts to use with FollowMyHealth customers); 90 (alleging Config Tool is component of ThinkAndor platform); 96 (discussing Reseller Agreement as placing no restrictions on Andor's ability to sell ThinkAndor, which uses Config Tool, generally in the market).

[45] *Id.*, ¶¶ 143–44, 270.

[46] D.I. 59, Counterclaim, ¶¶ 147, 155, 263; *see Oakwood Laboratories LLC*, 999 F.3d at 910. ("In accordance with its ordinary meaning and within the context of the [Act], the 'use' of a trade secret encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or accelerat[ing] research or development' and finding use can be inferred from circumstantial evidence).

[47] D.I. 59, Counterclaim, ¶¶ 98, 140, 143–49, 263, 268–71.

circumstances of Allscripts asking a Mahathi employee for the code.[48] Our Court of Appeals instructs "pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'"[49] Andor pleads "in July 2020, [Allscripts] emailed an engineer at Mahathi seeking certain JSON output files and proprietary code related to Andor's Config Tool" and "no senior Andor employees were copied on [the] email."[50] Mahathi's engineer provided the files and proprietary code.[51] After receiving the files, Allscripts "did not engage with Andor concerning the Config Tool or move forward with testing or implementing the Config Tool" and based on this, it is Andor's belief Allscripts "requested the output files and code from Mahathi . . . to use and has used the information it obtained relating to Andor's Config Tool to try and reverse engineer the Config Tool so that Allscripts can create its own configuration tool for use with [its product.]"[52] Andor alleges Allscripts now has a configuration tool, which it uses.[53] Andor sufficiently pleads the misappropriation prong supporting its "upon information and belief" allegations with specific facts to make the viable claim plausible.

---

[48] *Id.*, ¶¶ 143–146.

[49] *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016).

[50] D.I. 59, Counterclaim, ¶ 143.

[51] *Id.*, ¶ 144.

[52] *Id.*, ¶ 147.

[53] *Id.*, ¶ 155.

Andor alleges harm. Our Court of Appeals directs "trade secret misappropriation is harm."[54]

Andor states a claim under the Defend Trade Secrets Act. We decline to dismiss this claim on a preliminary record.

### Andor pleads a breach of the Reseller Agreement against Allscripts.

Allscripts moves to dismiss Andor's claim for breach of the Reseller Agreement.[55] Allscripts argues (1) Andor does not plead facts supporting its contention Allscripts reversed engineered its "Config Tool's" code, and (2) if sufficient facts are plead, the Reseller Agreement allows Allscripts to obtain the code.[56] Andor counters (1) it may plead facts based on information and belief because the information is solely within Allscripts's knowledge; (2) it pleads specific facts supporting an inference of the facts alleged on information and belief; and (3) the Reseller Agreement prohibits reverse engineering irrespective of the fact the agreement allows Allscripts access to the code.[57]

"Breach of contract is a claim with three elements: '1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff.'"[58]

---

[54] *Oakwood Laboratories LLC*, 999 F.3d at 913.

[55] D.I. 74, 75 at 11–12.

[56] D.I. 75 at 11–12.

[57] D.I. 91 at 15–17.

[58] *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 202 (Del. Super. Ct. 2020) (quoting *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016) (further citations omitted)); D.I. 90 ¶ 12.5 (Delaware law controls agreement); s*ee also Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *2 (D. Del. May 28, 2021) ("Under Rule 12(b)(6), 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" (citing *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)).

The parties do not dispute a valid contract exists or Andor suffered harm from the purported breach.[59] The parties dispute whether there is a breach and whether the breach is adequately plead.

In disputing whether a breach occurred, the parties offer two interpretations of the Reseller Agreement. The issue of contract interpretation is a question of law.[60] But if the contract is ambiguous, "the trial court cannot choose between two differing reasonable interpretations" and can only dismiss "if the defendant['s] interpretation is the only reasonable construction as a matter of law."[61] We must first determine whether the Reseller Agreement is ambiguous.

A contract is ambiguous "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings."[62] But a contract will not be deemed ambiguous merely because "the parties do not agree upon its proper construction."[63] The Reseller Agreement is not ambiguous because it is susceptible to but one reasonable interpretation when harmonizing the two provisions at issue.

"A court applying Delaware law to interpret a contract is to effectuate the intent of the parties."[64] If the contract is unambiguous, the court must "give effect to the plain-meaning of the contract's terms and provisions," and "[i]n upholding the intentions of the parties, a court must

---

[59] D.I. 75 at 4–5, D.I. 90, Ex. 1 (unredacted copy of the Reseller Agreement); D.I. 59, Counterclaim, ¶¶ 88–89, 268, 272.

[60] *Prokupek v. Consumer Cap. Partners LLC*, 2014 WL 7452205, at *3 (Del. Ch. Dec. 30, 2014).

[61] *Zweigenhaft v. PharMerica Corp.*, 2020 WL 5258345, at *1 (D. Del. Sept. 3, 2020).

[62] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) (further citations omitted).

