**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **ALLSCRIPTS HEALTHCARE, LLC** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-704** |
| | : | |
| **ANDOR HEALTH, LLC,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                     **November 22, 2021**

Two companies and their related affiliates dispute who stole or blocked access to trade secrets and otherwise breached legal obligations following their brief relationship. Allscripts Healthcare, LLC first sued Andor Health LLC, Mahathi Software Pvt., Ltd., and their principals Raj Toleti, Paul Tyriver, and Amar Bulsara. Andor, Mahathi, and Mr. Toleti then counterclaimed and filed a third-party complaint against various individuals affiliated with Allscripts. Mahathi counterclaims Allscripts breached a user interface license included in a May 2018 Statement of Work between Mahathi and Allscripts. Mahathi also admits assigning the May 2018 Statement of Work to its co-defendant Andor. Mahathi found emails showing Andor accepted the assignment as well as documents purportedly confirming an assignment. Allscripts moves to dismiss the breach counterclaim arguing Mahathi lacks standing to pursue its breach of contract claim and otherwise fails to state a claim. Mahathi argues its assignment of rights under the Statement of Work did not preclude suing for breach of the user interface license in the Statement of Work because it always retained ownership of its intellectual property. Mahathi has ownership rights in its intellectual property and may sue in tort but lacks standing to sue for breach of the user interface license because it assigned its rights in the license (included in the Statement of Work) to Andor.

I.      **Allegations relating to the challenged breach.**[1]

Allscripts and Mahathi entered into a Statement of Work on May 18, 2018 in which Mahathi would "provide certain software and related support services" to Allscripts.[2] Mahathi also agreed to grant Allscripts a non-exclusive, perpetual license to use Mahathi's user interface software.[3] Allscripts and Mahathi agreed: "MAHATHI will provide its standard User Interface ('UI') and ALLSCRIPT'S [*sic*] acknowledge[s] that this standard UI is currently utilized by many healthcare customers and further acknowledge[s] and agree[s] that this UI layout is the intellectual property of MAHATHI. Allscripts's [*sic*] shall have a non-exclusive, perpetual, paid up and royalty free license to use this UI . . . ."[4]

Allscripts removed Mahathi from and/or blocked Mahathi's access to "Mahathi's Azure tenant" – the system on which the user interface is stored.[5] Allscripts converted the non-exclusive license granted by the May 2018 Statement of Work into an exclusive license, exceeded its license, and breached the license.[6] Mahathi notified Allscripts on June 18, 2021 of terminating the user interface license effective immediately, but Allscripts continued to use Mahathi's user interface after June 18, 2021.[7]

Mahathi assigned its rights and interests in the May 2018 Statement of Work to Andor on September 6, 2019. Mahathi and Andor contemporaneously signed two documents: an Assignment and Assumption Agreement and the Intellectual Property Notice of Assignment and Assumption.[8] Mahathi pleads these two documents "clearly" defined what it assigned, and what it did not assign, to Andor.[9] Mahathi also alleges a separate "Notice of Assignment and Assumption" document is part of the September 2019 Assignment.[10]

In the Assignment and Assumption Agreement, Mahathi and Andor agreed: "[Mahathi] hereby assigns, transfers and sets over unto [Andor] effective as of the date hereof [September 6,

2

2019], all of the right, title and interest of [Mahathi] in and to the Contracts."[11] Mahathi and Andor agreed "Contracts" included the May 18, 2018 Statement of Work.[12] They further agreed "[Andor] accepts the assignment made hereby and assumes and agrees to perform and observe all . . . obligations of [Mahathi] to the extent arising and to be performed and observed under and as described in the Contracts, including without limitations the obligation to provide the Services."[13] The Assignment and Assumption Agreement does not reference the Intellectual Property Notice of Assignment and Assumption.[14]

But the Intellectual Property Notice of Assignment and Assumption explicitly references both the May 2018 Statement of Work and the Assignment and Assumption Agreement.[15] It provides: "This letter is to clarify the Assignment and Assumption of the contracts. Assignment excludes any transfer of intellectual property that belongs to Mahathi. The Assignee further acknowledges the Mahathi Standard user Interface (UI) and UI Layout are intellectual property of Mahathi as described in the contracts…."[16]

