IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Allscripts Healthcare, LLC, a North Carolina LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Andor Health, LLC, a Delaware Corporation, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 1:21-cv-00704-MAK ) |
| Andor Health, LLC, et al, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> Allscripts Healthcare, LLC, et al., <br><br> Counterclaim Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

**PLAINTIFFS/COUNTERCLAIM DEFENDANTS' MOTION FOR SANCTIONS UNDER F.R.C.P. 37(D) FOR DEFENDANTS' FAILURE TO PRODUCE DEPONENT VENKAT DEEPAK**

**BARNES & THORNBURG LLP**

Chad S.C. Stover (No. 4919)
William J. Burton (No. 6243)
1000 North West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3434
Fax: (302) 300-3456

Mark L. Durbin (admitted *pro hac vice*)
Scott T. Peloza (admitted *pro hac vice*)
Megan K. Krivoshey (admitted *pro hac vice*)
Christine E. Skoczylas (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606

Christina M. Baugh (admitted *pro hac vice*)
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
Tel: (404) 264-4046
Fax: (404) 264-433
*Attorneys for Plaintiffs*

Plaintiffs ("Allscripts") moves this Court to sanction Defendants Mahathi Software Pvt., LLC ("Mahathi"), Andor Health, LLC ("Andor"), Raj Toleti ("Toleti"), and Paul Tyriver ("Tyriver") (collectively "Defendants") under Fed. R. Civ. P. 37(d) and state as follows:

## FACTS

Allscripts alleges Defendants conspired to illegally copy its confidential and trade secret source code to build a competing Andor product. Allscripts also alleges that Andor cyberattacked Allscripts, disabling software that patients were actively using to communicate with their physicians. To deflect these allegations, Defendants allege that Allscripts employees hacked into Mahathi's systems to remove the only copy of Mahathi's supposedly proprietary user interface ("UI") source code. Mahathi is pressing those allegations here in its Counterclaim. (*See, e.g.*, D.I. 277, Fourth Amended CCs, ¶¶ 194, 199, 229, 234-241.) Mahathi is also pressing those allegations in a May 31, 2021 India criminal complaint it filed and is pursuing (D.I. 52-5), urging the India police to arrest the Allscripts employees allegedly involved. In addition to the theft of its code, Allscripts alleges, *inter alia*, that Mahathi's pursuit of the India criminal action constitutes abuse of process and is seeking declaratory judgment that it, not Defendants, owns the source code.

Venkat Deepak, as Mahathi's Deputy Vice President for Human Resources for ten years, is a key witness. (*See* Declaration of S. Peloza filed herewith ("Peloza Decl."), ¶3.) He was not just in the room where Defendants' committed their unlawful conduct, he chose the room, escorted the participants to the room at Mahathi's expense, set the table, and then actively participated in the unlawful conduct at the table. Among other activities, Mr. Deepak:

1) acting under the guise of India police authority, participated in the interrogation of Allscripts' Chief Litigation counsel during the July 13, 2021 police raid in India (Peloza Decl., ¶ 4);

2) set, booked and paid for the travel itinerary for the India police to travel across India in pursuit of Mahathi's crusade against Allscripts (Peloza Decl., ¶ 5);

3) travelled with the India police to conduct the raid, and to other parts of India participating with the police in their investigation and criminal proceedings (Peloza Decl., ¶¶ 4-6); and

4) falsified a purported ownership certificate for the "tenant" that Defendants use in the Indian criminal complaint and here to justify their cyberattack on Allscripts (Peloza Decl., ¶ 7).

Given Mr. Deepak's active role in Defendants' unlawful conduct, on December 6, 2021, Plaintiffs notified Defendants they wanted to depose Mr. Deepak and proposed a deposition date. Defendants, however, never presented him. This chronology (Peloza Decl., ¶8) shows Plaintiffs' Counsel's campaign to have Defendants present Mr. Deepak for his Rule 37(d) deposition:

