# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Allscripts Healthcare, LLC, a North Carolina LLC, et al., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| Andor Health, LLC, a Delaware Corporation, et al., | ) <br> ) <br> ) C.A. No. 1:21-cv-00704-MAK |
| Defendants. | ) <br> ) |
| Andor Health, LLC, et al, | ) <br> ) |
| Counterclaim Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| Allscripts Healthcare, LLC, et al., | ) <br> ) |
| Counterclaim Defendants. | ) |

## PLAINTIFFS' OBJECTIONS TO DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Dated: June 15, 2022

BARNES & THORNBURG LLP

Chad S.C. Stover (No. 4919)
William J. Burton (No. 6243)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
Email: chad.stover@btlaw.com
Email: William.burton@btlaw.com

Mark L. Durbin (admitted *pro hac vice*)
Megan K. Krivoshey (admitted *pro hac vice*)
Scott T. Peloza (admitted *pro hac vice*)
Christine E. Skoczylas (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606

Phone: (312) 357-1313
Fax: (312) 759-5646
Email:  mark.durbin@btlaw.com
Email:  megan.krivoshey@btlaw.com
Email:  speloza@btlaw.com
Email:  christine.skoczylas@btlaw.com

Christina M. Baugh (admitted *pro hac vice*)
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
Tel:  (404) 264-4046
E-mail:   CBaugh@btlaw.com

Heather B. Repicky (admitted *pro hac vice*)
One Marina Park Drive, Suite 1530
Boston, MA  02210
Phone:  (617) 316-5317
Email:  heather.repicky@btlaw.com

*Attorneys for Plaintiffs / Counterclaim Defendants*

# OBJECTIONS

## I. ALLSCRIPTS OBJECTS TO DEFENDANTS' VERDICT FORM

While the Court's Order does not require the parties to object to verdict forms, Allscripts notes that Defendants' proposed verdict form is excessively long, unnecessarily complicated, and unworkable. Defendants' proposed verdict form is 71 pages long—longer than their proposed jury instructions. It asks the jury to answer "yes" or "no" for every single element of every single claim, for every single combination of plaintiff and defendant, and has multiple subparts and confusing directions about when to answer or skip questions. This is not needed. *See Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, No. CV 17-75-LPS, 2019 WL 8353393, at *2 (D. Del. Dec. 30, 2019) (denying motion for new trial where verdict form "did not include the required elements of proof" because the jury is presumed to have understood and followed the Court's instructions and there is no requirement for "specific findings on each element of a claim"). Defendants' proposal is simply not viable and would inevitably lead to an inconsistent and unclear verdict from the jury.

## II. MISSING INSTRUCTIONS

Allscripts objects to Defendants' proposed jury instructions to the extent that they do not include instructions that are contained in Allscripts' proposed instructions. *See, e.g.*, D.I. 559 Nos. 1 (agency), 2.3 (contract claim barred by own material breach), 2.12 (waiver of contractual rights), 3.7 (tortious interference – competition as proper or improper interference), 3.8 (tortious interference – truthful information), 3.9 (unfair competition), 3.11 (defamation – defenses of privilege and opinion), 8.1 (estoppel), 8.2 (unclean hands), 9.1-9.4 (damages instructions).

1

### III. DAMAGES

Allscripts objects generally to Defendants' failure to include a comprehensive or summary damages section in its jury instructions, particularly where many of the claims in Defendants' proposed instructions have no damages instructions at all. *See, e.g.*, D.I. 559 No. 7 (Florida Unfair and Deceptive Trade Practices Act), No. 10 (tortious interference), No. 11 (breach of duty of loyalty. Further, the only punitive damages instruction that Defendants include relates specifically to defamation, even though Allscripts is seeking punitive damages for its claims for civil conspiracy, the Stored Communications Act, abuse of process, unfair competition, tortious interference, misappropriation of trade secrets, and breach of duty of loyalty. Allscripts' method of instructing the jury on damages—including one comprehensive damages instruction at the end—is simpler, covers all claims, and is less likely to confuse the jury.[1] D.I. 559 Nos. 9.1-9.4.

