IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ALLSCRIPTS HEALTHCARE, LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 21-704 |
| | : | |
| **ANDOR HEALTH, LLC,** *et al.* | : | |

# ORDER-MEMORANDUM

**AND NOW,** this 16th day of June 2022, upon considering Amar Bulsara's Motion for reargument (D.I. 552), raising issues already considered but which he believes may have been overwhelmed by the great variety of arguments raised by the other parties during the summary judgment briefing and extensive oral argument (although he recognizes our discussion of his arguments during oral argument), and continuing to find genuine issues of material fact which do not allow us to enter judgment as a matter of law and which can be fairly raised to the jury, it is **ORDERED**:

1. Amar Bulsara's Motion for reargument (D.I. 552) is **DENIED**; and,

2. Plaintiffs shall be prepared to discuss during our conference at Noon on June 17, 2022 (D.I. 584) as to why we should not Order Plaintiffs to mediate with Mr. Bulsara before trial at its sole expense.

## Analysis

Amar Bulsara moved for summary judgment on Allscripts' three claims against him: misappropriation of trade secrets under the Defend Trade Secrets Act; breach of the inventions and restrictive covenant agreement; and tortious interference with existing and prospective economic advantage.[1] We denied his motion following a lengthy oral argument on the extensive

briefing by Mr. Bulsara and Allscripts.[2] He now moves for reargument under Delaware Local Rule 7.1.5.[3] We deny his motion.

### *We find no basis to reargue the disputed issues of Mr. Bulsara's officer position.*

Mr. Bulsara first contends we erred in finding genuine issues of material fact with regards to his claim for breach of the Inventions and Restrictive Covenant Agreement because the undisputed evidence shows he was not a Vice President in level or title, and we should have nevertheless pared down Allscripts' claim against him for breach of the Agreement. We disagree.

Mr. Bulsara worked for Health Grid as Vice President of Implementing Engineering.[4] Allscripts acquired Health Grid in May 2018, and Mr. Bulsara became an employee of Allscripts.[5] But his official title changed to "Director Professional Services of Health Grid."[6] He signed the Inventions and Restrictive Covenant Agreement contemporaneously with Allscripts' acquisition of Health Grid on May 18, 2019.[7] Allscripts involuntarily terminated Mr. Bulsara's employment on August 14, 2020.[8]

Mr. Bulsara failed to perform a choice of law analysis and applied Florida law in his summary judgment briefing; Allscripts found there is no actual conflict between Illinois, Florida, and Delaware law and applied Delaware law. We apply the choice of law principles for the forum state—Delaware.[9] "There are, in essence, three components to this choice-of-law analysis: i) determining if the parties made an effective choice of law through their contract; ii) if not, determining if there is an actual conflict between the laws of the different states each party urges should apply; and iii) if so, analyzing which state has the most significant relationship."[10] No one identifies, and we did not find, a choice of law provision in the Agreement.[11] We next consider whether there is an actual conflict between Florida (Mr. Bulsara's residence), Illinois (Allscripts' headquarters), and Delaware (the forum). There is no actual conflict in the basic elements of a

breach of contract claim.[12] We agree there is no actual conflict, and we apply Delaware law to the breach of contract claim.[13]

Mr. Bulsara first argued he is not subject to the non-compete clause in the Agreement prohibiting competition for twelve months if he "held a position at a level or title that is Vice President or higher immediately prior to termination of [his] employment" because he was not a Vice President. He pointed to evidence in the record showing his official title at Allscripts was Director, not Vice President, Allscripts' internal job level classification classifying his position as "M4" when all Vice President positions are classified as "M5", and his own testimony he did not perform work at the Vice President level for Allscripts.[14] But Mr. Bulsara provided no other evidence explaining the Allscripts' internal documents he relies on to prove he was not employed at the Vice President level.[15] Allscripts countered Mr. Bulsara held himself out as Vice President in his email signature, LinkedIn profile, and curriculum vitae, colleagues viewed him as a Vice President, and his job responsibilities did not change post-acquisition even though his title changed.[16] Allscripts also pointed to a sworn affidavit from Kim Franks, Vice President and General Manager, Consumer Engagement for Allscripts Health Solutions, swearing the job grades relied upon by Mr. Bulsara are not the sole or even most meaningful indicators of the job titles and levels at which individuals at Allscripts operate or the job titles individuals use.[17]

