## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ALLSCRIPTS HEALTHCARE, LLC,** | : | **CIVIL ACTION** |
| **MAHATHI SOFTWARE, LLC,** | : | |
| **HEALTH GRID COORDINATED** | : | |
| **CARE SOLUTIONS, INC., HEALTH** | : | |
| **GRID HOLDING COMPANY, LLC,** | : | |
| **HEALTH GRID, LLC** | : | |
| | : | |
| **v.** | : | **NO.  21-704-MAK** |
| | : | |
| **ANDOR HEALTH, LLC, MAHATHI** | : | |
| **SOFTWARE PVT., LTD., RAJ TOLETI,** | : | |
| **AMAR BULSARA, PAUL TYRIVER** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                  **June 21, 2022**

Counsel's inability to effectively work together with us to narrow and study issues for trial under Rule 1 of the Federal Rules of Civil Procedure led to this morning's Order reluctantly granting more trial time and adjourning the trial to our next available two-week block of trial time. Counsel did not violate an Order or Rule of Court. They litigated fiercely given their business clients' views of a "bet the company" case. But they closely approached the line of violating their duty of candor and appeared to abandon common sense and fundamental understandings of our ability to close the courtroom to anything but their dispute.

It is difficult to fathom we need to start our reasoning for today's unprecedented (for us) Order adjourning trial with fundamental civics lessons lost on the nineteen experienced lawyers from large law firms representing businesses and their officers in an ugly corporate divorce. Federal courtrooms are public squares to amicably resolve our disputes. The Supreme Court balances the due process mandate with judges' and lawyers' obligations to resolve civil disputes in a just, speedy, and inexpensive manner under the Federal Rules of Civil Procedure and Rules

of Evidence. Judges study the parties' proposals and set schedules to properly resolve cases mindful the lawyers will go on to other matters, but the parties may want to drag their feet and stay here a little longer. The parties need to resolve their dispute promptly. They may choose to spend large sums of money to fund litigation tactics for negotiation leverage in a business dispute which we see resolved every day with thoughtful approaches to getting back to making money rather than paying lawyers. We cannot allow it. Lawyers sworn to represent clients within the bounds of zealous advocacy and candor prepare for trials recognizing they will need to educate the judge and jury in the limited time for trial in the public square.

The lessons are also more advanced. We are not private mediators answerable to counsel's convenience as they may be accustomed in privately resolved cases; the taxpayers fund our dispute resolution and our enforcement of Orders. We are answerable to resolve the public's wide variety of disputes through verdicts based on open and fair trials consistent with due process and judicial opinions subject to appellate review. We are today responsible for hundreds of disputes, and one business dispute between former merger partners cannot hijack our obligations to the public square.

The lawyers before us are doing their jobs with an apparent singular focus on winning. We repeatedly but unsuccessfully urged counsel to narrow the issues. But the business clients seek retaliation in the apparently "money is no object" world of healthcare software technology. We gave the lawyers more time. We kept faith the lawyers would persuade their clients to get it together once they knew our Orders meant what they say.[1]

But not as well as we could have. We finally realized the extent of their frenzy when counsel filed over thirteen-thousand pages of a summary judgment appendix coupled with

2

straight-faced arguments of no disputed genuine issues of material fact. Counsel then submitted a list of almost four-thousand trial exhibits for the jury. They offer evidentiary objections to almost a thousand exhibits presented a few days ago. We still put aside our other matters and went to work to address these issues including through proposing a detailed schedule for a timed trial and strict protocols for a nine-day trial often used in this Court mindful the jury is unlikely to grasp the import of almost four-thousand exhibits from forty-nine witnesses. As Judge Aldisert reminded us, "Basta! . . . "Enough!"[2]

But still we thought we could meet the litigants' need for finality. We invited counsel to present offers of proof for each witness to evaluate the Defendants' repeated concern for needing more trial time for their limited claims while Plaintiffs repeatedly confirmed they could meet their burden of proof for double the number of claims under the proposed time schedule but would not oppose more time.

And then the Defendants raised a last-minute motion last week to strike both parties' jury demands on most of the pending claims based on a jury trial waiver in the 2018 merger agreement signed by some parties but not others. Plaintiffs oppose this tactic. The quick response suggesting Defendants waived this jury waiver argument is not so clear. We cannot resolve with expedited research. The fundamental right to a jury is at stake. Counsel need to know which issues are triable to the jury before they begin final witness preparation or at least before they pick the jury. Their clients need to pick a jury for the claims triable to the eight citizens sworn to do justice.