[63] *Id.*

[64] *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011).

construe the agreement as a whole, giving effect to all provisions therein."[65] A court must not render any part of the contract mere surplusage or render any provision or term "meaningless or illusory."[66] "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[67]

The issue is the interplay of the grant in Section 2.1 with the limitation in Section 2.2. Section 2.1 grants the license: "**Company Product License.** [Andor f/k/a Patient Comp, LLC] hereby grants Allscripts a non-exclusive, non-transferable . . . revocable . . . license to: (a) To use, reproduce, modify, make derivative works of, distribute, perform, promote, sell, offer to sell, import, market, combine with or in Allscripts Products, resell, and distribute the Company Product either as a standalone or bundled product or service."[68]

Section 2.2 then memorializes the parties' restrictions on the license: "Allscripts acknowledges that the Company Product(s) constitutes valuable trade Secrets of [Andor f/k/a Patient Comp, LLC]. Except as expressly permitted by this Agreement, Allscripts will not: (a) modify, adapt, alter, translate or create derivative works of any Company Product . . . (e) reverse engineer, decompile, disassemble, or otherwise attempt to derive the source code for Company Product."[69]

---

[65] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010); *GMG Cap. Invs., LLC*, 36 A.3d at 779.

[66] *Osborn*, 991 A.2d 1153 at 1159.

[67] *Id.* (quoting *NBC Universal v. Paxson Commc'ns,* 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

[68] D.I. 90, Ex. 1, ¶ 2.1(a).

[69] *Id.* ¶ 2.2(a), (e).

We agree with Allscripts the restrictions in Section 2.2 of the Agreement are limited by the express grant in 2.1 because the restrictions are modified by "except as expressly permitted by this Agreement." But our agreement with Allscripts ends there. Section 2.1 provides an express grant of rights—to "use, reproduce, modify, make derivative works of, distribute, perform, promote, sell, offer to sell, import, market, combine with or in Allscripts Products, resell, and distribute." But nowhere does the Reseller Agreement grant Allscripts the right to "reverse engineer, decompile, disassemble, or otherwise attempt to derive the source code for Company Product." The restriction in Section 2.2(e) is not eliminated by the grant in 2.1(a) as argued by Allscripts.

The facts supporting Andor's claim for misappropriation of a trade secret are the same facts supporting its claim for breach of the Reseller Agreement. Allscripts challenges the sufficiency because Andor pleads upon information and belief. Whether Allscripts reverse engineered the code in violation of the Reseller Agreement is within Allscripts's knowledge, and for the reasons set forth above, Andor pleads sufficient facts to make the viable claim plausible.

We decline to dismiss the breach of the Reseller Agreement at this preliminary stage.

### Andor pleads a breach of the covenant of good faith against Allscripts.

Allscripts moves to dismiss Andor's claim for breach of the implied covenant of good faith and fair dealing.[70] Allscripts argues the Reseller Agreement allowed Allscripts to sell or not sell the Config Tool confirming Allscripts acted within its contractual rights and the implied covenant does not apply.[71] Andor counters the implied covenant of good faith and fair dealing applies

---

[70] D.I. 74, 75 at 12–14.

[71] D.I. 75 at 12–14.

because Allscripts made no effort to test, validate, or sell the product it licensed for two years, and used its discretion in bad faith.[72]

Delaware enforces good and bad contracts parties make, but "there are . . . instances when parties fail to foresee events not covered by their agreement or defer decisions to later."[73] "Subject to the express terms of the agreement, when gaps in an agreement lead to controversy, the court has in its toolbox the implied covenant of good faith and fair dealing to fill in the spaces between the written words. The implied covenant, inherent in all agreements, ensures that the parties deal honestly and fairly with each other when addressing gaps in their agreement. The court's goal is to preserve the economic expectations of the parties."[74] "The implied covenant, however, is a 'cautious enterprise.' . . . It is 'a limited and extraordinary legal remedy' and 'not an equitable remedy for rebalancing economic interests that could have been anticipated.' It cannot be invoked 'when the contract addresses the conduct at issue.'"[75]

Andor states a claim for breach of the covenant of good faith and fair dealing.

The Reseller Agreement provides "WHEREAS, Allscripts desires to license certain of [Andor's] products for sublicensing to certain customers; and WHEREAS, [Andor] is willing to license such products to Allscripts for such sublicensing on the terms and conditions set forth in this Agreement."[76] The parties agreed the express purpose of the Reseller Agreement is for Andor to license its product to Allscripts, and then Allscripts turn around and sublicense it to its

---

[72] D.I. 91 at 17–18.

[73] *Glaxo Group Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

[74] *Id.* (further citation omitted).

[75] *Id.* (further citations omitted).