The third document, the Notice of Assignment and Assumption, also dated September 6, 2019 provides: "This letter shall serve as notice of assignment and assumption of the Contracts. [Mahathi] has assigned all of its right, title, and interest in and to the Contracts [defined to include the May 2018 Statement of Work] to [Andor] . . . [Andor] has agreed in writing to assume all of [Mahathi's] obligations under the Contracts. A copy of the assignment instrument is enclosed with this notice."[17] It is unclear from the exhibits and pleading what Mahathi provided as the "assignment instrument," but Mahathi alleges the assignment documents include the Assignment and Assumption Agreement, Intellectual Property Notice of Assignment and Assumption, and the Notice of Assignment and Assumption.[18]

3

Mahathi alleges Allscripts did not acknowledge the assignment in September 2019.[19] Andor and Mahathi agreed Mahathi would continue to bill Allscripts despite the assignment.[20] In Spring 2020, Andor and Mahathi again agreed Mahathi would assign rights under its contracts to Andor, including the May 2018 Statement of Work.[21] Andor and Mahathi signed another "Intellectual Property Notice of Assignment and Assumption" on July 1, 2020.[22] Andor then began billing Allscripts, Mahathi engineers continued to provide services to Allscripts, and "Allscripts continued to manage the projects Mahathi was performing for Allscripts directly with Mahathi."[23] Mahathi alleges "[a]ll that changed after July 1, 2020 was that Andor was now sending monthly invoices for services Mahathi rendered to Allscripts, and Allscripts was paying Andor, rather than Mahathi, for the services Mahathi was providing."[24]

## II.    Analysis

Allscripts moves to dismiss Mahathi's breach of the license agreement in the May 2018 Statement of Work.[25] Allscripts moves to dismiss, arguing: (1) Mahathi has no right to sue because it assigned all of its rights to Andor under the September 2019 Assignment; (2) the "Clarifying Letter" purportedly forming part of the Assignment and clarifying Mahathi did not assign any intellectual property rights to Andor makes no difference in our analysis; (3) Allscripts had no obligation to provide Mahathi access to its servers; and (4) the events constituting the purported breach occurred after the May 2018 Statement of Work terminated, so Mahathi cannot maintain its claim.[26]

Mahathi counters: (1) the Assignment and Assumption Agreement and Intellectual Property Notice of Assignment and Assumption must be read together as the Assignment documents and demonstrate Mahathi did not assign Andor any rights in its user interface software, including the license Mahathi granted to Allscripts in the May 2018 Statement of Work; (2)

4

Allscripts's argument regarding timing of the alleged breaches is unavailing because the breaches occurred during the May 2018 Statement of Work and even if they did not, Allscripts could breach the license after it expired because the license is perpetual; and (3) Allscripts did not cure its alleged breach by providing a copy of the purported user interface source code under a reservation of rights.[27] Mahathi argues it did not assign its rights to its user interface intellectual property to Andor under the September 2019 Assignment documents, and it may maintain suit against Allscripts for breaching the user interface license.

We agree with Allscripts's main argument the assignment deprives Mahathi of standing and need not reach its other arguments. We dismiss Mahathi's claim for breach of the user interface license contained in the May 2018 Statement of Work.

The parties agreed Florida law applies to the May 2018 Statement of Work and the September 2019 Assignment documents.[28] The parties similarly agree principles of contract interpretation apply to our interpretation of the license and assignment.[29] We must determine whether Mahathi assigned its license with Allscripts to Andor in the September 2019 Assignment which would deprive Mahathi of standing to sue Allscripts for breach of the license. We find Mahathi assigned all rights in the May 2018 Statement of Work (including the contract rights to enforce its license) and cannot now sue on Allscripts on a breach of the same agreement.

"Contract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract."[30] "Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language . . . In such a situation, 'the language itself is the best evidence of the parties' intent, and its plain meaning controls.'"[31] Courts interpret "contractual provisions . . . in the context of

the entire agreement," and do not "indulge in construction or interpretation of [a contract's] plain meaning when it is clear and unambiguous."[32]

We begin with the plain text. Mahathi granted Allscripts a license to use (not own) its user interface software in the May 2018 Statement of Work: "MAHATHI will provide its standard User Interface ('UI') and ALLSCRIPT'S [*sic*] acknowledge[s] that this standard UI is currently utilized by many healthcare customers and further acknowledge[s] and agree[s] that this UI layout is the intellectual property of MAHATHI. Allscripts's [*sic*] shall have a non-exclusive, perpetual, paid up and royalty free license to use this UI . . . ."[33] Mahathi and Allscripts expressly agreed the user interface software is Mahathi's intellectual property, and Allscripts had a "non-exclusive, perpetual, paid up and royalty free license to use this [user interface software] . . . ."