- December 6, 2021 – Plaintiffs' Counsel ("PC") identified the first five Defendants; employees whom Plaintiffs wanted to depose, including Mr. Deepak. PC proposes starting the depositions the week of December 13, and asks for firm dates.
- December 6, 2021 – Defendants' Counsel ("DC") responds, identifying the initial list of Allscripts employees Defendants wanted to depose. DC commits to reviewing the availability of PC's requested witnesses, including Mr. Deepak, but states that he does not see the depositions proceeding the week of December 13.
- December 15, 2021 – PC emails DC asking if he has reconsidered and can make the witnesses, including Mr. Deepak, available the week of December 20.
- December 15, 2021 – DC responds stating their witnesses are not available the week of December 20 and proposes December 28 instead. He also notes that "Mr. Deepak . . . [is] in India, . . .which is 11.5 hours ahead of CT."
- December 22, 2021 – DC states he is working with his client to see who might be available the following week. However, given some still outstanding discovery, he suggests starting depositions on January 3.
- December 22, 2021 – PC responds, noting that if depositions do not start until January 3, the experts will not be able to consider the testimony before their reports are due.
- December 29, 2021 – the Court grants Defendants' motion for extension of time due to DC's broken ribs. Discovery deadline moved from February 10, 2022 to April 22, 2022.
- January 6, 2022 – PC writes to DC: "While we have been requesting deposition dates since December 6th, we are willing to look to schedule the depositions the week of January 17. Please provide us with dates, by Tuesday, January 11, on which . . .Mr. Deepak can be available for deposition[]."
- February 9, 2022 – PC requests dates for depositions of Defendants' witnesses, including Deepak, for the week of March 7.
- February 11, 2022 – DC responds stating, in pertinent part that Defendants, "will also get back to you on Mr. Depak [*sic*]."

2

- February 12, 2022 – PC proposes proceed with Mr. Deepak's deposition in two sessions on March 7 and 8.
- February 14, 2022 – DC responds stating, *inter alia*, "[w]e will get back to you concerning Mr. Deepak."
- February 18, 2022 – DC states during a meet and confer that DC would check whether Mr. Deepak was available for deposition on March 7 and 8.
- February 22, 2022, 4:52 p.m. – PC sends letter to DC, summarizing February 18 meet and confer, including that DC will check if Venkat is available on March 7 and 8.
- February 22, 2022, 9:33 p.m. – DC emails PC stating, "[o]n Friday, Mr. Deepak advised Mahathi that he was resigning from Mahathi effective immediately, to take a new position with another company."

Defendants' Counsel claim that Mr. Deepak, a 10-year Mahathi employee, without any prior warning or notice, simply walked out their door on February 18, 2022. Defendants have offered no proof; a one-page handwritten note from Mr. Deepak simply says he is quitting. It does not explain when he decided to quit, why, or whether the Defendants somehow tried to memorialize his testimony. (*See* Peloza Dec., ¶ 9.) Oddly, Mahathi's VP of Engineering, Madhu Maddi, contradicts Defendants Counsel—he testified that Mr. Deepak told him he intended to quit several weeks before his last day at work. (Peloza Decl., ¶ 10) After stonewalling setting Mr. Deepak's deposition for months, it is against this suspicious, convoluted background that Defendants are now claim they are unable to produce Mr. Deepak for his deposition.

The Court should not tolerate this witness obstruction, especially of a crucial witness like Mr. Deepak, whose testimony would almost certainly help Plaintiffs' case and damage Defendants'. Under Rule 37(d), the Court should impose a presumption that Mr. Deepak's testimony would have been unfavorable to Defendants.

**ARGUMENT**

The circumstances of Mr. Deepak's allegedly sudden departure after 10 years – during litigation, and months after Plaintiffs had asked for his deposition and Defendants then stonewalled setting it – are highly suspect. And Mr. Maddi testified it was not a sudden departure at all.

3

Fortunately, federal courts are keen to this type of witness obstruction. Under these circumstances, Courts deem Mr. Deepak a Rule 37(d) "managing agent" based upon his employment status *at the time of the alleged wrongdoing*, not based upon his current status as an ex-employee. Moreover, once a corporate party's counsel agrees to produce an employee at any level—even a former employee—courts hold that party responsible for producing that witness – no matter what.