### IV. ALLSCRIPTS OBJECTS TO DEFENDANTS INCOMPLETE INSTRUCTIONS – NOS. 2.1, 6.5, 10.3, 12.1, 12.3, 16.2

**<u>Def. Proposed Instruction 2.1</u>**: Allscripts objects to Defendants' CFAA instruction as incomplete because it only sets forth one of the violations that Allscripts alleges under the CFAA. Allscripts, however, asserts four separate violations of the CFAA against Defendants (Section 1030(a)(2), Section 1030(a)(5)(A), Section 1030(a)(5)(B), and Section 1030(Aa(5)(C)). The Court should therefore use Allscripts' CFAA instructions. D.I. 559 Nos. 6.5-6.10.

**<u>Def. Proposed Instruction 6.5</u>**: Allscripts objects to Defendants' trade secret misappropriation instruction as incomplete because they fail to include an instruction that "use" of a trade secret can be proven by inevitable disclosure. As Allscripts argued in its response to Defendants' motion for summary judgment, Defendants know everything about the HealthGrid

---

[1] Where necessary, Allscripts does include specific damages instructions. *See, e.g.*, D.I. 559 No. 5.7 (trade secret damages), No. 6.14 (SCA damages).

2

business and are directly competing with Allscripts for the same business and same customers—it is inevitable that Defendants will use their trade secret knowledge to unlawfully compete. Accordingly, Allscripts proposes adding the following instruction:

> Proof of the defendant's knowledge of the trade secret together with substantial similarities between the parties' products or processes may justify an inference of use by the defendant.

Source: Restatement (Third) of Unfair Competition § 417 40 cmt. c; *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 111 (3d Cir. 2010).

**Def. Proposed Instruction 10.3:** Allscripts objects to this instruction because it omits a key principle of law related to the requirement of a business expectancy for tortious interference. Defendants fail to include the following principle: "It is sufficient if you find from the evidence that there were either prior dealings or a prior course of conduct from which there would be a reasonable expectation of future economic benefit." This statement is included in the instruction for existence of a business relationship set forth in the ABA Model Jury Instructions cited by Allscripts, ***and*** in the approved jury instructions from the *Cryovac* case cited by Defendants. ABA Model Jury Instr. Bus. Tort Lit. (Lexis) § 72; Approved Jury Instruction No. 4.2 (D.I. 376), *Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, 04-cv-01278-KAJ (D. Del. June 22, 2006). Defendants improperly omitted this pertinent principle, and the Court should use Allscripts' instruction. D.I. 559 No. 3.3.

**Def. Proposed Instruction 12.1**: Allscripts objects to Defendants' breach of contract instruction as incomplete because it fails to outline the various breach of contract claims for the jury. Allscripts requests the Court use its breach of contract instructions instead. D.I. 559 Nos. 2.1-2.13.

**Def. Proposed Instruction 12.3**: Allscripts objects to this instruction as incomplete because it fails to set forth Allscripts' affirmative defense that Raj Toleti prevented Allscripts from

3

performing its obligations under the Merger Agreement. Any instruction on prevention of performance must also include Allscripts' affirmative defense, which is set forth in its proposed instruction. D.I. 559 No. 2.12.

**Def. Proposed Instruction 16.2**: Allscripts' objects to Defendants' proposed instruction on release of claims as incomplete. Allscripts contends that it did not release Toleti from his breaches of the duty of loyalty when it signed the Settlement Agreement because Allscripts did not know about Toleti's breaches at that time. Thus, any jury instruction on a release must include that principle. Allscripts proposed the following instruction:

> As a defense to Allscripts' claim against Raj Toleti for breach of the duty of loyalty, Raj Toleti claims that Allscripts released its claims against him for breach of the duty of loyalty in paragraph 7 of the Settlement Agreement. For Toleti to prevail on this defense, you must find that Allscripts executed a written release or covenant not to sue. A release ordinarily includes only claims in existence at the time it is executed. Claims that originate after its execution are not discharged absent a clear expression of intent to that effect. In addition, any release is not valid if Toleti withheld facts that were material to the agreement. A withheld fact is material if Allscripts would have acted differently had it been aware of the withheld fact.
>
> If you find that such a release was executed, you must find that Raj Toleti is excused from his breach of the duty of loyalty.