Mr. Bulsara failed to carry his heavy burden at summary judgment. We properly found genuine disputes of material fact as to whether he was operating at the Vice President level while employed with Allscripts. He cited to unexplained documents containing information about Allscripts': job families, job codes, job titles, job levels, job grades, salary midpoints, and bonus targets.[18] He discussed job level in support of his argument but did not explain job grade, which has overlap between the Vice President and Director position.[19] We may know his title as Director,

not Vice President. But we do not know whether his position of Director was at a level of Vice President or higher, and based on the evidence proffered by Allscripts, a reasonable juror could find Allscripts and the world understood him to be a Vice President. Without context to this internal Allscripts' information, Mr. Bulsara failed to meet his burden on summary judgment. Thus, we denied his motion, and now again deny his motion for reargument. We declined then, and decline now, to address *in limine* issues at summary judgment and ferret through whether Allscripts has enough evidence for each of the five claimed breaches. The breach of contract claim will go to trial because genuine issues of material fact exist for at least one of the claimed breaches.

### *We find no basis to reargue the trade secrets misappropriation claim.*

Mr. Bulsara again argues there is no actual evidence of misappropriation, and Allscripts cannot rely on the inevitable disclosure doctrine to show misappropriation at summary judgment.[20] We need not reach the inevitable disclosure argument—though we note Allscripts provided no authority of this doctrine being applied at summary judgment under the Defend Trade Secrets Act––because there is sufficient—but far from overwhelming—circumstantial evidence of misappropriation to get to a jury at this stage.

Mr. Bulsara's argument seems to be there is no smoking gun, thus there is no evidence of misappropriation. This is simply not the case.[21] There is no dispute the misappropriation at issue here is use and/or disclosure.[22] There is evidence in the record of Mr. Bulsara's employment and job functions at Allscripts and now with Andor which are the same or substantially similar, with some instances of the same or similar work for the same clients.[23] There is evidence Mr. Bulsara had access to Allscripts' trade secrets during his course of employment.[24] And there is an email from a client, Lakeland Regional Health, in which the client asks Andor: "Since your team is familiar with Allscripts interfaces is there any way around having to engage Allscripts for another

4

interface?" Pritesh Patel responds twice, once saying "[l]et me check with the team on how we can accomplish this" and then, cc'ing a team of people including Mr. Bulsara, saying "[c]an we find a time to discuss? We have a few ideas."[25] A reasonable juror could infer Mr. Bulsara knew of, and used or disclosed, Allscripts' trade secrets based on this circumstantial evidence.

### *We find no basis to reargue the possibility of tortious interference.*

We lastly turn to Mr. Bulsara's tortious interference claim. Mr. Bulsara applied Florida law on summary judgment; Allscripts applied Delaware law. Both agree there is no actual conflict between the two states' laws.[26] We agree there is no actual conflict and apply Delaware law.[27] "[A] claim for tortious interference with business relations must allege: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages."[28]