We are loathe to move a trial date especially when witnesses from thousands of miles away planned to travel and testify beginning next week. We never adjourned a trial date before

based on lawyers' management of their evidence. We strictly hold our trial dates knowing talented lawyers have busy schedules and our obligation is to resolve disputes among the litigants.[3]

The cynic might suggest today's Order is a "win" for the Defendants because they get further delay. The cynic would be wrong again. The angry business clients will presumably continue to pay their large trial teams, and the Plaintiffs (some of whom apparently signed the jury waivers in 2018) now want us to study whether they waived their right to a jury. Defendants' last-minute ambush failed and we suspect they may want to get this behind them as well. Their arguments will now be tested. We face a bona fide dispute which our initial (albeit extensive) research suggests may be raised at this late stage but the facts before us are unique. We are also persuaded the interests of justice require we may allow up to an additional fourteen hours for trial without interruption but subject to review following our rulings on the several pending motions and the trial lawyers' reconsidered witness and exhibit lists. Our grant of additional time is conditioned on demonstrated need before trial.

Our Orders over the last several months placed counsel on notice of a jury trial beginning next week for nine days. We owe the parties the due consideration of this fundamental jury waiver issue even though they did not show the candor we expect from members of this Bar. We must put aside the natural desire to promptly resolve this ugly fight while resolving weighty issues on the fly and instead properly address the jury trial issues and allow limited additional time to present evidence after evaluating the Defendants' offers of proof. We today adjourn our trial date to allow the allocated time for identified witnesses, properly evaluate last-minute arguments concerning the fundamental right to a jury trial, and require counsel to revisit their

exhibit lists and objections.

## I.     Facts

What started as a happy corporate merger among healthcare technology companies in Spring 2018 ended with all parties caught in a bad romance in May 2021 fueled with revenge, little patience, and now a corporate divorce taking over our daily obligations to cases other than their business dispute.

A little over thirteen months ago Allscripts Healthcare, LLC sued its former business partners Andor Health, LLC, Mahathi Software Pvt., LTD, and their officer and contract-employee Raj Toleti and Amar Bulsara claiming a breach of various agreements governing their business relationship, including a merger agreement which began the parties' relationship, sharing of confidential and trade secret information in the healthcare software technology business, and tortuously interfering with clients.[4]

Allscripts amended, adding Andor's officer Paul Tyriver and claims regarding a cyber-attack on Allscripts's healthcare technology applications following Allscripts's canceling of a contractual relationship between it, Andor, and Mahathi, and Allscripts's direction to delete all patient protected health information in its possession.[5] The events of this cyber-attack spanning a week in May 2021 are hotly contested between Allscripts, Andor, Mahathi, and Messrs. Toleti and Tyriver, including who, if anyone, owns the shared "cloud" workspace Allscripts, Andor, and Mahathi used to develop Allscripts's applications, and who, if anyone, exceeded their authorization during the week in May 2021 as both parties "attacked" each other attempting to secure their own data on the shared platform. The conduct during this week by both Allscripts and Mahathi, Andor, and Messrs. Toleti and Tyriver is the source of both claims and

counterclaims. The conduct led Mahathi, Andor, and Mr. Toleti to report Allscripts to the Indian police for purported cyber-crimes leading to criminal charges against various Allscripts's affiliate employees and entities in India.

Allscripts amended again ten months ago to add its affiliates as plaintiffs as well as allege an abuse of process claim against Mahathi, Andor, and Mr. Toleti.[6] Following the attack, Indian police report, and various complaints and counterclaims, the parties allegedly continued to jointly disparage each other leading to additional defamation and tortious interference claims and counterclaims.[7] Everybody claims lost business based on the other side's alleged conduct in this corporate demise. We will see if they can prove it to eight citizens.

Allscripts sought a jury on all issues so triable in the Complaint and amended Complaints.[8] Andor, Mahathi, and Messrs. Toleti and Tyriver responded and filed Counterclaims also seeking a jury. The parties both repeatedly demanded a jury in each of their pleadings including as recently as March 2022.

### Counsel do not diffuse their clients' retaliatory ire.

The pleaded facts in both the second amended Complaint and fourth amended Counterclaims read like a classic corporate divorce with distrust, retaliation, and counterretaliation fueled by millions of dollars in revenues and lawyers unable to moderate their apparently angry clients' scorched earth, bet-the-company tactics. We addressed Allscripts's motion for a preliminary injunction and limited motions to dismiss some of Allscripts's claims and some of the Counterclaims by mid-September 2021 resulting in our September 13, 2021 Order setting a seven-day jury trial to begin in April 2022.[9] We entered our Orders setting firm discovery deadlines and trial dates with the understanding we would proceed before a jury.[10] We

6

repeatedly addressed the jury trial.[11] No party objected to the jury trial following our scheduling Orders.

Andor's lead trial counsel injured himself earlier this year.[12] We extended the time for discovery and reset the trial to begin on June 29, 2022 following Andor's lead trial counsel's injury requiring additional time to prepare.[13] The parties engaged in extensive discovery disputes largely resolved by appointed Special Master Chief Judge Robinson (Ret.) during their discovery period.[14] We reviewed at least eighteen discovery motions.[15] Andor, Mahathi, and Messrs. Toleti and Tyriver asked for additional trial dates this April which Allscripts did not oppose—but also did not join—as long as the trial could still go forward this June.[16] They never mentioned a jury trial waiver in this request. Their proposed order instead asked us to begin jury selection on June 29, 2022 followed by a twenty-day trial.[17] We granted the motion in part providing nine days of jury trial time beginning June 27, 2022.[18] We are presently addressing two sanctions motions for discovery conduct including former Chief Judge Robinson's recommendation we impose nearly $37,000 in discovery sanctions.[19] The parties eventually closed their discovery period.