[76] D.I. 90, Ex. 1, p. 1.

customers.[77] The Reseller Agreement further dictates payments Allscripts must make to Andor upon selling the product, expressly allowing Allscripts to sublicense the product at no cost, in which case Allscripts would not owe Andor an additional fee.[78]

We do not agree with Allscripts the Reseller Agreement expressly allows Allscripts not to sublicense the product. It is the exact opposite. The parties' agreed upon purpose of the Reseller Agreement is for Allscripts to sublicense the product to its customers in some form. The parties agreed to the payment terms when Allscripts sublicensed it. When and how Allscripts sublicenses is within its discretion.[79] Andor alleges Allscripts has done nothing under the Reseller Agreement, and its decision to do nothing is in bad faith and for improper purposes.[80] Selling the product is within Allscripts's discretion under the Reseller Agreement, and the allegations Andor makes satisfy the pleading standard for breach of the implied covenant of good faith and fair dealing.[81]

### *Mahathi pleads a claim for breach of the user interface license against Allscripts.*

Mahathi pleads a claim for breach of the user interface license, which Mahathi granted to Allscripts in a May 18, 2018 statement of work.[82] Allscripts moves to dismiss arguing: (1) Mahathi has not identified a breached provision in the May 18, 2018 statement of work and Allscripts's

---

[77] *Id.*

[78] *Id.*, ¶ 3.1.

[79] D.I. 59, Counterclaim, ¶ 279.

[80] *Id.*, ¶¶ 148–49, 278–282.

[81] *See, e.g.*, *Glaxo Grp. Ltd.*, 248 A.3d at 920 ("It is one thing to imply a good faith obligation when the parties have expressly agreed that a certain act is within a party's discretion."); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) ("Thus, parties are liable for breaching the covenant when their conduct frustrates the "overarching purpose" of the contract by taking advantage of their position to control implementation of the agreement's terms.").

[82] D.I. 59, Counterclaim, ¶ 165.

conduct does not amount to a breach of the user interface license or statement of work; and (2) even if it does, Mahathi lacks standing because it assigned its rights to Andor.[83] We disagree with Allscripts at this stage.

The parties agreed Florida law governs their relationship under the May 18, 2018 statement of work.[84] "To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages."[85] The parties do not dispute the May 18, 2018 statement of work is a valid contract. The parties dispute whether Allscripts materially breached the contract.

Allscripts argues Mahathi fails to identify the provision in the statement of work it breached by blocking Mahathi's access to the systems where the user interface is stored.[86] Mahathi argues it is clear what Allscripts breached—the license Mahathi granted Allscripts for the standard user interface in the May 18, 2018 statement of work.[87] We again remind zealous advocates we take all well-pleaded facts as true and construe all inferences in favor of Mahathi.[88] We agree Mahathi stated a claim subject to discovery.

The parties agreed in the May 18, 2018 statement of work to grant Allscripts a non-exclusive, perpetual license to use Mahathi's user interface.[89] They agreed: "MAHATHI will

---

[83] D.I. 75 at 14–16.

[84] *See* D.I. 76-3, ¶ 8 (governing law).

[85] *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017).

[86] D.I. 75 at 14–16.

[87] D.I. 18–19 (citing D.I. 59 ¶ 320)).

[88] *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)).

[89] D.I. 59, Counterclaim ¶ 320.

provide its standard User Interface ('UI') and Allscript's [*sic*] acknowledge that this standard UI is currently utilized by many healthcare customers and further acknowledge and agree that this UI is the intellectual property of MAHATHI. Allscripts shall have a non-exclusive, perpetual, paid up and royalty free license to use this UI."[90] Mahathi alleges Allscripts breached the license by removing Mahathi from and/or blocking Mahathi's access to the system(s) on which the user interface is stored.[91] Mahathi alleges Allscripts's conduct converted the non-exclusive license granted by the May 18, 2018 statement of work into an exclusive license, exceeded its license, and breached the license.[92] Allscripts allegedly harmed Mahathi as a result of the breach.[93]

Allscripts drops a footnote suggesting Mahathi fails to allege the only copy of its user interface is stored on the system(s) at issue.[94] But we must construe all facts and inferences in favor of Mahathi. Mahathi adequately pleads breach of the user interface license.

Allscripts next argues we should dismiss Mahathi's breach of contract claim because Mahathi assigned its rights under the May 18, 2018 statement of work to Andor (formerly known as Patient Comp. LLC).[95] Mahathi argues Andor never accepted the assignment, thus Mahathi still retains the rights under it, and even if it did assign its rights, the assignment did not occur until 2020 and it only assigned *certain* rights relating to contract and billing issues.[96] We need not delve

---

[90] *Id.*

[91] D.I. 59, Counterclaim, ¶¶ 174–76, 178–84, 322.

[92] *Id.* ¶ 323.

[93] *Id.* ¶ 326.

[94] D.I. 75 at 15, n. 5.

[95] D.I. 76-4.

[96] D.I. 91 at 19–20.

into Mahathi's second argument at this stage because issues of fact exist as to whether Mahathi and Andor effected the assignment depriving Mahathi of standing to sue. While we note Allscripts's argument Mr. Toleti signed the assignment on behalf of Mahathi and at the time of signing, he maintained a role at both Andor and Mahathi, we must accept Mahathi's allegations as true at this stage. Mahathi alleges the parties did not affect the assignment because Andor did not sign it.[97] Mahathi has plead sufficient facts for standing.

**KEARNEY, J.**

---

[97] D.I. 59, Counterclaim, ¶ 169.