We turn to the fundamentals. Mahathi did not sell a fee simple ownership interest in its user interface software to Allscripts. It gave Allscripts a license. A license is "[a] permission . . . to commit some act that would otherwise be unlawful."[34] A non-exclusive license (like the one Mahathi gave to Allscripts in the Statement of Work) is "[a] license of intellectual-property rights that gives **the licensee a right to use, make, or sell the licensed item on a shared basis** with the licensor and possibly other licensees."[35] "A nonexclusive license is a 'mere waiver of the right to sue' for infringement."[36] While Allscripts had the right to "use . . . the licensed" user interface software, Mahathi did not transfer the intellectual property rights to Allscripts by virtue of the license or assignment—Mahathi retained those as well as the right to license to other companies.

Our question is not whether Mahathi can sue Allscripts for infringing or misappropriating its user interface software; this issue is whether Mahathi may sue for breach of a license contained within a contract wholly assigned to Andor. Mahathi assigned its rights under the May 2018 Statement of Work encompassing the license to Andor: "[Mahathi] hereby assigns, transfers and

sets over unto [Andor] effective as of the date hereof [September 6, 2019], **all of the right, title and interest** of [Mahathi] in and to the Contracts."[37] Mahathi and Andor agreed "Contracts" included the May 18, 2018 Statement of Work between Mahathi and Allscripts.[38] Mahathi and Andor contemporaneously signed an additional document to "clarify" what Mahathi assigned: "This letter is to clarify the Assignment and Assumption of the contracts. **Assignment excludes any transfer of intellectual property that belongs to Mahathi**. The Assignee further acknowledges the **Mahathi Standard user Interface (UI) and UI Layout are intellectual property of Mahathi as described in the contracts**...."[39]

Even assuming we interpret these documents together as Mahathi urges, Mahathi did not retain its rights in the license under the unambiguous language of the September 2019 Assignment.[40] Mahathi assigned "all of [its] right, title and interest" in the May 2018 Statement of Work to Andor. This chosen language unambiguously confirms Mahathi assigned all of its rights and obligations under the May 2018 Statement of Work to Andor. But Andor and Mahathi "clarified" the assignment excluded "any transfer of intellectual property" defined in relevant part as the "Mahathi Standard user Interface (UI) and UI Layout." Mahathi knew the statement of work contained a license *for* its user interface. The sophisticated contracting parties nonetheless did not expressly exclude Mahathi's interest in the *license* of its *intellectual property*, just a "transfer of intellectual property."

We cannot read "transfer of intellectual property" to include the license of the user interface software to Allscripts. The license did not transfer the intellectual property to Allscripts, nor did the Assignment and Assumption Agreement transfer Mahathi's ownership in the user interface to Andor.[41] It merely transferred Mahathi's contractual right in its license with Allscripts to Andor. Mahathi asks us to read in terms to a contract sophisticated parties chose not to include. Mahathi

simply did not include limiting language in its assignment supporting its argument today of a "limited" assignment. Mahathi assigned "all of [its] right, title and interest" to Andor. We cannot rewrite Mahathi and Andor's unambiguous contract.

Mahathi argues a textual interpretation based on the definition of "license" applied to the contract terms fails to give effect to all provisions. We disagree. The Assignment and Assumption Agreement granted Andor all "right, title and interest" in the May 2018 Statement of Work, including the license which reads "MAHATHI will provide its standard User Interface ('UI') and ALLSCRIPT'S [sic] acknowledge[s] that this standard UI is currently utilized by many healthcare customers and further acknowledge[s] and agree[s] that this UI layout is the intellectual property of MAHATHI. Allscripts's [sic] shall have a non-exclusive, perpetual, paid up and royalty free license to use this UI . . . ." We do not decide whether this language could assign intellectual property rights in the user interface to Andor. But our interpretation Mahathi did not transfer intellectual property in the Assignment and Assumption Agreement does not render the Intellection Property Notice of Assignment and Assumption superfluous. Mahathi ensured Andor had no claim to its intellectual property under the license language and confirmed the same understanding in the Intellectual Property Notice of Assignment and Assumption.