As Mahathi's Vice President of Human Resources for 10 years as of the date Plaintiffs requested his deposition, Venkat Deepak was clearly Mahathi's "officer, director or managing agent" under F.R.C.P. 37(d). Given his status as an officer or managing agent, Plaintiffs could secure his deposition by simply providing notice. F.R.C.P. 37(d)(1)(A)(i); 8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2107, at p. 507-08 (2010). The issue is whether Mr. Deepak's "managing agent" status should be determined currently as a former Deputy VP, or instead as of the time when, acting as Defendants Deputy VP of HR in 2021, he and his co-workers committed the wrongful conduct. Courts interpreting Rule 37(d) hold that Mr. Deepak's status should be determined as of 2021, the time at which he participated in the Defendants' alleged conduct as the Deputy VP of HR:

> [T]he general rule is that former employees cannot be managing agents of a corporation. However, like most rules, this one has exceptions.  When a managing agent is fired "to avoid disclosure in pending or potential litigation," or when "the managing agent has been or might be reappointed to another position in the corporation," managing agent status that exists at the time of the events at issue does not magically disappear with the person's termination or reassignment.  **The reason for these exceptions is obvious: without them, an organization could manipulate discovery and frustrate the purpose of the rule . . . whenever it wished to prevent [the employees] from being deposed.**
> ...
> The timing and circumstances of Kolon's reassignment or termination of its employees render the true status of the proposed deponents highly suspect, and allow for a strong inference that Kolon is moving its employees around like chessmen, conveniently shielding them from DuPont's access.

*E.I. DuPont de Nemours and Co, v. Kolon Industries, Inc.,* 268 F.R.D. 45, 49, 51 (E.D. Va. 2010)

4

(deeming former employee a "managing agent") (emphasis added).[1]

In *Repet, Inc. v. Zhao*, CV-15-2315-VAP, 2018 WL 9802098,*7 (C.D. Cal. January 16, 2018), the court made a similar ruling, deeming a former employee a Rule 37(d) "managing agent":

> Where a key witness has been terminated by a party during a litigation and after being put on notice by the opposing party of its intention to take that witness's deposition, the court can apply the managing agent test as of the date the witness's deposition was requested. . . . [J]ust as the court noted in [*Kolon*], the timing and circumstances of [Plaintiff's] termination of [Plaintiff's Accounting Manager], after her deposition had already been noticed and agreed to, render her status as only a *former* managing agent "highly suspect.

*Id.*

And that *Kolon* exception applies not only to employees fired or reassigned, but also to employees who resign, especially under suspicious circumstances. In *In re Terrorist Attacks on September 11, 2001*, 2020 WL 8611024 (S.D. N.Y. August 27, 2020), *aff'd* 2021 WL 2227204 (S.D.N.Y. June 6, 2021), Plaintiffs first identified one of the Defendants' employees as a "person of interest" in October 2018, and then identified that same person as a witness for deposition in February 2019, and then again in December 2019. In February 2020, the Defendants advised Plaintiff and the Court that the employee had resigned effective May 2019. The Court found that, nonetheless, the (now former) employee was a managing agent under Rule 37(d), and Defendants were obligated to produce him for a deposition:

> At no time did [the defendant] advise Plaintiffs of the fact that [the employee] was leaving its employ, or take any available measures to preserve [the employee's] testimony. . . . . The [Defendant's] failure to notify Plaintiffs as to [the employee's] change in status support Plaintiffs' argument that [the employee's] retirement may have related in part to the pending litigation, and as such, the Court will determine [the employee's] status as a "managing agent" as of the time when the activities disputed in the litigation occurred, not

---

[1] The fact that the witness who is a managing agent under this exception is a citizen of a foreign country is irrelevant. In *Calderon v. Experian Information Solutions, Inc.*, 290 F.R.D. 508 (D. Id. 2013), the Defendant objected to producing its managing agent, a citizen of Chile, under Rule 37(d), claiming that under Chilean law, Chilean citizens could only be deposed through letters rogatory. The Court overruled the objection, noting that "because the employees in question may be deposed via notice [under Rule 37(d)] as managing agents of [Experian], concerns over Chilean judicial sovereignty are not implicated. . . ." *Calderon*, 290 F.R.D. at 519.

at the time of the deposition.

*Id.* at *5. Moreover, "when managing agency status is a "close question," doubts should be resolved in favor of the examining party." *Kolon Industries, Inc.,* 268 F.R.D. at 49; *see also In re Terrorist Attacks on September 11, 2001*, 2020 WL 8611024 at *5.