Source: 1 Illinois Forms of Jury Instruction § 13.06, cmt. 5 (2022); *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 53; *Cwikla v. Sheir*, 345 Ill. App. 3d 23 (2003) ("Parties in a fiduciary relationship owe one another a duty of full disclosure of material facts when ... obtaining a release.... [A] severance agreement arising out of a fiduciary relationship is voidable if one party withheld facts that were material to the agreement.... A withheld fact is material if plaintiff would have acted differently had he been aware of the withheld fact."); *Shane v. Shane*, 891 F.2d 976, 986 (1st Cir. 1989) (a release will not bar subsequent claims if the release was obtained by fraud or misrepresentation, and "where a release is obtained without full disclosure of the relevant facts by one who is under a duty to reveal them, it can be set aside.").

4

V.  **IRRELEVANT INSTRUCTIONS – NOS 6.9, 9.1, 9.2, 9.3, 9.4**

**Def. Proposed Instruction 1**: Allscripts objects to Defendants' proposed instruction regarding the nature of the case. At the time final jury instructions will be read the jury will already be familiar with the nature of the case, and a summary will not be necessary.

**Def. Proposed Instruction 6.9**: Allscripts objects to Defendants' proposed instruction 6.9 on reasonable royalty damages for a trade secret claim because it is irrelevant. Andor does not seek a reasonable royalty for its trade secrets claim, nor has it disclosed any calculation of a reasonable royalty, and Allscripts does not intend to pursue a reasonable royalty theory of damages.

**Def. Proposed Instructions 9.1, 9.2, 9.3, 9.4**: These instructions relate to a claim for tortious interference with contract. Neither party brings a claim for tortious interference with contract. Therefore, Allscripts objects to these instructions as irrelevant.

VI.  **ALLSCRIPTS OBJECTS TO DEFENDANTS' PROPOSED DEFAMATION INSTRUCTIONS – NOS. 15.1-15.8**

Allscripts objects to Defendants' proposed defamation instructions in their entirety because they are based on the wrong law. Defendants acknowledged to the Court during summary briefing that Florida law applies to Defendants' defamation claims. *See* D.I. 508 pp. 1. Florida has pattern jury instructions for defamation, but Defendants inexplicably chose to cite to Delaware pattern jury instructions for their proposed defamation instructions, and then attempt to support the Delaware instruction by citing to some Florida case law. But Florida and Delaware law are not the same for defamation claims, and the Florida cases do not support Defendants' proposed instructions. As one example, Defendants' proposed instruction 15.6 does not cite *any* Florida case to support this proposition. As another example, under Florida law, a defamatory statement is one that "tends to harm the reputation of another as to lower him or her in estimation of community or deter third persons from associating or dealing with the defamed party." *Mile Marker, Inc. v.*

5

*Petersen Publishing, L.L.C.*, 811 So.2d 841, 845 (Fla. 4th DCA 2002). In Defendants' proposed instruction No. 15.3, however, Defendants define a "defamatory statement" as "some statement or action that diminishes the esteem, respect, goodwill, or confidence in which the person is held and tends to cause bad feelings or opinions about the person." But in the case Defendants cite to support this instruction, the Court never defines a "defamatory statement." *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001). In fact, nowhere in *Doe v. Am. Online, Inc.* do the words "esteem," "goodwill," "confidence," or "bad feelings" even appear.[2] Defendants seem to be creating a definition to fit their narrative.

In short, it is improper, confusing, and illogical to use Delaware pattern jury instructions for a defamation claim that both parties agree is governed by Florida law. The Court should use Allscripts' defamation instructions, which are based on Florida's pattern jury instructions. D.I. 559 Nos. 3.10-3.11.

## VII. ALLSCRIPTS OBJECTS TO DEFENDANTS' INSTRUCTIONS ON THE STORED COMMUNICATIONS ACT – NOS. 3.1, 3.2, 3.3

**Def. Proposed Instruction 3.1**: Allscripts objects to Defendants' proposed instruction on elements of the SCA because it is likely to confuse the jury. Allscripts' proposed SCA instruction more clearly outlines the claim for the jury by applying the facts of this case to the claim and detailing what Allscripts has to prove. D.I. 559 No. 6.13. It also defines for the jury what a "facility" is, whereas Defendants' instruction does not. Further, Defendants' instruction contains an extraneous sentence: "This statute covers unauthorized access, not unauthorized disclosure of information." This is not an element of the SCA, and Allscripts does not argue there was unauthorized disclosure of information as a result of Defendants' access.