Mr. Bulsara again argues there is no evidence supporting the claim, and it is "inconceivable that Mr. Bulsara could have acted with any intent to interfere" with Allscripts' business. We disagree, and find the same evidence discussed above supports Allscripts' claim for tortious interference. First, Mr. Bulsara's intent is a question for the jury.[29] Second, Mr. Bulsara's attempt to downplay the Lakeland email is unpersuasive. Lakeland specifically reached out to Mr. Patel of Andor to find a work-around of Allscripts' interfaces because of Andor and company's "familiar[ity] with Allscripts['] interfaces." Mr. Patel responded first without cc'ing anyone he would "check with the team on how to accomplish this." Mr. Patel then responded, cc'ing Mr. Bulsara and others, stating "[w]e have a few ideas." A reasonable juror could infer Mr. Bulsara tortuously interfered with Allscripts' relationship with Lakeland at minimum. Mr. Bulsara finally argues he did not reach out to Lakeland, thus he cannot be liable. He cites no authority for this proposition. Allscripts may proceed to a jury on this claim.

***Allscripts and Mr. Bulsara shall engage in meaningful settlement discussions.***

Allscripts reports in its pretrial memorandum it "continues to consider whether it might be possible to streamline the trial by dismissing certain of its claims without prejudice and without conceding the merits of any such claim."[30] Allscripts' claims against Mr. Bulsara seem to be a good place to start. We previously found all parties would benefit from continued settlement discussions with a neutral mediator.[31] Allscripts and Defendants Andor, Mahathi, and Messrs. Toleti and Tyriver had a private mediation with mediator Stuart Widman and thereafter certified there is no chance of settlement between them.[32]

The same is not true for Allscripts and Mr. Bulsara. We reaffirm today continued settlement discussions between Allscripts and Mr. Bulsara may be fruitful, particularly considering Allscripts' pretrial memorandum and the evidence sufficient to withstand summary judgment, but overall light, evidence Allscripts has against Mr. Bulsara. Mr. Widman is familiar with the facts of the case from his session between Allscripts and the other Defendants. It appears a session between Allscripts and Mr. Bulsara before Mr. Widman, Judge Rueter, or another qualified mediator will be fruitful.

_____
**KEARNEY, J.**

---

[1] D.I. 438–41.

[2] D.I. 548.

[3] D.I. 552–53. Local Rule 7.1.5 provides "[m]otions for reargument shall be sparingly granted."; *see also Davis-Collins v. City of Wilmington*, No. 20-758, 2022 WL 1202590, at *1 (D. Del. Apr. 22, 2022) ("A motion for re-argument under Local Rule 7.1.5 may be granted under one of three

circumstances: (1) 'where the Court has patently misunderstand a party,' (2) 'where the Court has made a decision outside the adversarial issues presented to the Court by the parties,' or (3) 'where the Court has made an error not of reasoning but of apprehension.'") (further citation omitted).

[4] JA 4241, Notes of Testimony (N.T.), Bulsara Dep., Dec. 17, 2021, 43:7–15.

[5] D.I. 506 ¶ 1 (Allscripts' admission).

[6] D.I. 506 ¶ 5 (admitting this was his title but denying it means he was not functioning at a Vice President level).

[7] JA 4341–47; D.I. 506 ¶ 2 (Allscripts' admission but clarifying the date Bulsara signed).

[8] D.I. 506 ¶ 4 (Allscripts' admission).

[9] *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 358 (3d Cir. 2007), *as amended* (Oct. 12, 2007) ("As a federal court exercising jurisdiction over state-law claims, we apply the choice-of-law rules of Delaware, the forum state.").

[10] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).

[11] JA 4341–47.

[12] *Garfield on behalf of ODP Corp. v. Allen*, No. 21-0420, 2022 WL 1641802, at *23 (Del. Ch. May 24, 2022) (publication in A.3d forthcoming) (further citation omitted); *IMC Grp., LLC v. Outar Inv. Co., LLC*, No. 21-0019, 2022 WL 163835, at *2 (Fla. Dist. Ct. App. Jan. 19, 2022) (publication in So.3d forthcoming); *Apollo Theater Chicago, LLC v. Baker Lincoln, LLC*, No. 1-20-1103, 2022 WL 579076, at *4 ¶ 28 (Ill. App. Ct. Feb. 25, 2022).