The parties then timely moved for summary judgment. They never explicitly mentioned the waiver of a jury trial in their arguments. They instead argued in part the issues could be resolved by the jury or "trier of fact" when opposing summary judgment.[20] The parties also moved to preclude fourteen expert opinions.[21] We offered to hold a *Daubert* hearing on the fourteen *Daubert* challenges, but all parties declined a hearing.[22] We continue to work our way through the *Daubert* thicket. Everybody seemed angry with everybody else as we confirmed in reviewing an over thirteen-thousand-page summary judgment record rife with disputes of

material fact largely admitted by counsel at oral argument.

We held extensive oral argument on the cross motions for summary judgment.[23] No party mentioned a jury trial waiver there or in earlier filed documents.[24] We largely denied the cross motions for summary judgment specifically identifying genuine issues of material fact necessary for the jury to resolve.[25]

### *Andor's last minute motion to strike requires we pause to fairly study the complex newly raised jury waiver issues.*

We scheduled and conferred with counsel last Monday, June 13, 2022 to address logistical concerns they raised to our Courtroom Deputy on how the parties should deliver contested exhibits to our Philadelphia Chambers.[26] Counsel then surprised us: They expected to present an exhibit list with over three-thousand separate exhibits and previewed over a thousand forthcoming evidentiary objections. We candidly told counsel they could not expect us to rule on a thousand objections in fewer than two weeks. We then ordered the parties to show cause as to why we should not set a timed trial to fit within our long-scheduled trial dates already continued and extended at their request.[27] We detailed our plan allocating time for opening statements and closing arguments. We set a maximum of twenty-three hours of evidence for Allscripts and Andor, Mahathi, Messrs. Toleti and Tyriver and four hours of evidence for separately represented Amar Bulsara, a third-party contract employee working on Andor's projects as a consultant.[28]

Undeterred counsel turned around later Monday evening and filed pretrial memoranda identifying forty-nine trial witnesses, nearly four-thousand exhibits, and about a thousand evidentiary objections.[29] The parties identified sixteen common witnesses, sixteen unique

witnesses from Allscripts, and seventeen unique witnesses from Andor, Mahathi, and Messrs. Toleti and Tyriver including lawyers not earlier disclosed and customer contacts not deposed.[30]

Counsel for Andor, Mahathi, and Messrs. Toleti and Tyriver then played a card they likely knew since 2018. For the first time in a filing, Andor, Mahathi, and Messrs. Toleti and Tyriver moved *in limine* to strike both parties' jury demands on seventeen of the thirty-three counts citing jury waiver language in the 2018 merger agreement signed by some but not all of the parties before us.[31] They also renewed their previous motion to amend our scheduling Order and add an additional five trial days.[32] The parties also moved *in limine* on multiple grounds to preclude evidence consistent with our Order.[33]

The parties responded to our show cause order the next day.[34] Allscripts's counsel agreed they could present their evidence in the allocated time before the jury and to split jurors' lunch costs.[35] Andor, Mahathi, and Messrs. Toleti and Tyriver's counsel agreed to split the costs of the jurors' lunches but referenced their renewed motion asking for additional trial time.[36]

We ordered the parties to present oral argument the following day—the last business day before today's Order—to address a number of trial alternatives with thousands of exhibits and the eleventh-hour jury waiver argument.[37] We told the parties we could not extend the trial beyond the dates set several months earlier given our existing date-certain commitments in thirty-three cases in this and other Districts and under the Speedy Trial Act.[38] We urged counsel to consider a variety of alternatives, including a bench trial consistent with Andor, Mahathi, and Messrs. Toleti and Tyriver's surprise argument, the appointment of a Special Master to issue findings of fact and conclusions of law following presentation of evidence for as long as they wanted and at their convenience, or to be prepared to identify their proofs on a witness-by-

witness basis so we could better evaluate Andor, Mahathi, and Messrs. Toleti and Tyriver's request for additional time, even though the party with the burden of proof on two-thirds of the counts did not object the current time allotted.

We held an extensive oral argument on Friday afternoon, June 17, 2022 shortly before the Juneteenth federal holiday weekend. Allscripts confirmed it: opposed a non-jury resolution before us or a Special Master; did not oppose Andor, Mahathi, and Messrs. Toleti and Tyriver's request for additional time provided the trial went forward on June 27, but would not object to the present timed trial schedule (even though Allscripts bears the burden of proof on two-thirds of the claims) and could present its testimony in the allocated time; and, it reached a settlement with Amar Bulsara which affords a couple of extra hours of evidence for both Allscripts and Andor, Mahathi, and Messrs. Toleti and Tyriver.