Mahathi then argues interpreting its chosen terms to give each meaning produces a "commercially unreasonable" result because we are finding "Mahathi retained 'ownership' of its intellectual property rights in its [user interface software] . . . but it somehow did not retain the right to license it or actually enforce its ownership rights."[42] It continues: "Mahathi's retention of its ownership rights in the [user interface software] would be chimerical,[43] as it could not license out those rights itself nor sue to enforce them if they were infringed."[44] This is simply not the case. Mahathi owns the intellectual property rights in its standard user interface software. Nothing in

our analysis prevents Mahathi from licensing its user interface software and layout to other people and entities. It reserved this right through the non-exclusive license to Allscripts. Nor does anything in our analysis prevent Mahathi from enforcing its ownership rights in the standard user interface software and layout. We are merely finding Mahathi assigned its contractual rights in its license with Allscripts to Andor in September 2019. Mahathi thus cannot sue for breach of the "user interface license" because it is no longer a party to the Statement of Work it seeks to enforce as a matter of contract. But our holding does not preclude Mahathi from asserting another cause of action if it can plead consistent with Rule 11 Allscripts in some way infringed, misappropriated, or converted its intellectual property.

Mahathi lastly contends "[l]icensing is a form of intellectual property ownership, and the right to sue for infringement of that license is likewise tied to ownership." Mahathi provides a string cite of cases, none of which support this statement, and none of which are factually analogous here.[45] We have no basis to find a right to sue for breach of a licensing contract, which has been assigned by the licensor-intellectual property owner to a third-party, is tied to ownership of the actual intellectual property. The party to a contract has the right to enforce it.[46] Andor is now the party to the May 2018 Statement of Work including the user interface license under the September 2019 Assignment. Andor holds the contractual rights. Mahathi, as owner of the underlying intellectual property, may have a cause of action against Allscripts. But it is not breach of the license contained in the Statement of Work to which it assigned all of its rights in to Andor.

## III.    Conclusion

Mahathi is attempting to sue Allscripts for breach of a Statement of Work including a user interface license which it assigned to Andor. Mahathi preserved its ownership rights in the user interface software. Mahathi thus provided a nonexclusive license to Allscripts. It then confirmed

this understanding in its assignment to Andor. Nothing in the assignment transferred ownership of Mahathi's intellectual property. This language is entirely consistent with the Statement of Work between Allscripts and Mahathi.

But Mahathi did not retain the right to sue for breach of the Statement of Work including the license agreement in the September 2019 Assignment. Commercially sophisticated parties transferred those rights. Mahathi chose language presumably understanding it would still have the ability to claim misappropriation of its user interface intellectual property. Mahathi offers no basis for us to find a contract right is equivalent to a property interest in software and we decline to reach to this conclusion absent a legal basis. Mahathi may have been able to confirm its wish to retain the right to sue for breach of the Statement of Work but it instead chose language assigning all of its rights under that Statement of Work with Allscripts to Andor. We grant Allscripts's Motion to dismiss Mahathi's breach of the user interface license without prejudice.

---

[1] We begin our analysis with Mahathi's well-pleaded factual allegations, which we accept as true and from which we draw all reasonable inferences in favor of Mahathi *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)).

[2] D.I. 114 (Counterclaim) ¶ 165.

[3] *Id.* ¶¶ 167, 339.

[4] *Id.* ¶ 339; *see also* D.I. 118-1 (Statement of Work); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'") (further citation omitted).

[5] D.I. 114 (Counterclaim) ¶¶ 193–99; 341.

[6] *Id.* ¶ 342.

[7] *Id.* ¶¶ 343–44.

10

---

[8] *Id.* ¶¶ 172–73.

[9] *Id.*

[10] *Id.* ¶¶ 171, 178.

[11] D.I. 114-1, Ex. A, at 2 § 1 ("Assignment").

[12] *Id.* at 5 (Ex. A to Assignment).

[13] D.I. 114-1, Ex. A, at 2 § 2.

[14] *See, e.g.* D.I. 114-1, Ex. A at 2–5.

[15] D.I. 114-1, Ex. A at 6.

[16] *Id.*

[17] *Id.* at 7.

[18] D.I. 114 (Counterclaim) ¶¶ 171–73, 178.

[19] *Id.* ¶ 180.

[20] *Id.*

[21] *Id.* ¶ 181 (alleging this agreement is memorialized in the settlement agreement between Raj Toleti and Allscripts upon Mr. Toleti's departure from Allscripts).

[22] *Id.* ¶ 182.

[23] *Id.* ¶ 183.

[24] *Id.*

[25] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x

151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[26] D.I. 118 8–14.

[27] D.I. 132 at 12–20.

[28] D.I. 118-1 ¶ 8 (Statement of Work governing law provision); 114-1 at 3 ¶ 5 (assignment governing law provision).