Mr. Deepak's status as a "managing agent" here is not a close question. But even if it were and Mr. Deepak were not classified as a "managing agent," in any event once a corporate party's counsel assumes responsibility for producing a corporate employee for deposition, he or she "must bear the responsibility for [that employee's] failure to appear." *In re Keystone Foods, Inc.*, 134 B.R. 828, 830 (Bankr. W.D. Pa 1991) (successor corporation's counsel agreed to produce the predecessor's former general manager for deposition).

*In PrecisionFlow Technologies, Inc. v. CVD Equipment Corp.,* 198 F.R.D. 33 (N.D.N.Y 2000), counsel were working together to schedule depositions of many corporate employees who were not corporate officers, directors or managing agents. Counsel would issue a notice of deposition, and then "the dates and times of the depositions were thereafter changed on several occasions in oral and written communications between counsel." *Id.* at 36. During that process, "PrecisionFlow never advised CVD that it would not produce the employees for deposition . . . ." It wasn't until "three months after the deposition notices had first been served that . . . [PrecisionFlow said it] did not know whether or when . . . the employees would appear for deposition." CVD moved for sanctions under Rule 37(d).

The Court found that "the practice in this district is that, unless otherwise stated, a corporate party will produce its employees for deposition upon notice without . . . a subpoena." *Id.* at 36-37.[2] The Court also found that PrecisionFlow's "counsel had assumed responsibility for the

---

[2] As Defendants state, the parties are attempting to schedule 40 fact depositions, on a very compact schedule. (D.I. 348, Page ID#9143). Counsel have foregone the formality of starting the

6

appearance of employees for their deposition," *Id.* at 37, and entered sanctions:

> [S]anctions may be imposed upon a party or its counsel under Rule 37(d) for the nonappearance of a witness who is not an officer, director or managing agent or had been designate as a representative of a party for any other purpose if the party assumed responsibility for the appearance of the witness at the deposition.

*Id.*

## CONCLUSION

Mr. Deepak is a critical witness. Defendants agreed to produce Mr. Deepak under Rule 37(d), but then stonewalled actually setting the deposition, until Mr. Deepak supposedly resigned with no notice. Under these suspect circumstances, Mr. Deepak's Rule 37(d) status is measured as of the 2021 date when he actively participated in the Defendants' wrongful conduct, and Defendants must be held accountable for failing to produce him. Alternatively, once Defendants assumed responsibility for producing Mr. Deepak, Defendants bear the consequences for his failure to appear. Given that his testimony would undoubtedly help Plaintiffs and hurt Defendants, the Court should impose an inference now, before ruling on dispositive motions, and give the same jury instruction, that Mr. Deepak's testimony would have been unfavorable to Defendants. The Court should also award Plaintiffs' fees and costs for this motion.

---

scheduling process by issuing a formal notice for a random date, time and place. Instead the parties exchange lists of employees they want to depose, and work together to arrange those depositions. Those dates frequently change. Rather than issue multiple amended notices of deposition for dozens of witnesses, counsel here first agree on a set date, time and place of the deposition, and then issue a formal notice to correspond with that agreed setting. While that practice is slightly different from the practice in *PrecisionFlow*, it is a distinction without a difference. The bottom line is that once counsel accepts responsibility for producing a corporate witness, counsel work together to schedule the deposition, even before sending a "formal" notice.

| | |
|---|---|
| Dated:  April 20, 2022 | BARNES & THORNBURG LLP |

*/s/  William J. Burton*
Chad S.C. Stover (No. 4919)
William J. Burton (No. 6243)
1000 North West Street, Suite 1500
Wilmington, DE  19801
Tel: (302) 300-3434
Fax: (302) 300-3456
Email:  chad.stover@btlaw.com
Email:  william.burton@btlaw.com

Mark L. Durbin (admitted *pro hac vice*)
Scott T. Peloza (admitted *pro hac vice*)
Megan K. Krivoshey (admitted *pro hac vice*)
Christine E. Skoczylas (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Phone: (312) 357-1313
Fax: (312) 759-5646
Email:  mark.durbin@btlaw.com
Email:  speloza@btlaw.com
Email:  megan.krivoshey@btlaw.com
Email:  Christine.skoczylas@btlaw.com

Christina M. Baugh (admitted *pro hac vice*)
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
Tel:  (404) 264-4046
Fax:  (404) 264-433
E-mail:   CBaugh@btlaw.com

*Attorneys for Plaintiffs*