---

[2] The word "respect" is in the case, but in other contexts, not in relation to defamation.

**Def. Proposed Instruction 3.2**: Allscripts' objects to this instruction as incomplete. Defendants' instruction purports to set forth the relevant definitions of the SCA, but fails to include definitions for wire communication, oral communication, user, or electronic communications system, all of which become relevant if the three definitions Defendant offer are given. 18 U.S.C. 2510. It also fails to define a "facility," whereas Allscripts' instruction does. D.I. 559 No. 6.13.

**Def. Proposed Instruction 3.3**: Allscripts objects to this instruction because it is not a correct recitation of SCA damages under the law. Allscripts' proposed instruction on damages under the SCA is correct, which provides for $1,000 for each violation. D.I. 559 No. 6.14.

## VIII. ALLSCRIPTS OBJECTS TO DEFENDANTS' PROPOSED INSTRUCTIONS THAT ARE INCORRECT OR CITE INAPPLICABLE LAW – NOS. 8.1, 10.1, 10.4, 11.1, 14, 16.1

**Def. Proposed Instruction 8.1**: Allscripts objects to Defendants' abuse of process instruction because it deviates from the well-established Delaware pattern instructions on this claim by adding in principles cherry-picked by Defendants. The last paragraph in Defendants' proposed instruction reads: "*Furthermore, in order to find for the Claiming Party, you must find the Opposing Party committed some overt act in addition to causing the process at issue, as the mere issuance of process, even if done with an improper motive, is insufficient to sustain a claim for abuse of process. Stated differently, the Claiming Party must show that the Opposing Party used some form of coercion to obtain a collateral advantage outside the legal proceeding itself.*" This is not part of the Delaware pattern instructions, and for good reason—it is duplicative and will undoubtedly confuse the jury.  The Delaware pattern instruction provides the elements that Allscripts must prove, which are (1) an improper or wrongful purpose in using the legal process, and (2) a willful act in the use of the system not proper in the regular conduct of proceedings. The second element is the overt act requirement.  Defendants' additional paragraph is just a restatement of the overt act requirement, but makes it seem like this is an additional element that Allscripts has

to prove. Defendants are improperly attempting to influence the jury in their favor by repeat emphasis of the overt act requirement in the instructions. The Court should use Allscripts' proposed abuse of process instruction. D.I. 559 No. 3.12.

**Def. Proposed Instruction 10.1**: Allscripts objects to Defendants' proposed instruction related to the elements of tortious interference with prospective economic advantage because it incorrectly recites the elements of the claim. Defendants list as the third element that: "The Opposing Party acted intentionally to prevent a contract being formed between the party and a third party." That is not the law. There is no requirement that the moving party has to show there was a specific contract that was not formed. In fact, this is refuted by Defendants' own proposed instruction 10.3, which acknowledges that "the expectancy need not be evidenced by a contract." Rather, the correct statement of law on this element is that the opposing party acted intentionally to either end the relationship or prevent the expectancy of a business relationship. *See Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 429 (D. Del. 2003); *Data Centers, LLC v. 1743 Holdings LLC*, 2015 WL 9464503, at *9 (Del. Sup. Ct. Oct. 27, 2015). This is reflected in the ABA Model Jury Instructions, on which Allscripts' instruction is based, and the Court should use Allscripts' instruction on the elements of tortious interference with prospective business relationships. D.I. 559 No. 3.2.

**Def. Proposed Instruction 10.4**: Allscripts objects to this proposed instruction because it incorrectly recites the knowledge requirement. Defendants' proposed instruction makes it seem as though there has to be a specific, identifiable contract with which the party interfered. *See* D.I. 561 No. 10.4 ("you must also find that Opposing Party knew of the existence of an expectancy ***of a contract*** with a specific third party." "Opposing party should have known of the existence of an expectancy by the Claiming Party ***of a contract***."). Again, this is not the law as it relates to tortious

8

interference with prospective economic advantage. Rather, the defending party must have knowledge of the business ***relationship or expectancy***.[3] *See Enzo Life Sciences, Inc. v. Digene Cor.*, 295 F. Supp. 2d 424, 429 (D. Del. 2003). This is reflect in the ABA Model Jury Instructions, which the Court should use instead: "To find for the plaintiff, you must also find that the defendant knew of the existence of this business relationship or expectancy of the business relationship. To have knowledge means that the defendant has information concerning the business relationship or expectancy of the business relationship, which was discovered by the defendant or was brought to defendant's attention by others. In this regard, knowledge may be found to exist if, from the facts and circumstances of which the defendant had knowledge, the defendant should have known of the existence of such business relationship or expectancy of the business relationship." ABA Model Jury Instr. Bus. Tort Lit. (Lexis) § 74.