[13] *Liberty Ins. Underwriters, Inc. v. Cocrystal Pharma, Inc.*, No. 19-02281, 2022 WL 1624363, at *4 (D. Del. May 23, 2022) (finding no actual conflict for breach of contract claim and applying forum law).

[14] D.I. 439 at 11–12 (ECF pagination); *see also* JA 4348–53; JA 4241, Bulsara N.T. at 45:21–24.

[15] D.I. 439 at 11–12; *see also* D.I. 440, Bulsara's SUMF ¶¶ 5–10.

[16] D.I. 507 at 17–18 (ECF pagination); *see also* JA 4241, Bulsara N.T. at 43:6–23; JA 11936–41, 11946–48, 12059–61.

[17] JA 13282–84.

[18] JA 4348–53.

[19] JA 4351.

[20] *See Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (setting forth elements of trade secret claim under the Defend Trade Secret Act).

[21] *See Elmagin Cap., LLC v. Chen*, No. 20-2576, 2022 WL 1172970, at *7 (E.D. Pa. Apr. 20, 2022) ("Rarely can a plaintiff demonstrate misappropriation through direct evidence. Instead, a plaintiff may rely on circumstantial evidence, such as proof that the defendants had access to its trade secret material and that there are similarities between its products and the defendants' products."); *Elmagin Cap., LLC v. Chen*, 555 F. Supp. 3d 170, 181 (E.D. Pa. 2021) (same).

[22] *See Oakwood Lab'ys LLC*, 999 F.3d at 910 (defining "use" under the Act broadly to "encompass all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as 'assist[ing] or accelerat[ing] research or development.'").

[23] *See, e.g.*, JA 4256, Bulsara Dep., N.T., 52:10–53:13, 55:5–57:24, 102:1–104:14, 125:12–127:13, 138:2–146:12, 198:11–199:8, 204:8–205:17; JA 11877–79, No. 3; JA 11805 ¶ 239 (Bulsara admitting working on patient engagement and mobile check-in solutions, but not telehealth, while at Allscripts).

[24] JA 11791 ¶ 162 (admitting exposure to MPE and related patient engagement capabilities while employed at Allscripts), JA 11792 ¶ 166 (admitting worked on implementation, delivery, and support of Allscripts' FMH and MPE clients), JA 11797 ¶¶ 193–94 (admissions Bulsara worked for Allscripts post-merger integrating Health Grid applications with Allscripts solutions); JA 6673 (Allscripts' sworn interrogatory response to Defendants first set of interrogatories); JA 11896 (sworn interrogatory response from Mr. Bulsara regarding job responsibilities); JA 4341–47 (Inventions Restrictive Covenant Agreement signed by Bulsara agreeing not to disclose Confidential Information, defined to include Allscripts' trade secrets but acknowledging not all information enumerated may constitute a trade secret).

[25] JA 12082–83.

[26] D.I. 439 at 16 n.6; D.I. 507 at 16–17.

[27] *See Am. Bottling Co. v. BA Sports Nutrition, LLC*, No.19-03048, 2021 WL 6068705, at *16 (Del. Super. Ct. Dec. 15, 2021) (determining which states' law to apply to tortious interference claim, finding "[t]he Court begins this task by using the conflict-of-law framework, which involves two steps: (1) the Court first determines whether an actual conflict between the states' laws exists and, if so, (2) the Court next decides which state has the 'most significant relationship' to the present case.").

[28] *Malpiede v. Townson*, 780 A.2d 1075, 1099 (Del. 2001) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. Super. Ct. 1981)).

[29] *Shire Viropharma Inc. v. CSL Behring LLC*, No. 17-414, 2021 WL 1227097, at *5 (D. Del. Mar. 31, 2021) (intent not proper expert testimony because it is "classic jury question").

---

[30] D.I. 555 at 32.

[31] D.I. 525.

[32] D.I. 537, 544.