Andor, Mahathi, and Messrs. Toleti and Tyriver did not agree; they want more time. We held an extended hearing evaluating the parties' proffer for each witness. We required Andor, Mahathi, and Messrs. Toleti and Tyriver's lead trial counsel to provide an offer of proof and some estimate of time for each witness, including identifying the five or six key witnesses which would take the longest to present in his view. He answered our questions. He confirmed his twelve-person trial team (just counting those senior enough to be listed on the docket and not including those working without entering an appearance) estimated seven hours for their individual client Raj Toleti (who appears to be central) with Messrs. Patel, Tyriver, and Maddi as close second, third, and fourth requiring less, but still substantial, time for testimony at trial. Counsel also confirmed needing less time for the other key witnesses. Allscripts's counsel also weighed in, providing his and his trial team's general estimates for each witness. Allscripts's

counsel's remarks also continuously confirmed Allscripts would do what is necessary in the time allotted to prove claims and defend against counterclaims, including dropping some named witnesses at trial if already-called witnesses adduced the required evidence. We reminded counsel of our role under Federal Rules of Evidence 102, 403, and 611.

We also addressed the new elephant in the room: Andor, Mahathi, and Messrs. Toleti and Tyriver's motion to strike the jury demand. Andor, Mahathi, and Messrs. Toleti and Tyriver doubled down during our conference on their dare. They argued they did not waive this issue by themselves demanding a jury trial, their motion is timely, and Allscripts, a sophisticated business entity, waived its right to a jury trial. They posit they raised this issue at our Rule 16 conference back in September 2021 although they did not mention the jury waiver in their Rule 26(f) Report and our contemporaneous notes do not reflect a discussion of a jury waiver other than we would customarily address the requested declaratory and injunctive relief outside a jury.

They also suggested their Motion helps solve the timing issue: if we struck the jury demand on the counts requested, we could complete the trial in two phases, the jury issues beginning June 27, 2022 and the bench trial issues at a later date to be determined. They based their theory on our hypothetical segregation of arguments into three "buckets" at the summary judgment oral argument: conduct surrounding the merger and beginning of the corporate divorce pre-May 2021 cyber-attack; the May 2021 cyber-attack; post-May 2021 cyber-attack including this litigation, the India criminal investigation, and tort claims arising as a result. They argued the first two buckets are for the Court to decide, while the last is for the jury. Allscripts pointed out, and Andor, Mahathi, and Messrs. Toleti and Tyriver did not seem to answer, many of the same witnesses would then appear at two trials. We will not separate the proofs or require witnesses

appear twice. Andor and its affiliates invoked the jury waiver and seek more trial time with demonstrated offers of proof. We will not now bifurcate. We discussed our ability to *sua sponte* have an advisory jury under Federal Rule of Civil Procedure 39(c). Andor, Mahathi, and Messrs. Toleti and Tyriver did not respond. We granted Allscripts leave to respond to the jury waiver issue.

### Counsel file approximately three hundred objections to deposition designations.

Counsel yesterday filed approximately three hundred deposition designation objections presumably hoping we can review them before trial in six days.[39] We permitted the filing of objections wrongly expecting counsel would work out objections rather than dump approximately three hundred on us.[40] But our expectations should not apply in this case—as we learned the hard way.

## II.    Analysis

Counsels' conduct suggests they think this dispute is the only one on our docket.[41] Andor and its affiliates raise complicated jury waiver issues at the eleventh hour while both counsel bludgeon our docket with motions *in limine*, nearly one-thousand evidentiary objections, approximately three hundred objections to deposition designations, and fourteen *Daubert* motions neither side feels strongly enough about to request a hearing—all after they straight-faced moved for summary judgment with an over thirteen-thousand-page appendix arguing no genuine issues of material fact on nearly every claim. The docket has six-hundred and six (606) entries not including today's filings accumulated over the past thirteen months. The lawyers furthered, rather than diffused or moderated, their clients' shark-in-bloody-water feeding frenzy. The clients' motivations are partially raised in Allscripts's abuse of process claim and in Andor's responsive arguments suggesting Allscripts is using their superior economic position to put

Andor out of business through this case. We recognize the reality some counsel may follow their clients' direction regardless of the merits. We will not make those decisions today. We find no violation of an Order or Rule of Court. But we now have no choice given counsel's inability to narrow issues for trial and the significance of the last-minute jury waiver issue to adjourn our long-scheduled June 2022 trial.

### A.  We must adjourn trial to our next available trial time so we can fairly address the multiple issues arising with the jury waiver.

Andor, Mahathi, and Messrs. Toleti and Tyriver moved *in limine* to strike Allscripts's, and their own, jury demand on seventeen counts.[42] They ask us to strike Allscripts's jury demand on nearly all of its claims and some of the counterclaims because of a jury waiver Allscripts and Mr. Toleti signed in spring 2018 when Allscripts acquired Health Grid and began its relationship with Mr. Toleti, his companies, and the companies' officers. We cannot issue an advisory opinion on how we will rule on this important, complicated issue. But we must at least explain why it requires we adjourn the trial so we can afford the issue due consideration.