[29] D.I. 118 at 8–12 (Allscripts applying Florida principles of contract interpretation to license and assignment); D.I. 132 at 12–18 (Mahathi applying Florida principles of contract interpretation to license and assignment); *see also* Raymond T. Nimmer & Jeff C. Dodd, MODERN LICENSING LAW § 4:3 Ordinary state contract law rules govern (November 2019 update) ("In general, interpretation of a license is 'governed by ordinary principles of state contract law,' though in certain limited instances federal law requires a different approach. This is true for all types of licenses (patent, copyright, trademark, online, software, etc.) and, even, licensing that does not involve intellectual property rights at all.").

[30] *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. Dist. Ct. App. 2009) (citing *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier*, 620 So.2d 786, 788 (Fla. 4th DCA 1993)).

[31] *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015) (citing *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011)).

[32] *Sec. & Exch. Comm'n v. Mut. Benefits Corp.*, 2021 WL 3888207, at *5 (S.D. Fla. May 22, 2021), *report and recommendation adopted*, 2021 WL 3883943 (S.D. Fla. Aug. 31, 2021).

---

[33] D.I. 114 (Counterclaim) ¶ 339; *see also also* D.I. 118-1

[34] LICENSE, Black's Law Dictionary (11th ed. 2019); *see also MidlevelU, Inc. v. ACI Info. Grp.,* 989 F.3d 1205, 1216 (11th Cir.), *cert. denied*, 141 S. Ct. 2863 (2021) (quoting Black's Law Dictionary definition of license).

[35] LICENSE, Black's Law Dictionary (11th ed. 2019) (emphasis added).

[36] *MidlevelU, Inc.,* 989 F.3d at 1216 (discussing non-exclusive licenses in the context of defense to copyright infringement claim).

[37] D.I. 114-1, Ex. A, at 2 § 1 ("Assignment") (emphasis added).

[38] *Id.* at 5 (Ex. A to Assignment).

[39] *Id.* at 6 (emphasis added).

[40] *See, e.g. JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 506 (Fla. Dist. Ct. App. 2020) ("The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract."); *Citicorp Real Est., Inc. v. Ameripalms 6B GP, Inc.*, 633 So. 2d 47, 49 (Fla. Dist. Ct. App. 1994) (same). We make no finding as to whether this principle applies, because even if we interpreted the documents together, the outcome is the same.

[41] Mahathi and Andor made sure Mahathi maintained its intellectual property rights in the user interface software through the Intellectual Property Notice of Assignment and Assumption. D.I. 114-1 at 6.

[42] D.I. 132 at 17.

[43] Meaning "being, relating to, or like a chimera especially: unreal and existing only as the product of wild unrestrained imagination." *See* Merriam-Webster Unabridged Dictionary https://unabridged.merriam-webster.com/unabridged/chimerical (last visited Nov. 17, 2021).

[44] D.I. 132 at 17.

[45] Citing *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) (addressing whether "an action for infringement by one co-author of a song can be defeated by a 'retroactive' transfer of copyright ownership from another co-author to an alleged infringer" and discussing whether a co-owner of a copyrighted work can license without the other owner's consent); *In re Golden Books Fam. Ent., Inc.*, 269 B.R. 311 (Bankr. D. Del. 2001) (addressing whether a *licensee* may assign its rights in the license during bankruptcy without the licensor's permission); *Scooter Store, Inc. v. SpinLife.com, LLC,* 777 F. Supp. 2d 1102 (S.D. Ohio 2011) (addressing trademark infringement but not in the context of enforcing a license*); Leopold v. Henry I. Siegel Co.*, 1987 WL 5373, at *4 (S.D.N.Y. Jan. 5, 1987) (finding a trademark owner can advise people of its trademark rights and its desire to enforce its rights as well as threaten infringers with a lawsuit and this is not

"wrongful" conduct after plaintiff receiving letter sued for tortious interference); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881 (9th Cir. 2005) (finding to *sue for copyright infringement* – not enforcement or breach of a license – the plaintiff must have a legal or beneficial interest in the copyright itself so when Frank & Bob Films assigned the right to sue for claims of infringement to Silvers but retained all copyright ownership, Silvers could not actually sue for infringement because it lacked standing).

[46] *See, e.g Greenacre Props., Inc. v. Rao,* 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006) ("As a general rule, a person who is not a party to a contract cannot sue for a breach of the contract even if the person receives some incidental benefit from the contract.").