**Def. Proposed Instruction 11.1**: Allscripts objects to Defendants' proposed instruction for breach of the duty of loyalty because it relies on the incorrect state law and asserts incorrect principles of law. First, Defendants rely on Delaware law to support their proposed instruction, but it is actually Illinois law that applies. Allscripts is headquartered in Chicago, Illinois, conducts its business from Illinois, and any harm from Toleti's breach of the duty of loyalty would be felt in Illinois. *See Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 295 F. Supp. 2d 430, 434 (D. Del. 2003) (outlining most significant relationship test). Further, Illinois law and Delaware law conflict on claims for breach of duty of loyalty. Illinois law is clear that an employee owes a duty of loyalty to his employer, whereas Delaware law is not as clear on this principle. *Lawlor v. N.*

---

[3] The case Defendants cite, *Assadourian v. Harb*, 430 Fed. App'x 79 (3d Cir. 2011), was decided under New Jersey law, not Delaware law. But even in that case, the requirement was knowledge of the ***expectancy***, not of a specific and identifiable contract. *Id.* at *82.

9

*Am. Corp. of Ill.*, 983 N.E.2d 414, 433 (Ill. 2012); *see also Lumenate Techs., LP v. Integrated Data Storage, LLC*, 2013 WL 5974731, at *8 (N.D. Ill. Nov. 11, 2013); *Advantage Mktg. Grp., Inc. v. Keane*, 143 N.E.3d 139, 147,150 (Ill. App. 2019). Accordingly, the Court should apply Illinois law and use Allscripts' proposed instruction, and reject Defendants' proposed instruction that is based on Delaware law.

Second, regardless of whether Illinois or Delaware law applies, Defendants' proposed instruction makes two statements that are, at best, misleading, and at worst, simply wrong. Defendants propose the following two sentences: (1) "For example, employees do enjoy a privilege allowing them to prepare to compete with their employer before their employment relationship ends"; and (2) "Similarly, an employee may proper act in good faith outside of his employment even though it may adversely affect his employer's business."

As a preliminary matter, these proffered instructions should be rejected outright because they conflict with Illinois law.

Even if Delaware law applied, however, these proposed instructions should still be rejected. The cases Defendants cite make it clear that the first sentence, "employees do enjoy a privilege allowing them to prepare to compete with their employer before their employment relationship ends," is not applicable to this case whatsoever. The Court in *Science Accessories* found that because "Defendants were not under employment contracts with SAC or covenants not to compete… they were free to make reasonable preparations to compete while still employed by SAC and after quitting SAC's employ, to compete with SAC." *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 965 (Del. 1980). Here, however, it is undisputed that Raj Toleti *was* under a contractual obligation not to compete with Allscripts, and therefore was *not* free to make preparations to compete.

10

Furthermore, these two statements in Defendants' proposed instruction completely twist the Court's language and leave out crucial qualifying language. The portion of the Court's opinion on which Defendants rely states in full:

> Similarly, while **an agent may not put himself in a position antagonistic to his principal**, an agent is not thereby prevented from acting in good faith outside his employment even though it may adversely affect his principal's business. Restatement (Second) of Agency s 387, Comment b (1957). Further, an agent can make arrangements or plans to go into competition with his principal before terminating his agency, **provided no unfair acts are committed or injury done [to] his principal**.

*Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. 1980). Defendants intentionally omit the bolded and underlined language, and instead make it seem as though an employee has broad rights to prepare to compete and commit acts that adversely affect their employer's interest regardless of the situation, which is not supported by the law or by any jury instruction. *See also* Restatement (Second) of Agency§ 387 (1958) (an employee must "take no unfair advantage of his position in the use of information or things acquired by him because of his position as agent or because of the opportunities which his position affords").