This contractual jury waiver issue affects a fundamental constitutional right. The Seventh Amendment provides civil litigants the right to a jury trial.[43] Because this right is fundamental, we "indulge every reasonable presumption against waiver."[44] But a party may nevertheless knowingly and voluntarily waive this right to a jury trial.[45]

The Motion to strike raises a host of issues. We raised some at oral argument, including waiver considering Andor, Mahathi, and Messrs. Toleti and Tyriver's continuous, unqualified jury demands throughout this litigation. They argued their position and provided supplemental briefing. Allscripts responded at oral argument but understandably had not been fully prepared to address the myriad of issues. They requested to respond in writing. We gave Allscripts until June

22, 2022 to respond in light of the complicated, fundamental constitutional right at issue. We permitted Andor, Mahathi, and Messrs. Toleti and Tyriver to supplement their initial brief with additional case law addressed at oral argument.[46] We moved our final pretrial conference to June 23.[47] We continued extensive study of the Motion over the weekend identifying additional complicated issues briefly raised in Andor, Mahathi, and Messrs. Toleti and Tyriver's brief requiring our attention, including whether non-parties to a contract can enforce a jury waiver or have a jury waiver enforced against them. If we agree the Motion is timely and can be enforced, we must analyze the jury waiver and apply it to seventeen claims and multiple levels of non-signatories. We must study Allscripts's written Opposition which we hope will address the myriad of issues and then possibly Andor and its affiliates' prompt Reply.

We noted at oral argument we are inclined to have the whole case submitted to a jury even if we strike the jury demand by *sua sponte* asking our jury to serve as advisory jury to decide all claims for which the parties waived their right to a jury trial.[48] We must provide adequate notice to the parties who litigated this case understanding, until now, all claims would be submitted to a jury.[49]

In sum, we have been asked to address the knowing and voluntary waiver of a constitutional right at the eleventh hour involving multiple parties and claims. We will not rush our decision on this constitutional issue. We must adjourn trial to duly consider this issue.

### B. We conditionally grant in part Andor, Mahathi, and Messrs. Toleti and Tyriver's motion for more trial days without prejudice.

We must also today decide whether Andor, Mahathi, and Messrs. Toleti and Tyriver need the additional time they claim to in their renewed motion for more trial days.[50] They argue this

14

case is "life or death" for them, and they need more time to defend against Allscripts's claims and prove their own.

This motion marks the second time they raise this issue.[51] Andor, Mahathi, and Messrs. Toleti and Tyriver moved us for fourteen additional trial days in April 2022 bringing the total trial days to twenty.[52] We counseled about the importance of brevity and concise presentations of evidence.[53] We explained we could not effectively consider the merits of the motion without, at minimum, reviewing pretrial memoranda to analyze nonduplicative trial witnesses, offers of proof, and estimates of trial time following the close of discovery and dispositive motions.[54] But out of an abundance of caution we granted the motion in part and provided two additional trial days.[55]

They now return after we largely denied the motions for summary judgment. We learned of almost four-thousand exhibits with almost one-thousand contested exhibits leading us to propose parameters for a timed trial, affording Andor, Mahathi, and Messrs. Toleti and Tyriver twenty-three hours of evidence presentation during the almost nine trial days.[56] In light of Allscripts's and Mr. Bulsara's settlement—with both counsel confirming all material terms have been agreed to—each side now would have twenty-five hours of evidence (potentially more depending on how we allocated the additional fifty-minutes afforded to Mr. Bulsara for his opening and closing). We required the parties' input as to the breakdown of time. Allscripts told us twenty-three hours is sufficient to meet its burden of proof and defend against the counterclaims. Allscripts confirmed no objection at all to the current time allocation at oral argument. But Allscripts takes no position on the request for additional time if the case can go forward as scheduled. But we are also mindful of Allscripts's counsel's candid assessment of

doing what he needs to do. Allscripts could also use additional time given Andor's offers of proof.

Our Court of Appeals recognizes our inherent authority to control the cases before us and thus our discretion to set time limits for trial.[57] Our authority resounds[58] in Federal Rule of Civil Procedure 1,[59] and Federal Rules of Evidence 102,[60] 403,[61] and 611.[62] Our Court of Appeals mandates we must not set time limits as a matter of course, and rather must "impose time limits only when necessary, after making an informed analysis based on a review of the parties' proposed witness lists and proffered testimony as well as their estimates of trial time."[63] We must allocate time evenhandedly.[64] We need not "allow parties excessive time so as to turn a trial into a circus. After all, a court's resources are finite and a court must dispose of much litigation. In short, the litigants in a particular case do not own the court."[65]