In sum, Defendants' proposed instruction on the breach of duty of loyalty is based on the wrong state law and includes inaccurate and misleading statements. The Court should use Allscripts' proposed instruction. D.I. 559 No. 3.1.

**Def. Proposed Instruction 14**: Allscripts objects to Defendants' proposed instruction 14 on breach of the covenant of good faith and fair dealing. Defendants' proposal fails to include Delaware law explaining the covenant. The instruction should include the following additional text: "In Delaware, the implied covenant of good faith and fair dealing requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. When conducting this analysis, you must assess the parties' reasonable expectations at the time the contract was

11

executed." *See* Jury Instructions at 6 from *DRIT LP v. Glaxo Group Ltd.*, C.A. No. N16C-07-218 WCC CCLD (Del. Superior Ct. Sept. 18, 2018). These concepts appear in the case cited by Defendants, *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 628 (D. Del. 2015), but are not included in Defendants' proposed instruction.

**Def. Proposed Instruction 16.1**: Allscripts objects to Defendants' proposed instruction regarding the statute of limitations on its breach of loyalty claim. As explained above, Illinois law applies to Allscripts' breach of the duty of loyalty claim, not Delaware law. Under Illinois law, the statute of limitations for breach of fiduciary duty is five years. *See Armstrong v. Guigler*, 174 Ill. 2d 281, 291-92 (Ill. 1996), citing 735 ILCS 5/13-205. Accordingly, Toleti's statute of limitations defense fails as a matter of law and should not even go to the jury.

Even if his statute of limitations defense is viable, however, Defendants' proposed instruction is woefully inadequate. Under the discovery rule, which is applicable to breach of fiduciary duty claims, a cause of action accrues and the limitations period commences when the plaintiff knew or reasonably should have known of the injury and that it was wrongfully caused. *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 618 (1st Dist. 2007). Delaware law likewise allows for tolling of breach of fiduciary duty claims. *See In re AMC Investors, LLC*, 637 B.R. 43, 75 (Bkrtcy. D. Del. 2022). Accordingly, if Toleti's statute of limitation defense is viable, the jury should be instructed as follows:

> Raj Toleti contends that Allscripts did not file its claim for breach of his duty of loyalty within the time deadline set by law. Allscripts' breach of duty of loyalty claim was filed untimely if Raj Toleti proves that before [May 17, 2018] [May 17, 2016] Allscripts discovered, or in the use of reasonable diligence should have discovered, facts comprising each of the elements of its breach of duty of loyalty claim. Raj Toleti's contention regarding the time deadline applies only to Allscripts' claim against him for breach of his duty of loyalty.

Source: Washington Pattern Jury Instructions—Civil, April 2022 Update- WPI 170.000 (Modified); *Armstrong v. Guigler*, 174 Ill. 2d 281, 291-92 (Ill. 1996), citing 735 ILCS 5/13-205;

*Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 618 (1st Dist. 2007); *In re AMC Investors, LLC*, 637 B.R. 43, 75 (Bkrtcy. D. Del. 2022).

## IX. DEFENDANTS' INSTRUCTIONS NOT BASED ON PATTERN INSTRUCTIONS – NOS. 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 6.7, 6.8, 7, 10.5, 13.1, 16

Numerous instructions that Defendants propose are not based on any pattern instructions, such as the applicable state law standard instructions or ABA model jury instructions, but are instead based on principles that Defendants cherry-picked from certain cases and then mischaracterize in their instructions.

**Def. Proposed Instructions 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 6.7, 6.8**: These instructions are related to misappropriation of trade secrets. Allscripts objects to these instructions because rather than relying on neutral pattern instructions, Defendants cherry-picked certain instructions all from the same case, *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 17:-cv-1973 (N.D. Ill.), that Defendants appear to believe fits their narrative, and even then modified some of these instructions to further tailor the instructions to Defendants' theory of the case. As a prime example, Defendants' proposed instruction 6.6 for the definition of "improper means" relies on the *Motorola* case as its authority, but only sets forth half of the "improper means" instruction from that case. Defendants leave out the second paragraph of the definition of "improper means," which provides: "On the other hand, the phrase 'improper means' does not include acquiring information through reverse engineering or independent development." *Motorola Sols., Inc.*, 17-cv-1973, D.I. 895 No. 25 (N.D. Ill.). Defendants' entire trade secret theory is based on reverse engineering, yet they purposely excluded the portion of the instruction that is directly relevant to that theory because it is harmful to Defendants' case.