Consistent with the mandate in *Duquesne Light Co.* we reviewed the parties' pretrial memoranda and held a nearly two-hour oral argument addressing each party's offer of proof for every witness on the list. The parties largely confirmed their key witnesses and discussed needing an hour or two, at most three, for nearly every other ancillary witness listed. The witness list is extensive with forty-nine distinct witnesses. But counsel confirmed some may not be called if other witnesses testify to facts needed. They also agreed some foundational witnesses presently listed may not be called if expert witnesses can get the documents in with their testimony as documents relied upon in forming their opinion. The forty-nine witnesses include eighteen experts, fourteen of which are subject to *Daubert* motions. Some witnesses' abilities to testify or need to testify is thus subject to our forthcoming *Daubert* rulings. But counsel also confirmed—evidencing their apparent inability to provide professional courtesy to each other—

some witnesses, previously set to testify through deposition designation—will now be present at trial from India and called live. We also learned third-party witnesses who have not been deposed will testify regarding tortious interference claims assuming we allow this testimony after review of motions *in limine*. It is difficult to estimate the time witnesses who have not been deposed will testify as it is unclear what cross examination will be required.

We also looked at the nearly four-thousand exhibits and nearly one-thousand objections. We take Allscripts's exhibit list with a grain of salt. Allscripts—perhaps to burden opposing counsel or perhaps out of an abundance of caution—identified nearly three-thousand exhibits yet fully agrees it can adequately present its case in twenty-three hours. Its two positions are irreconcilable. Andor, Mahathi, and Messrs. Toleti and Tyriver identify nearly one-thousand exhibits subject to almost three hundred objections by Allscripts. Slightly more realistic, but still inconceivable to accomplish even *if* we grant a full fourteen trial days. The exhibit lists confirm the scorched earth, throw-spaghetti-at-the wall-and-see-what-sticks litigation approach employed by both sides. We understand not wanting to waive the right to use an exhibit. But our analysis here cannot be largely informed by the proposed exhibits.

Finally, we are informed by Andor, Mahathi, and Messrs. Toleti and Tyriver's concession twenty trial days is not needed, and fourteen days is sufficient. Nothing has changed regarding the scope of the case from Andor, Mahathi, and Messrs. Toleti and Tyriver's first motion in April to now when they filed the instant motion. We largely denied summary judgment on all claims. They acknowledge thirty-three counts remained for trial in their motion. Six trial days is not an immaterial concession.

With this backdrop, we find some merit to Andor, Mahathi, and Messrs. Toleti and Tyriver's request for additional trial days which we cannot accommodate with our current schedule. We today recognize a potential need for an additional fourteen trial hours. We will address the specific time allocation as we approach our trial date after review of the supplemental pretrial memoranda and following evidentiary rulings which may impact the need for all these exhibits and witnesses.

Consistent with our Court of Appeals' guidance "it is the task of counsel, not the Court, to make the selection of materials most appropriate for introduction into evidence,"[66] we will not set limits of individual witnesses or exhibits to enter; the parties may do as they may with the time allotted to each provided their conduct and evidence presented is consistent with and permitted by the Federal Rules of Civil Procedure and Federal Rules of Evidence.

### C.    Counsel must revisit the evidentiary and deposition designation objections including considering Special Master Judge Robinson's review.

The parties propose introducing nearly four-thousand exhibits and together raise nearly one-thousand objections. They collectively raise approximately three-hundred objections to deposition designations.[67] Again, the parties seem to view this case as the only case on our docket. Even with all the time in the world—which counsel apparently thinks we have—the exhibit lists, deposition designations, and objections would be unreasonable for us to decide with any considered deliberation.[68] We told counsel we would resolve them at trial and allocate the time as warranted.

The necessary delay allows time for counsel to breathe, evaluate their tactics, reexamine, and if warranted, narrow their proposed exhibit lists and deposition designations. The parties shall meaningfully meet and confer and renew before the Court any previously raised objections

to the narrowed exhibits lists and deposition designations by July 29, 2022. If the parties collectively raise objections to more than one hundred exhibits and deposition designations, they shall show cause in a jointly filed memorandum not exceeding five pages as to why we should not appoint the Honorable Sue Robinson (Ret.)—who earlier served with distinction as discovery master—as special master under Federal Rule of Civil Procedure 53 to provide a report and recommendation as to each challenged exhibit and deposition designation to be reviewed by us on an abuse of discretion standard. The parties now know should they raise objections to more than one hundred exhibits and deposition designations and decline Chief Judge Robinson's appointment as special master, we will review the objections at trial and allocate time spent on each objection.

## III.  Conclusion

Today's Order is disappointing given the type of measured counseling and lawyering expected and regularly witnessed in this Court and expected of members of our Bar. We want to make clear: we have no basis today to find the lawyers violated an Order or Rule of Court. They represent wealthy business entities and individuals who brought their alleged retaliatory conduct arising from a business dispute into the public square. We also do not intend to impugn the extensive work done to prepare for trial especially by the less experienced attorneys and paraprofessionals who likely lost all kinds of personal time on jury issues when lead counsel and their clients presumably knew they signed a document raising jury waiver issues. We appreciate as much as anyone the level to which trial counsel must go to be ready for a judge and jury. But the lawyers should take stock of their presence and candor even when their client hires them in a bet-the-company case. There will be other clients. This is a public square owned by the taxpayers. They do not control the public square, and they cannot bully their way to leverage

19

over a Court. Rule 1 requires we work together. The parties get their allocated time, and we expect their lawyers will meet their oaths in candidly preparing issues for trial. We, in turn, schedule and resolve issues consistent with our oath to the public.