Similarly, Defendants ask the Court to instruct the jury on "Trade Secret-Concreteness"— another self-serving instruction from the *Motorola* case. It is clear Defendants cherry-picked this

13

instruction from the *Motorola* case because they appear to believe it helps their theory, while conveniently leaving out other trade secret instructions in *Motorola* that would be harmful to their case, such as "Modifications or Improvements," which provides: "You may find that a person used another's trade secret even if he uses it with modifications or improvements, so long as the substance of the resulting product is substantially derived from the other's trade secret." *Motorola Sols., Inc.*, 17-cv-1973, D.I. 895 No. 26 (N.D. Ill.). In any event, "concreteness" or "concrete information" is not an element of a trade secret claim, nor is it used by the DTSA in defining what a trade secret is. At most, a proper instruction would be that a trade secret must be "specific and identifiable," which could be easily added to the first element of Allscripts' proposed instruction No. 5.1.

Because Defendants' proposed instructions are not neutral and exclude relevant instructions, the Court should use Allscripts' trade secrets instructions, which are comprehensive and based on ABA Model Jury Instructions. *See* D.I. 559 Nos. 5.1-5.7.

**Def. Proposed Instruction 7**: Allscripts objects to Defendants' proposed instruction for Allscripts' FDUTPA claim because it is confusing, lacks detail, and is not based on Florida's Standard Jury Instruction. For example, Defendants define a "deceptive act" by using the word "deceive"—this is not a helpful definition. The correct definition, based on Florida's standard jury instruction for FDUTPA claims, is that a deceptive act is one that is likely to *mislead* a person. Allscripts has provided a more comprehensive instruction for the jury, based on Florida's pattern instructions. *See* D.I. 559 No. 4.1.

**Def. Proposed Instruction No. 10.5**: Allscripts objects to Defendants' proposed instruction for causation on tortious interference. Defendants' proposed instruction is not based on a pattern instruction and is confusing. For example, it states: "Should you find Opposing Party

liable for interfering with Claiming Party's expectancy, you will then determine the damages that Claiming Party is entitled to under the instructions I will give you." But Defendants never give an instruction on damages. Allscripts' instruction on causation is clearer, is tailored to the facts of the case, and is based on more applicable pattern instructions, and the Court should use Allscripts' instruction on causation. D.I. 559 No. 3.5.

**Def. Proposed Instruction No. 13.1**: Allscripts objects to this proposed instruction as confusing. Allscripts' instruction on Commercial Disparagement under the Illinois Deceptive Trade Practices Act more clearly lays out the elements and tailors to the instructions to Andor and Mahathi's specific claim. D.I. 559 No. 4.2.

**Def. Proposed Instruction No. 16**: Allscripts objects to Defendants' proposed instruction on civil conspiracy because it is insufficient to instruct the jury on this claim. Defendants simply list the elements of a civil conspiracy claim. But Defendants' instruction fails to explain to the jury what a conspiracy is, what proof is required to establish a conspiracy, and the effect of finding a civil conspiracy. Allscripts' proposed instruction, which is based off of a pattern instruction, provides this necessary detail to the jury. D.I. 559 No. 7.

Dated: June 15, 2022                                       BARNES & THORNBURG LLP

/s/ *Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
William Burton (No. 6243)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
E-mail: chad.stover@btlaw.com
Email: William.burton@btlaw.com

Mark L. Durbin (admitted *pro hac vice*)
Megan K. Krivoshey (admitted *pro hac vice*)
Scott T. Peloza (admitted *pro hac vice*)
Christine E. Skoczylas (admitted *pro hac vice*)
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Phone: (312) 357-1313
Email:  mark.durbin@btlaw.com
Email:  megan.krivoshey@btlaw.com
Email:  speloza@btlaw.com
Email:  christine.skoczylas@btlaw.com

Christina M. Baugh (admitted *pro hac vice*)
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305
Tel:  (404) 264-4046
E-mail:   CBaugh@btlaw.com

Heather B. Repicky (admitted *pro hac vice*)
One Marina Park Drive, Suite 1530
Boston, MA  02210
Phone:  (617) 316-5317
Email:  heather.repicky@btlaw.com

Attorneys for Plaintiffs

16