We will not force a decision on a fundamental constitutional issue both Allscripts and Andor failed to mention until last week. We urge counsel to take a breath and study how they intend to present this relatively straightforward corporate divorce and retaliation case to our jury on all or some issues. We will resolve this case on the first opportunity to set aside enough hours for evidence plus time for jury selection, opening statements, and closing arguments. We conclude this unfortunate phase over the last week on an optimistic note by expecting the tone to moderate and frenzy to subside as the motion practice should be over but for our rulings.

---

[1] We appreciate zealous advocacy; we clerked in the expedited docket common in the Court of Chancery in the height of the '80s takeover era and grew up in a law firm which we hoped zealously protected and advanced our clients' interests. We have some understanding both of what it takes to zealously represent a client while candid to the Court and the need to take a breath and sometimes be a counselor more than a trial warrior for an angry client. There are limits and the conduct described today appears may cross several of those limits imposed by common sense and a fundamental grasp of the societal and limited role of federal courts.

[2] *United States v. Desmond*, 670 F.2d 414, 420 (3d Cir. 1982) (Aldisert, J. dissenting) (explaining "basta!" is the Italian exclamation for "enough!").

[3] We uniformly tell trial counsel our trial dates are rock certain, and we do not move them unless we are not here. We set date certain trials for most non-patent cases and mindful of the Speedy Trial Act obligations in criminal cases for four to six months after starting discovery as our dockets in our home District and in this District confirm. We are now set for thirty-three trials on dates certain before January 17, 2023. We provided counsel much more time than usual from the outset. And today's Order creates an exception we will use to teach and as notice to counsel moving forward as to whose example they should not follow.

[4] D.I. 1.

[5] D.I. 10.

[6] D.I. 41, 276–77.

[7] *Id.*

[8] D.I. 1, 10, 41.

[9] D.I. 86.

[10] D.I. 86, 198, 363.

[11] D.I. 86, 198, 363.

[12] D.I. 197.

[13] D.I. 198.

[14] D.I. 170, 188, 191, 209, 212, 214, 275, 280, 282, 299, 300, 312, 331, 345, 350, 361, 370, 419; *see also* D.I. 207 (appointing Chief Judge Robinson as special master).

[15] D.I. 170, 188, 191, 209, 212, 214, 275, 280, 282, 299, 300, 312, 331, 345, 350, 361, 370, 419. We acknowledge cases can often involve serial discovery disputes and thank Chief Judge Robinson for her timely and thoughtful approach to the issues. Discovery disputes did not lead to today's Order. We intended to try to this case next week until this jury waiver issue and Andor's offers of proof detailed to us last week.

[16] D.I. 348.

[17] D.I. 348-1 ¶ 4.

[18] D.I. 363.

[19] D.I. 543. Allscripts twice moved for discovery sanctions against Andor, Mahathi, and Messrs. Toleti and Tyriver. D.I. 350, 370. Chief Judge Robinson twice recommended we deny the Motions for sanctions. D.I. 383, 394. Allscripts twice objected to the recommendations. D.I. 389, 424. Andor, Mahathi, and Messrs. Toleti and Tyriver requested fees for having to respond to the motions and objections. D.I. 365, 381, 393, 395. We twice overruled Allscripts's objections and adopted Chief Judge Robinson's recommendations. D.I. 402, 430. We referred the fee request to Chief Judge Robinson for a report and recommendation. D.I. 402, 404. We are presently reviewing her June 2, 2022 recommendation for Allscripts to pay $36,900.05 in sanctions, Allscripts's objections, and Andor, Mahathi, and Messrs. Toleti and Tyriver's response to the objections. D.I. 534, 538, 543.

[20] *See, e.g.*, D.I. 508 (Mahathi, Andor, Toleti, & Tyriver response opposing Allscripts's MFSJ) at 14 (addressing their Computer Fraud and Abuse Act claim arguing "[a]t best, Allscripts's

argument is for a jury; it is not for summary judgment"); 17 (arguing "[f]rom these facts, a jury could conclude that Allscripts exceeded its authority when, on May 14, 2021, it eliminated the global administrative access of all Mahathi users" and "[a] jury could also conclude that, after the 2018 SOW expired on May 17, 2021, Allscripts had no authority to access the Mahathi Tenant for any purpose."); D.I. 502 (Allscripts's response opposing Defendants' MFSJ) at 14 (arguing a jury could find abuse of process and misappropriation of trade secrets); 16–17 (whether something is a trade secret is a jury question); 21 (jury issue for tortious interference); 22 (jury question regarding breach of Reseller Agreement); 29 (jury must decide issues of breach of duty of loyalty, competition, and non-solicitation).

Mahathi, Andor, and Messrs. Toleti and Tyriver apparently knew they would raise this jury waiver issue later. D.I. 508. They slyly argued about a jury for some counts and a trier of fact for others. But they do not do their slyness well since they note "triable issues of fact" in their table of contents for the Computer Fraud and Abuse Act claim but argue about a jury in the text. They do, however, argue a "trier of fact" for breach of the merger agreement in both the table of contents and text.

[21] D.I. 466–70, 472–73, 497–501.

[22] D.I. 479 ¶ 3; D.I. 528.

[23] D.I. 490, 550 (transcript).

[24] *See, e.g.*, D.I. 550 (summary judgment oral argument transcript).

[25] D.I. 548.

[26] D.I. 549.

[27] D.I. 551.

[28] *Id.*

[29] D.I. 555–57, 563, 581.

[30] D.I. 555–57.

[31] D.I. 566, 568. Allscripts and Andor, Mahathi, and Messrs. Toleti and Tyriver later dismissed some counts without prejudice. D.I. 590, 592.

[32] D.I. 573

[33] D.I. 564–71, 574–76, 579.

---

[34] D.I. 583.

[35] *Id.*

[36] *Id.*

[37] D.I. 584.

[38] *Id.*

[39] D.I. 601, 603.

[40]  D.I. 363.

[41] D.I. 609; *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 610 (3d Cir. 1995) ("After all, a court's resources are finite and a court must dispose of much litigation. In short, the litigants in a particular case do not own the court."); *FinancialApps, LLC v. Envestnet, Inc.*, No. 19-1337, 2021 WL 131458, at *1 (D. Del. Jan. 14, 2021) (Burke, J.) ("It is evident from the nature and number of discovery disputes the parties have brought before the Magistrate Judge and the overreaching of both sides in the motions and briefs they have filed with the Court to date that counsel treat this case as if it were the only case pending before the Court. But this case is only one of 600 cases on my docket[.]").

By way of the most recent example, Andor filed a request for a status conference after docketing this morning's Order to discuss some form of partial use of our allocated trial time at our earliest convenience but "preferably today."  We often try to accommodate counsel's requests but, absent some other grounds for relief under Rule 7, we choose to continue progressing in other matters while all counsel thoughtfully digest our reasoning including our unwillingness to separate trial testimony.  Andor raised the issues and we must consider the constitutional implications of the jury waiver and maximizing the jurors' service.

[42] D.I. 566, 68.

[43] U.S. Const. amend. VII; *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007).

[44] *Tracinda Corp.*, 502 F.3d at 222 (further citation and internal quotation omitted).

[45] *Id.* (further citation omitted).

[46] D.I. 596.

[47] D.I. 595.

---

[48] Fed. R. Civ. P. 39(c)(1); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013) ("District courts are free to use advisory juries, even absent the parties' consent.").

[49] *See, e.g.*, *Bereda v. Pickering Creek Indus. Park, Inc.*, 865 F.2d 49, 53 (3d Cir. 1989).

[50] D.I. 573.

[51] D.I. 348 (first motion).

[52] *Id.*

[53] D.I. 363 ¶ 6 n.2.

[54] *Id.*

[55] *Id.*

[56] D.I. 551.

[57] *Duquesne Light Co.*, 66 F.3d at 609; *see also In re Baldwin,* 700 F.3d 122, 129 (3d Cir. 2012); *Schmidt v. Mars*, Inc., 587 F. App'x 12, 16 (3d Cir. 2014).

[58] *Duquesne Light Co.*, 66 F.3d at 609.

[59] Fed R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. **They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.**") (emphasis added).

[60] Fed. R. Evid. 102 ("These rules should be construed so as **to administer every proceeding fairly, eliminate unjustifiable expense and delay**, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.") (emphasis added).

[61] Fed. R. Evid. 403 (permitting the exclusion of otherwise admissible, relevant evidence because if the relevance is substantially outweighed by the danger of "undue delay, wasting time, or needlessly presenting of cumulative evidence.").

[62] Fed. R. Evid. 611(a) (permitting us to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: . . . (2) avoid wasting time.").

[63] *Duquesne Light Co.*, 66 F.3d at 610; *In re Baldwin*, 700 F.3d at 129.

[64] *Duquesne Light Co.*, 66 F.3d at 610.

[65] *Id.*

[66] *Duquesne Light Co.*, 66 F.3d at 610.

[67] D.I. 601, 603.

[68] For example and based on rudimentary math for which we offer no confidence, it appears we would need to invest over ten hours a day for eight days at only five minutes an objection.  We hope counsel appreciates some of the hyperbole in this hypothetical given their exhibit lists and objections. They should also appreciate how requiring we make these evidentiary rulings at trial may affect their time for evidence.